J. Brian Jones (11816)
Gary D. Millward (12170)
Richard A. Roberts (12217)
PROVO CITY ATTORNEY'S OFFICE
445 W Center St.
Provo, Utah 84601
(801) 852-6140
gmillward@provo.gov
rroberts@provo.gov

*Attorneys for Defendants Provo City, Troy Beebe, Brian Wolken, and Jackson Julian*

Mitchell A. Stephens (11775)
Justin L. James (15167)
Dillon P. Olson (16120)
JAMES DODGE RUSSEL & STEPHENS, P.C.
10 West Broadway, Ste. 400
Salt Lake City, Utah 84101
mstephens@jdrslaw.com
jjames@jdrslaw.com
dolson@jdrslaw.com

*Attorneys for Defendants Utah County and Jeffrey Gray*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BRIDGER LEE JENSEN, an individual; SINGULARISM, a non-profit corporation; PSYCHE HEALING AND BRIDGING, LLC dba PSYCHEDELIC THERAPY JOURNEY, a limited liability company;<br><br>  Plaintiffs,<br><br>v.<br><br>UTAH COUNTY, a political subdivision; PROVO CITY, a political subdivision; JEFFREY GRAY, an individual; TROY BEEBE, an individual; BRIAN WOLKEN, an individual; JACKSON JULIAN, an individual; JOHN DOES 1-4, individuals;<br><br>  Defendants. | **MOTION TO DISMISS**<br><br>Civil Case No. 2:24-cv-00887-JNP-CMR<br><br>Judge Jill N. Parrish<br><br>Magistrate Judge Cecilia M. Romero |

Pursuant to Rules 7, 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure,

Defendants Utah County (the "County"), Jeffrey Gray ("Gray") (collectively "Utah County") and

Provo City (the "City"), Troy Beebe ("Beebe"), Brian Wolken ("Wolken"), and Jackson Julian

1

("Julian") (collectively "Provo"), move to dismiss all claims in the complaint filed by Plaintiffs

Bridger Lee Jensen ("Jensen"), Singularism ("Singularism"), and Psyche Healing and Bridging,

LLC ("Psyche Healing") (collectively "Plaintiffs").

## RELIEF REQUESTED

Plaintiffs' federal claims fail as a matter of law. Plaintiffs' argument that the First

Amendment to the United States Constitution allows them to circumvent the Utah Controlled

Substances Act ("Utah CSA") repeatedly has been rejected. *See, e.g.*, *Emp. Div., Dep't of Hum.*

*Res. of Oregon v. Smith*, 494 U.S. 872 (1990). Indeed, courts have rejected similar claims as

"frivolous." *See, e.g.*, *Gallagher v. Dhillion*, No. 3:18-cv-2801, 2020 WL 2737246, at *2 (N.D.

Tex. May 7, 2020) (ruling plaintiff's challenges were "futile and should be dismissed as legally

frivolous"); *Dee v. United States*, 241 F. Supp. 2d 50, 51 (D. Me. 2003) ("Dee's constitutional

challenge is frivolous."). Plaintiffs' claim under the Fourth Amendment is equally frail. The

search at issue in this case occurred because the Fourth District Court, State of Utah, issued a

search warrant that expressly declared probable cause existed. "[J]ust as judges acting in their

judicial capacity are absolutely immune from liability under section 1983, officials charged with

the duty of executing a facially valid court order enjoy [ ] absolute immunity from liability for

damages in suit challenging conduct prescribed by that order." *See Moss v. Kopp*, 559 F.3d 1155,

1163 (10th Cir. 2009) (internal quotation marks omitted).

Once Plaintiffs' federal claims are dismissed, the Court should decline to exercise

jurisdiction over the remaining state-law claims, which raise novel questions under the Utah

Constitution and Utah Code. *See, e.g.*, *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726-

27 (1966) ("Certainly, if the federal claims are dismissed before trial . . . the state claims should

be dismissed as well."); *Bauchman v. West High School*, 132 F.3d 542, 549 (10th Cir 1997) (finding trial court abused discretion by exercising jurisdiction over state-law claims after dismissal of federal claims). Regardless, Plaintiffs' state-law claims also fail on the merits.

## RELEVANT FACTS

1. On November 4, 2024, the Fourth District Court, State of Utah "COMMANDED" "any peace officer in the State of Utah" to execute a search warrant on Bridger Lee Jensen ("Jensen") at 1969 N State Street, Provo, Utah. [*See* Dkt. 13-14 ("Search Warrant")].[1]

2. The Fourth District Court expressly determined "that there is probable cause to believe" that Singularism's property possessed "Psilocybin Mushrooms" in violation of Utah law. [*Id.*].

3. On November 11, 2024, Provo executed the search warrant and seized "Psilocybin" and "THC," among other things. [*See* Ex. C to Complaint; Dkt. 13-15].

4. Plaintiffs emailed a Notice of Claim to Defendants on November 19, 2024. [*See* Complaint (Dkt. 2-2) ¶ 15].

5. Plaintiffs filed their Complaint against Defendants on November 19, 2024. [*See* Utah Fourth District Court Docket (Dkt. 2-3)].

6. Plaintiffs' first cause of action is asserted under "42 U.S.C. § 1983 and the First Amendment to the U.S. Constitution." [*See* Complaint (Dkt. 2-2) p. 18]. Plaintiffs allege the First Amendment provides the constitutional right to "freely exercise their entheogenic religious

---

[1] The search warrant also was included as Exhibit B to the Complaint. [*See* Complaint (Dkt. 2-2) ¶ 33]. *See also Slater v. A.G. Edwards & Sons, Inc.*, 719 F.3d 1190, 1196 (10th Cir. 2013) (on a motion to dismiss, the court "may consider, in addition to the complaint, documents incorporated by reference into the complaint.")

3

ceremonies" despite the provisions of the Utah CSA. [*See id.* at ¶ 66].

7.      Plaintiffs fourth cause of action is asserted under "42 U.S.C. § 1983 and the Fourth Amendment to the U.S. Constitution." [*See id.* at p. 24].  Plaintiffs allege Defendants violated the constitutional assurance that "no warrants shall issue against [Plaintiffs] without probable cause" when Defendants sought "a search warrant without probable cause," "detain[ed] Mr. Jensen," "threatened to bring criminal charges," "search[ed] Singularism's religious center," "seize[d] Singularism's sacramental psilocybin," and "threaten[] Singularism's landlord" to evict Singularism. [*Id.* at ¶¶ 105-108].

8.      Plaintiffs' remaining claims rely on Utah law. [*Id.* at ¶¶ 77-89 (second cause of action asserting a claim under "Article I, Section 4 of the [Utah] Constitution"); ¶¶ 90-10 (third cause of action asserting a claim under Utah's Religious Freedom Restoration Act); ¶¶ 114–23 (fifth cause of action asserting a claim under Article I, Section 14 of the Utah Constitution); ¶¶ 124-32 (sixth cause of action seeking a declaratory judgment and injunction)].[2]

## ARGUMENT

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to seek dismissal of any claim that "fail[s] to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6).  A Rule 12(b)(6) motion tests the legal sufficiency of the complaint.  When considering a motion to dismiss, the court views the complaint in a light most favorable to the plaintiff. *See Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006).  A claim, however, must be dismissed if the claim

---

[2] Plaintiffs also assert a sixth cause of action, however, that "claim" is for "Declaratory and Injunctive Relief." [Complaint (Dkt. 2-2) ¶¶ 124-132].  Plaintiffs sixth claim alleges a remedy, not a claim.  Furthermore, it does so based on the prior claims and allegations alleging violations "of their constitutional and statutory rights." [*Id.* at ¶ 127].  Because this sixth claim relies upon the five prior claims, it is not separately addressed.

is not "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Stated succinctly, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In determining the adequacy of a complaint in the context of a motion to dismiss, a court does not accept legal conclusions as true. Rather, a complaint "must be supported by factual allegations" that make out a viable claim. *Ashcroft*, 556 U.S. at 679. Additionally, "the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for [their] claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). The "requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008).

Under these standards, Plaintiffs fail to state a viable claim for relief against Defendants.

## I.   PLAINTIFFS' FIRST CAUSE OF ACTION SHOULD BE DISMISSED BECAUSE PLAINTIFFS CANNOT ESTABLISH A FIRST AMENDMENT VIOLATION.

At its core, "the Free Exercise Clause . . . 'protects religious observers against unequal treatment' and against 'laws that impose special disabilities on the basis of religious status.'" *Espinoza v. Mont. Dep't of Revenue*, 591 U.S. 464, 475 (2020) (quoting *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 461 (2017)). Accordingly, the government is prevented from burdening a plaintiff's "sincere religious practice pursuant to a policy that is not 'neutral' or 'generally applicable' . . . unless the government can satisfy 'strict scrutiny' by demonstrating its

course was justified by a compelling state interest and was narrowly tailored in pursuit of that interest." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 525 (2022).

However, "laws incidentally burdening religion are ordinarily not subject to strict scrutiny under the Free Exercise Clause so long as they are neutral and generally applicable." *Fulton v. City of Philadelphia*, 593 U.S. 522, 533 (2021) (citing *Emp. Div. v. Smith*, 494 U.S. 872, 878-82, (1990)); *see also Chiles v. Salazar*, 116 F.4th 1178, 1224 (10th Cir. 2024) (ruling Free Exercise claim not subject to strict scrutiny because law was neutral and generally applicable). "Government actions that stem from 'neutral' rules of 'general applicability' are subject to rational basis review, even if the application of the neutral rule 'has the incidental effect of burdening a particular religious practice.'" *Chiles*, 116 F.4th at 1222 (quoting *Taylor v. Rosell Indep. Sch. Dist.*, 713 F.3d 25, 52 (10th Cir. 2013)). "[W]e have never held that an individual's religious beliefs excuse him from compliance with an otherwise valid law . . . ." *Emp. Div., Dep't of Human Res. of Oregon v. Smith*, 494 U.S. 872, 878-89 (1990) (rejecting First Amendment claim for religious peyote use). Thus, Defendants' enforcement of relevant laws that prohibit a citizen's possession, consumption, or distribution of controlled substances is not a violation of that citizen's First Amendment rights so long as the laws that are being enforced are neutral and generally applicable.

Utah's Controlled Substances Act ("Utah CSA") is neutral and generally applicable. The objectives of the Utah CSA are not to infringe and burden religion. Certainly, they were not intended to target or burden Singularism. Indeed, Singularism was not even formed until decades after the Utah CSA was enacted. [*See* Complaint (Dkt. 2-2) ¶ 16 (Singularism was founded "[i]n the fall of 2023")]. This Court should review Defendants' enforcement of these neutral and

generally applicable controlled substance laws under a rational basis analysis.

Under the Utah CSA, psilocybin is identified as a Schedule I drug. "Schedules I, II, III, IV, and V consist of the following drugs or other substances . . . : (a) Schedule I: . . . (iii) unless specifically excepted or unless listed in another schedule, any material, compound, mixture, or preparation which contains any quantity of the following hallucinogenic substances . . . : (Y) Psilocybin[.]" Utah Code § 58-37-4(2)(a)(iii)(Y). Utah law, like federal law, restrains the right to possess and distribute Schedule I drugs:

> Every person who manufactures, produces, distributes, prescribes, dispenses, administers, conducts research with, or performs laboratory analysis upon any controlled substance in Schedules I through V within this state, or who proposes to engage in manufacturing, producing, distributing, prescribing, dispensing, administering, conducting research with, or performing laboratory analysis upon controlled substances included in Schedules I through V within this state shall obtain a license issued by the [Division of Professional Licensing].

*Id.* at § 58-37-6(2)(i). Furthermore, "controlled substances in Schedules I through V may be distributed only by a licensee and pursuant to an order form prepared in compliance with division rules or a lawful order under the rules and regulations of the United States." *Id.* at § 58-37-6(6).

Similarly, the federal Controlled Substances Act ("CSA"), 21 U.S.C. §§ 801-907, makes it unlawful to possess or to "manufacture, distribute, or dispense" any controlled substance, except as authorized by the Act itself. 21 U.S.C. §§ 841(a)(1), 844(a). In its enactment of the CSA, Congress found that "the illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people." *Id.* at § 801(2). With respect to mind-altering psychotropic substances in particular, "Congress has long recognized the danger involved in the[ir] manufacture, distribution, and use . . . for nonscientific and non-medical purposes," and has

concluded that "it is . . . essential that the United States cooperate with other nations in establishing effective controls over" them. *Id.* at § 801a(1). Schedule I of the CSA applies to "any material, compound, mixture, or preparation, which contains any quantity of the following hallucinogenic substances." *Id.* at § 812(c) (Schedule I(c)). One such substance is psilocybin. *Id.* at § 812(c) (Schedule I(c)(15)).

The Utah CSA, which borrows from the CSA, is neutral. The Utah CSA does not "restrict religious practices *because of their religious nature.*" *Chiles*, 116 F.4th at 1223 (citing *Fulton*, 593 U.S. at 533) (emphasis in *Chiles*). There is nothing in the text of the Utah CSA or history of that act that even suggests its objective was to "infringe or restrict practices because of their religious motivation." *Id.* Controlled substance laws were not enacted with any religion as their target. They certainly were not targeting Singularism; it did not even exist when the Utah CSA was enacted.

Similarly, the Utah CSA is generally applicable. Although there are "secular" exceptions for possession and distribution of psilocybin, e.g., licensed health care providers, these laws still do not differentiate based on religion. They apply equally to all licensed health care providers and patients, "regardless of their religious beliefs or affiliations." *Id*. at 1225. Furthermore, medical exemptions exist throughout the Utah CSA and federal CSA. Indeed, that is the reason why pharmacies and doctors' prescriptions exist. *See, e.g.*, Utah Code § 58-37-8. A system that uniformly allows for medical oversight of controlled substances does not violate the First Amendment. *See, e.g.*, *Smith*, 494 U.S. at 874 (affirming CSA prohibition on religious peyote use after recognizing CSA made substances illegal "unless the substance has been prescribed by a medical practitioner"); *Olsen v. Mukasey*, 541 F.3d 827, 832 (8th Cir. 2008) (rejecting argument

that CSA was "not generally applicable" because it allows "certain research and medical uses of marijuana"); *Michigan Cath. Conf. & Cath. Fam. Servs. v. Burwell*, 755 F.3d 372, 394 (6th Cir. 2014) ("A law need not apply to every person or business in America to be generally applicable. A law is generally applicable if it does not make distinctions based on religion.").

Courts repeatedly have ruled that neutral and generally applicable controlled substance laws do not violate the First Amendment. *See, e.g.*, *Smith*, 494 U.S. at 875; *Multi-Denominational Ministry of Cannabis and Rastafari, Inc. v. Holder*, 365 F. App'x 817, 819 (9th Cir. 2010) ("Because drug laws are both neutral and generally applicable, they may be enforced even if doing so substantially burdens one's religion." (cleaned up)); *Peyote Way Church of God v. Thornburgh*, 922 F.2d 1210, 1213 (5th Cir. 1991) (ruling drug law "does not offend the First Amendment's free exercise clause"); *Olsen v. Drug Enforcement Agency*, 878 F.2d 1458, 1461 (D.C. Cir. 1989) (J. Bader Ginsburg) ("[F]ree exercise clause does not compel DEA to grant [plainitff] an exemption immunizing his church from prosecution for illegal use of marijuana."); *United States v. Greene*, 892 F.2d 453, 456-57 (6th Cir. 1989) ("Congress may control the use of drugs that it determines to be dangerous, even if those drugs are used for religious purposes."). The law is so well-established that courts have deemed ongoing challenges "frivolous." *See, e.g.*, *Gallagher v. Dhillion*, 2020 WL 2737246, at *2 (N.D. Tex. May 7, 2020) (ruling plaintiff's challenges were "futile and should be dismissed as legally frivolous"); *Dee v. United States*, 241 F. Supp. 2d 50, 51 (D. Maine 2003) ( "Dee's constitutional challenge is frivolous.").

The Utah CSA addresses harmful substances in a manner that is facially neutral and does not target any specific sect of religion. Defendants' enforcement of that generally applicable law does not violate Plaintiffs' First Amendment rights. Accordingly, Plaintiffs cannot maintain a

§ 1983 claim for alleged violations of their First Amendment rights. The Court should dismiss Plaintiffs' first claim for relief with prejudice.

## II. DEFENDANTS ARE ENTITLED TO ABSOLUTE IMMUNITY FROM PLAINTIFFS' FOURTH AMENDMENT CLAIM.

Plaintiffs' Fourth Claim stakes its allegations on the protections offered by the Fourth Amendment of the United States Constitution. [*See* Complaint (Dkt. 2-2) ¶¶ 105-113. The Fourth Amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend IV.

This is not a case where no warrant was issued or where a neutral magistrate did not make a finding of probable cause. Rather, the Fourth District Court, State of Utah, determined there was probable cause to issue a search warrant. That same court then "COMMANDED" Defendants "to make a search." [*See* Dkt. 13-14 (search warrant)].

The Tenth Circuit has held that "just as judges acting in their judicial capacity are absolutely immune from liability under section 1983, officials charged with the duty of executing a facially valid court order enjoy [ ] absolute immunity from liability for damages in suit challenging conduct prescribed by that order." *See Moss v. Kopp*, 559 F.3d 1155, 1163 (10th Cir. 2009) (internal quotation marks omitted). Specifically for law enforcement officers, "the law in the Tenth Circuit has been that law enforcement officers are also entitled to absolute 'quasi-judicial' immunity for their actions in executing facially valid warrants, writs, and other court orders, such as bench warrants." *Zamora v. City of Belen*, 383 F. Supp. 2d 1315, 1325-26 (D.N.M.

April 27, 2005) (string citation omitted).  Stated differently, "officers sworn to execute court orders are shielded by absolute immunity in the performance of their duty."  *Valdez v. Denver*, 878 F.2d 1285, 1288 (10th Cir. 1989).

It has long been established that "a search warrant and its supporting affidavit are presumed valid and a 'magistrate's determination of probable cause should be paid great deference by reviewing courts.'"  *United States v. Magers*, 123 F. App'x 344, 347 (10th Cir. Utah 2005) (unpublished; quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)).  Thus, even law enforcement officials who "reasonably but mistakenly conclude that probable cause is present" are entitled to immunity.  *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The United States Supreme Court has set forth the parameters of searches pursuant to an issued warrant: "[I]f the apparent facts set out in the affidavit are such that a reasonably discreet and prudent man would be led to believe that there was a commission of the offense charged, there is probable cause justifying the issuance of a warrant."  *Dumbra v. United States*, 268 U.S. 435, 441 (1925).  In the context of a search warrant for particular items, this includes "circumstances which would warrant a person of reasonable caution [to believe] that the articles sought are at a particular place."  *United States v. Biglow*, 562 F.2d 1272, 1279 (10th Cir. 2009).  Further, the United States Supreme Court has established that "[p]robable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *United States v. Grubbs*, 547 U.S. 90, 95 (2006) (internal quotation marks and citation omitted).

Here, Judge Sean Petersen executed a search warrant on November 4, 2024.  [*See* Complaint (Dkt. 2-2) ¶ 33, Ex. B].  The Complaint attached that warrant.  [*See id.* at ¶ 33].  The Search Warrant specifically identifies the location where the search warrant may be executed, the

person on whom the search warrant may be executed, and the suspected contraband to be discovered and retained under the warrant. *See Grubbs*, 547 U.S. at 95. Upon receipt of the Search Warrant, the law enforcement officers complied with the terms and conditions set forth in the Search Warrant. The officers executed the Search Warrant on November 11, 2024. During the execution of the Search Warrant, law enforcement discovered and seized 459.8 grams of psilocybin mushrooms, psilocybin paraphernalia, and two fluid ounces of THC liquid syrup. [*See* Return to Search Warrant, Dkt. 13-15; *see also* Complaint (Dkt. 2-2) ¶ 41 (referencing the Return to Search Warrant and alleging "law enforcement removed psilocybin . . . and . . . THC[.]")].

Defendants have absolute immunity in their execution of the Search Warrant in the manner the Fourth District Court commanded. Accordingly, this Court should dismiss Plaintiffs' fourth claim for relief.

## III. THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' STATE LAW CLAIMS.

Plaintiffs' remaining claims are premised in state law. The United States Code dictates that the "district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Plaintiffs' second claim is for relief under article I, section 4 of the Utah Constitution. Plaintiffs' third claim is for relief under Utah's Religious Freedom Restoration Act. And Plaintiffs' fifth claim seeks relief under article I, section 14 of the Utah Constitution. Plaintiffs' Complaint also alleges that at all relevant times they and each of the Defendants are residents and/or located in the State of Utah. [*See* Complaint (Dkt. 2-2) ¶¶ 1-9]. There is, therefore, no allegation related to diversity jurisdiction. *See* 28 U.S.C. § 1332.

Because Plaintiffs second, third, and fifth claims are premised in state law, and there is no diversity jurisdiction issue, this Court should decline to exercise supplemental jurisdiction once the federal claims have been dismissed.

"Needless decisions of state law should be avoided . . . ." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). "Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well." *Id.* "Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals." *Id.* "The beneficial effect of permitting a Utah state court to determine the private rights of action under the Utah Constitution far outweighs any negative consequences (*i.e.*, delay) of declining to exercise pendent jurisdiction." *Bauchman v. West High School*, 132 F.3d 542, 549 (10th Cir. 1997). "Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995)

Although district courts have discretion to evaluate pendent jurisdiction, that discretion is not boundless. For example, the Tenth Circuit determined the trial court "abused its discretion by exercising jurisdiction" over claims asserted under the Utah Constitution after the court dismissed the "federal claims on the pleadings." *Bauchman*, 143 F.3d at 549-50.

In *Bauchman,* the Tenth Circuit reversed the district court's exercise of pendant jurisdiction over state law issues that "Utah courts have never squarely addressed." *Id.* at 549. Relying on *United Mine Workers v. Gibbs*, 383 U.S. 715, the Tenth Circuit held, "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties."

*Bauchman*, 132 F.3d at 549. "If federal claims are dismissed before trial, leaving only issues of state law, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Id.* (quoting *Carnegie-Mellon University v. Cohill,* 484 U.S. 343, 350 (1988)).

In *Hubbard v. Oklahoma ex. rel. Oklahoma Department of Human Services*, 759 F. App'x 693 (10th Cir. 2018), the Tenth Circuit addressed the district court's dismissal of the plaintiff's § 1983 claims as well as the plaintiff's state law claims with prejudice. *Id.* The Tenth Circuit upheld the district court's dismissal of the § 1983 claims with prejudice, but it reversed the district court's dismissal with prejudice of the state law claims. *Id.* at 714. The Tenth Circuit again held, "[w]hen, as here, a district court dismisses all federal claims, it would normally dismiss the state claims without prejudice, so that the plaintiff could pursue them in state court." *Id.* "This is especially so when, as here, the claims present potentially unsettled questions of state law." *Id.*

Indeed, the Tenth Circuit has routinely reversed a district court's ruling on state law claims when those claims are all that remain in the case. *See, e.g.*, *Sandberg v. Englewood, Colorado*, 727 F. App'x 950, 965 (10th Cir. 2018) ("[W]e conclude the district court erred by exercising jurisdiction over the state law claims after it had dismissed the federal causes of action."); *George v. Newman*, 726 F. App'x 699, 708 (10th Cir. 2018) ("Whenever a district court dismisses a state-law claim with prejudice before trial, we typically reverse and remand with instructions to dismiss without prejudice."); *Est. of Reat v. Rodriguez*, 824 F.3d 960, 967 (10th Cir. 2016) (same); *Merrifield v. Bd. of Cnty. Comm'rs for Cnty. of Santa Fe*, 654 F.3d 1073, 1086 (10th Cir. 2011) (same); *Brooks v. Gaenzle*, 614 F.3d 1213, 1230 (10th Cir. 2010) (reversing a grant of summary judgment on state claims and instructing district court to dismiss without prejudice).

Here, Plaintiffs' remaining claims are not only based on state law, but also address

unsettled questions of law. At the heart of Plaintiffs' case is Utah's Religious Freedom Restoration Act. [Complaint (Dkt. 2-2) ¶¶ 90-103; *see also* Order Granting Temporary Restraining Order (Dkt. 24) (issuing an injunction based exclusively on Plaintiff's claims under "the Utah RFRA.")]. The Utah RFRA was enacted just 8 months ago. As of the date of this Motion, neither the Utah Court of Appeals nor the Utah Supreme Court has issued an opinion even mentioning or citing the Utah RFRA. In short, the Utah RFRA presents several unsettled, never-before-addressed questions of state law. "Notions of comity and federalism demand that a state court try its own lawsuits." *Hubbard,* 759 F. App'x at 714.

## IV. EVEN IF THE COURT EXERCISES SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' STATE LAW CLAIMS, PLAINTIFFS ARE NOT ENTITLED TO RELIEF FOR ANY OF THOSE CLAIMS.

Even if the Court were to ignore Tenth Circuit precedent and exercise pendant jurisdiction over the state law claims, those claims should still be dismissed on the merits.

### A. Plaintiffs' Claim Under the Utah Constitution's Religious Liberty Section Fails Because the Utah Constitution Does Not Legalize Hallucinogenic Drugs.

Article I, section 4 of the Utah Constitution "rests on the concept of governmental neutrality." *Soc'y of Separationists, Inc. v. Whitehead*, 870 P.2d 916, 936 (Utah 1993). Both the language of that text and the history of its adoption "identify three complementary themes: (i) a distancing of government from involvement with religion, (ii) nonsectarianism to the extent there is government involvement with religion, and (iii) government neutrality—the maintenance of a level playing field in civil matters—as between religious and nonreligious sentiments." *Id.* Utah's Constitution ensures "neutrality towards conscientious sentiments, religious or irreligious." *Id.*

When the government acts "in an impartial manner," any burdens and benefit "'flowing to religious worship, exercise, or instruction can be fairly characterized as indirect because the benefit

flows to all those who are beneficiaries of the use of government money or property, which may include, but is not limited to, those engaged in religious worship, exercise, or instruction.'" *Summum v. Pleasant Grove City*, 2015 UT 31, ¶ 8, 345 P.3d 1188 (quoting *Soc'y of Separationists, Inc.*, 870 P.2d at 937). "If a city permits groups to use city-owned facilities, that use must be permitted without regard to the belief system of the user." *Soc'y of Separationists, Inc.*, 870 P.2d at 938; *see also Carson v. Makin*, 596 U.S. 767, 778 (2022) ("[A] State violates the Free Exercise Clause when it excludes religious observers from otherwise available public benefits."). However, the Utah Constitution does not require (or allow) the alteration of an existing standard for the benefit of one religious sect.

In *Summum v. Pleasant Grove City*, 2015 UT 31, 345 P.3d 1188, the Utah Supreme Court refused "an injunction requiring Pleasant Grove to display" the plaintiff's religious text in a park. *Summum*, 2015 UT 31, ¶ 11. It was not enough for the plaintiff to establish the city had a "display of the Ten Commandments" in a public park. *Id.* at ¶ 9. Even "[a]ssuming the Ten Commandments monument amounts to religious exercise, requiring Pleasant Grove to erect a second religious monument would not" result in the type of broad religious neutrality the Utah Constitution requires. *Id.* at ¶ 11. It would instead elevate the plaintff's beliefs while ignoring "multiple religious denominations, agnosticism, or atheism." *Id.* Total neutrality is the test under Utah's Article 1, section 4.

The Utah CSA complies with the constitutional standard of neutrality. It is a uniform law that applies to everyone in the State of Utah. The Utah CSA was not enacted to impair Singularism's alleged beliefs. Singularism was not formed until decades after the Utah CSA classified psilocybin as a Schedule I drug. *See, e.g.*, Utah Code Ann. § 58-37-4 (West 2004). [*See*

*also* Jensen Dec. (Dkt. 9-1) at ¶ 18 (Singularism founded in "fall of 2023")].  Plaintiffs cannot establish that a longstanding law enacted and enforced for non-religious reasons violates the constitutional "concept of governmental neutrality."  *Soc'y of Separationists, Inc.*, 870 P.2d at 937.

Utah law at the time of statehood further rebuffs Plaintiffs' constitutional arguments.  *See South Salt Lake City v. Maese*, 2019 UT 58, ¶ 18, 450 P.3d 1092 ("When we intrepret constitutional langauge, we start with the meaning of the text as understood when it was adopted.").  Ten years before the Utah Constitution was finalized, the Supreme Court of the Territory of Utah affirmed a city ordinance that allowed only "druggists" to "sell such liquors as medicine."  *Provo City v. Shurtliff*, 5 P. 302, 302-03 (Utah 1885).  Three years after the constitution was adopted, the Utah Legislature dedicated an entire Title of the Utah Code to "Pharmacy."  *See* Revised Statutes of Utah §§ 1711-27 (Title 51).  Among other things, the 1898 code declared, "it shall not be lawful for any person other than a registered pharmacist to compound or dispense drugs." *Id.* at § 1711; *see also id.* at § 42 (authorizing cities to "punish and prohibit" opium); *id.* at § 38 (allowing cities to "license, tax, and regulate" "druggists").  Plaintiffs cannot establish that the Territory of Utah's and  State of Utah's continuous, religiously-neutral regulation of drugs and alcohol violates the original intent of the Utah Constitution.

B.  <u>Defendants' Enforcement of the Controlled Substance Laws Does Not Violate Plaintiffs' Rights Under the Utah Religious Freedom Restoration Act.</u>

Plaintiffs' claims under the Utah RFRA should be dismissed because 1) the Utah RFRA does not allow parties to seek monetary damages; 2) Plaintiffs did not give the appropriate notice; and 3) Utah law does not substantially burden singularism.

*1.       Plaintiffs' Claims for Damages under the Utah RFRA Must Be Dismissed.*

Plaintiffs' attempt to collect damages under Utah's RFRA must be dismissed because that act does not allow for "damages" as a remedy. Rather, aside from an injunction, the only relief afforded by the Utah RFRA is "[a] person who prevails in an action to enforce the provisions of this section against a government entity is entitled to recover reasonable attorney fees and costs." Utah Code § 63G-33-201(6). The Utah RFRA makes no mention of damages being available as a remedy to plaintiffs relying on its provisions. The omission of damages as an available remedy is not a mere oversight; it is presumed to be purposeful. *2 Ton Plumbing, L.L.C. v. Thorgaard*, 2015 UT 29, ¶ 47 ("When faced with a question of statutory interpretation, our general rule is that we will "give effect to omissions in statutory language" by presuming them to be purposeful.").

Defendants acknowledge that in *Tanzin v. Tanvir,* 592 U.S. 43 (2020), the United States Supreme Court held that the federal RFRA allowed for damages against federal officials who violated RFRA. *Id.* at 52. However, *Tanzin* and the federal RFRA are both distinguishable and inapplicable on this issue. First, the language in the federal RFRA and the Utah RFRA is not the same:

| **The Federal RFRA** | **The Utah RFRA** |
|---|---|
| "A person whose religious exercise ***has been*** burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain ***appropriate relief*** against a government." 42 U.S.C.A. § 2000bb-1 | "A person whose free exercise of religion ***is*** burdened in violation of this section: (a) may assert the violation as a claim or defense in a judicial…proceeding ***to obtain relief."*** Utah Code § 63G-33-201 |

While the federal RFRA allows a person to seek "appropriate relief" for a violation that "has been," the Utah RFRA only allows a person to "obtain relief" when their free exercise of

religion "is" burdened.  Although the textual differences are relatively minor, those differences must be presumed intentional.  In addition, these minor differences have outsized meaning given the Supreme Court's analysis in *Tanzin.* In that case, the Supreme Court reasoned that the federal RFRA must have intended "appropriate relief" to include damages because that may be "the only form of relief" when a right "***has been***" burdened.  *See Tanzin,* 592 U.S. at 51. Conversely, the Utah RFRA only allows a plaintiff to seek relief if their exercise of religion "***is*** burdened."  Utah Code § 63G-33-201.  If a right has been – but no longer is – burdened (e.g., the issue was corrected), the Utah RFRA does not allow a claim.  The issue is moot.

Additionally, the Supreme Court in *Tanzin* recognized that the federal RFRA did not waive sovereign immunity for claims against state actors. *Id.* ("[T]his case features a suit against individuals who do not enjoy sovereign immunity.").  Likewise, the Utah RFRA does not waive immunity.  Instead, such immunity is expressly retained: "A governmental entity, its officers, and its employees are immune from suit and immunity is not waived, for any injury proximately caused by a negligent act or omission…if the injury arises out of or in connection with or results from…a violation of civil rights." Utah Code § 63G-7-201(4).   "A statute does not waive sovereign immunity . . . unless that disposition is unequivocally clear."  *See* Scalia & Garner, *Reading Law: The Interpretation of Legal Texts*, 281 (2012).  The Utah RFRA does not unequivocally waive immunity and allow for monetary damages awards against government entities.

2.      *Plaintiffs Did Not Give Notice Utah RFRA or Governmental Immunity Act.*

Under the Utah RFRA, "a person may not bring an action under this section against a government entity . . . unless, at least 60 days before the day on which the person brings the action, the person provides written notice to the government entity."  Utah Code § 63G-33-201(5)(a).

Likewise, "any person having a claim against a governmental entity, or against the governmental entity's employee . . . shall file a written notice of claim with the entity before maintaining an action." *Id.* at § 63G-7-401.

It is undisputed that Plaintiffs did not provide any notice to any of Defendant in compliance with Utah Code § 63G-7-401.

> 3. *Seeking a Criminal Conviction Does Not Constitute a Substantial Burden Under the Utah Code.*

To prevail on a claim under the Utah RFRA, Plaintiffs must establish government action that "substantially burdens" their religious beliefs. *See* Utah Code § 63G-33-201. They cannot do so as a matter of statutory interpretation.

The Utah RFRA defines "substantially burden." *See id.* at § 63G-33-101(6). Initially, the code vaguely identifies action that "constrains, limits, or denies the free exercise of religion" or "compels a person to act, or fail to act." *Id.* at § 101(6)(a). However, the Utah Code continues with specific examples. It clarifies that "'substantially burden' includes: . . . (A) withholding a government benefit; (B) ***assessing*** criminal, civil, or administrative penalties or damages; or (C) excluding a person from a government program or from access to a government facility or service." *Id.* at § 63G-33-101(6)(b) (emphasis added).

Plaintiffs' Complaint does not allege that Defendants withheld a government benefit or excluded them from a government program or facility. *See id.* Nor have they alleged that Defendants have assessed criminal or civil penalties or damages. Instead, they can contend only that Defendants are ***seeking*** criminal penalties.

The Utah Legislature's use of "assessing" criminal penalties – instead of seeking criminal penalties – must be given meaning. *See* Scalia & Garner, *Reading Law: The Interpretation of*

20

*Legal Texts*, 107 (2012) ("The expression of one thing implies the exclusion of others . . . ."). Moreover, that distinction is specifically consistent with the longstanding treatment of other religious exemptions. For example, the Utah Legislature provided a limited right to use "peyote for bona fide traditional ceremonial purposes in connection with the practice of a traditional Indian religion." Utah Code § 58-37-8(12) (preventing "[c]ivil or criminal liability"). However, the Legislature *did not* prevent or penalize a law enforcement officer or prosecutor who doubted or challenged the application of that exception to a specific party by *seeking* a criminal conviction. Instead, the Utah Legislature made the religious usage "an affirmative defense." *Id.* Similarly, the Utah RFRA does not prevent or penalize Defendants from seeking a criminal conviction – either against Singularism or a "traditional Indian religion." Instead, Plaintiffs can claim a religious exception and, if established, prevent the Fourth District Court from "assessing a criminal . . . penalt[y]." *Id.* at § 63G-33-101(6)(b)(i)(B).

This interpretation gives meaning to the specific example identified by the Utah Legislature. *See id.* It also is fully consistent with the broader, introductory portion of the statute's definition of "[s]ubstantially burden." *Id.* at § 63G-33-101(6)(A). A criminal *conviction* "compels a person to act, or fail to act" or "constrains, limits or denies" the criminal conduct. *Id.* However, an unsuccessful prosecution does not. If Plaintiffs successfully defend against the criminal charges based on the Utah RFRA and their alleged religion, they will remain free to continue their religious practices. It is the imposition of criminal penalties – not the judicial adjudication of parties' rights – that punishes and legally proscribes a party's action. Until such conviction exists, no criminal penalty has been assessed. And, of course, Plaintiffs are presumed innocent unless and until a conviction is entered.

Plaintiffs' claims under the Utah RFRA should be dismissed. They have not alleged a "substantial burden" under the express language of the Utah Code.

C.     <u>Defendants Are Entitled To Immunity From Plaintiffs' Fifth Claim Alleging Violations Under the Utah Constitution's Protection from Unreasonable Searches.</u>

In alliance with the federal case law, Utah law expressly grants law enforcement officers immunity from Plaintiffs' fifth claim. Plaintiffs seeks relief under Section 14 of the Utah Constitution, which like the Fourth Amendment, states:

> The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, particularly describing the place to be searched, and the person or thing to be seized.

Utah Const. art. I, sec. 14. Utah's constitutional protections to be free from unreasonable searches and seizures was not violated in this matter. A search warrant was issued by a neutral judge, who made an independent determination that there was probable cause.

Utah's Supreme Court has held that "article I, section 14 of the Utah Constitution often provides greater protections to Utah citizens than the Fourth Amendment, despite nearly identical language." *State v. Worwood*, 2007 UT 47, ¶ 16, 164 P.3d 397. However, "absent adequate briefing . . . cursory references to the state constitution within arguments otherwise dedicated to a federal constitutional claim are inadequate to raise a state constitutional issue." *Alpine Homes, Inc. v. City of W. Jordan*, 2017 UT 45, ¶ 17, 424 P.3d 95 (internal punctuation omitted) (quoting *Worwood*, 2007 UT 47, ¶ 18). Neither Plaintiffs' Complaint nor their Motion for Temporary Restraining Order and Preliminary Injunction distinguishes between the search and seizure protections of the U.S. Constitution and the Utah Constitution. Accordingly, this Court should analyze Plaintiffs' state constitutional claim under the same federal analysis above and find

Defendants are entitled to absolute immunity.

Utah's Governmental Immunity Act ("UGIA") also immunizes the Defendants for their respective exercise of governmental functions. The UGIA establishes: "Each governmental entity and each employee of a governmental entity are immune from suit for any injury that results from the exercise of a governmental function." Utah Code § 63G-7-201(1). In determining whether immunity under the UGIA is granted to a governmental entity and an employee, Utah's courts apply a three-part test, which assesses: "(1) whether the activity undertaken is a governmental function; (2) whether governmental immunity was waived for the particular activity; and (3) whether there is an exception to that waiver." *Van de Grift v. State*, 2013 UT 11, ¶ 18, 299 P.3d 1043 (quotation simplified).

First, there is no dispute that Defendants were all acting in their respective roles as law enforcement and prosecutors. UGIA defines government function broadly to mean "each activity, undertaking, or operation performed by a department, agency, employee, agent, or officer of a governmental entity." Utah Code § 63G-7-102(5)(b). All the complained of actions by Defendants were governmental functions. The law enforcement defendants and prosecutor defendant were acting in their official capacities when they investigated the crimes committed by Plaintiffs, sought a search warrant, executed the search warrant, and seized contraband.

Second, the UGIA is clear that a "governmental entity and an employee of a governmental entity retain immunity from suit unless that immunity has been expressly waived." *Id.* at § 63G-7-101(3); *see also id.* at § 63G-7-201(1) ("each governmental entity and each employee of a governmental entity are immune from suit for any injury that results from the exercise of a governmental function."). Section 63G-7-301 of the UGIA lists the express waivers of immunity

and none apply.  *See id.* at § 63G-7-301.

Third, there is no exception.  In recently explaining the effect of immunity under Utah Code § 63G-7-201(4), the Utah Court of Appeals emphasized that, "the UGIA makes clear that governmental entities and their employees are immune from suit unless immunity is expressly waived."  *Graves v. Utah Cnty. Gov't*, 2024 UT App 80, ¶ 21, 551 P.3d 1029.  Like the plaintiff in *Graves*, "there is no express waiver in the UGIA for the intentional torts [Plaintiffs] claim."  *Id.* Defendants are entitled to immunity under Utah law. Accordingly, this Court should dismiss Plaintiffs' fifth claim for relief.

## <u>CONCLUSION</u>

Because Defendants have not violated Plaintiffs' federal or state rights of religious freedom or protection against unreasonable searches and seizures, this Court should dismiss each of Plaintiffs' claims against all Defendants.

Dated this 19th Day of December, 2024

JAMES DODGE RUSSELL & STEPHENS, P.C.

*/s/ Justin L. James*
Mitchell A. Stephens
Justin L. James
Dillon P. Olson

*Counsel for Utah County and Jeffrey Gray*

PROVO CITY LEGAL

*/s/ Gary Millward*
Gary D. Millward
Richard A. Roberts

*Counsel for Provo City, Troy Beebe, Brian Wolken, and Jackson Julian*