Mitchell A. Stephens (11775)
Justin L. James (15167)
Dillon P. Olson (16120)
JAMES DODGE RUSSELL & STEPHENS, P.C.
10 West Broadway, Ste. 400
Salt Lake City, Utah 84101
(801) 363-6363
mstephens@jdrslaw.com
jjames@jdrslaw.com
dolson@jdrslaw.com

*Attorneys for Defendants Utah County and Jeffrey Gray*

J. Brian Jones (11816)
Gary D. Millward (12170)
Richard A. Roberts (12217)
PROVO CITY ATTORNEY'S OFFICE
445 W Center St.
Provo, Utah 84601
(801) 852-6140
gmillward@provo.gov
rroberts@provo.gov

*Attorneys for Defendants Provo City, Troy Beebe, Brian Wolken, and Jackson Julian*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| BRIDGER LEE JENSEN; SINGULARISM; PSYCHE HEALING AND BRIDGING, LLC dba PSYCHEDELIC THERAPY JOURNEY;<br><br>Plaintiffs,<br><br>vs.<br><br>UTAH COUNTY; PROVO CITY; JEFFREY GRAY; TROY BEEBE; BRIAN WOLKEN; JACKSON JULIAN; JOHN DOES 1-;<br><br>Defendants. | **REPLY IN SUPPORT OF JOINT MOTION FOR EXPEDITED DISCOVERY**<br><br>Civil Case No. 2:24-cv-00887-JNP<br><br>Judge Jill N. Parrish |

Pursuant to Rule 7 of the Federal Rules of Civil Procedure, Defendants, by and through respective counsel of record, hereby submit this reply in support of their Joint Motion for Expedited Discovery (the "Motion"). [Dkt. 44]. Defendants respond to the arguments Plaintiffs raise in opposition to the Motion. [Dkt. 47].

1

**INTRODUCTION**

Knowing that much of the evidence in the record consists of nothing more than their own self-serving testimony, Plaintiffs oppose Defendants' efforts to obtain obviously relevant information in advance of a hearing on Plaintiffs' request for a preliminary injunction. However, neither Defendants nor this Court are required to accept Plaintiffs' selective testimony as gospel truth. Defendants must be afforded the opportunity to discovery and introduce evidence as to the religiosity and sincerity of Singularism's beliefs and practices, which have wide-reaching ramifications for Utah's controlled substances laws and public safety. Additionally, Plaintiffs are in exclusive possession of information and evidence directly relevant to Defendants' compelling government interests in protecting against illegal distribution and use of controlled substances, including how the controlled substances are acquired, the quantities of controlled substances imported into the State, and the risk the controlled substances (and possible contamination) poses to the general public. Plaintiffs offer no compelling reason why this Court should prevent Defendants from discovering material information on the claims and defenses at issue.

Instead, Plaintiffs categorize the sincerity and religiosity of their religious beliefs—which they themselves have placed at issue—as "outside the judicial realm" and beyond question. [Opp. at 3]. Contrary to Plaintiffs' assertions, however, questioning the sincerity and religiosity of alleged religious beliefs is precisely what the law requires. *United States v. Meyers*, 906 F. Supp. 1494, 1499 (D. Wyo. 1995) ("[W]hen an individual invokes the first amendment to shield himself or herself from otherwise legitimate state regulation, [courts] are required to make" determinations regarding religiosity and sincerity). Otherwise, Utah's Free Exercise of Religion Act (the "RFRA") "could easily become the first refuge of scoundrels" if parties "could justify illegal

conduct simply by crying religion." *Id.*

The universe of relevant information is largely within the possession of Plaintiffs and its members. Defendants were at an extreme disadvantage during the hearing for temporary restraining order because they were largely limited to cross-examination of Plaintiffs' carefully-selected and prepared witnesses. Allowing this disparity to continue at the preliminary injunction stage would be an extreme miscarriage of justice. Defendants require additional information, evidence, and testimony to challenge Plaintiffs' prima facie case and to present evidence supporting their affirmative defenses. And Defendants require this information and evidence in advance of any hearing for preliminary injunction.

Thus, the Motion should be granted.

## ARGUMENT

"[A] court may exercise its broad discretion to alter the timing, sequence, and volume of discovery, including granting expedited discovery." *Am. Equip. Systems, LLC v. Chester*, No. 2:23-cv-00680, 2023 WL 8261427, at *2 (D. Utah Nov. 29, 2023) (cleaned up). Plaintiffs do not dispute this Court's wide discretion to authorize expedited discovery in the context of a preliminary injunction. [*See* Opp. at 2 (acknowledging "good cause may exist" for expedited discovery "where a party seeks a preliminary injunction")].

As Plaintiffs acknowledge, the factors to be considered as part of a request of expedited discovery include:

> (1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made.

*Am. Equip. Systems, LLC*, 2023 WL 8261427, at *2. Each of these factors weigh in favor of

expedited discovery.

1. **The Pendency of a Preliminary Injunction.**

The record plainly shows that Plaintiffs have sought a preliminary injunction. [Dkt. 9]. All parties have requested a hearing on Plaintiffs' request for a preliminary injunction. [Dkt. Nos. 37, 45]. Thus, there can be no dispute that "the first factor weighs in favor of granting" Defendants' Motion. *Am. Equip. Systems, LLC*, 2023 WL 8261427, at *3.

2. **The Breadth of the Discovery is Proportional to the Needs of the Case.**

"A person claiming that the government has placed a substantial burden on his or her practice of religion must establish that the governmental action (1) substantially burdens (2) a religious belief, not just a philosophy or way of life, (3) which belief is sincerely held." *United States v. Quaintance*, 471 F. Supp.2d 1153, 1155 (D. N.M. 2006), *aff'd in* 315 Fed. App'x 711 (10th Cir. 2009). Plaintiffs must make this showing "by a preponderance of the evidence." *Id.*; *see also United States v. Meyers*, 95 F.3d 1475, 1482 (10th Cir. 1996). Thus, Plaintiffs claims under the RFRA require Plaintiffs to demonstrate both that Singularism constitutes a "bona fide" religion (not a philosophy or way of life), and a sincere belief in the religion. *See Meyers*, 906 F. Supp. 1499.

Despite placing both the religiosity and sincerity of their beliefs in dispute, Plaintiffs oppose Defendants' efforts to discover information and evidence relating to both issues. This is an improper attempt to tip the scales in Plaintiffs' favor and limit the vast majority of evidence concerning Plaintiffs' beliefs to their own self-serving and self-selected testimonies. Although Plaintiffs suggest it is impermissible for this Courts "to entangle itself in religious matters," [Opp. at 3], Plaintiffs' suggestion directly contradicts controlling law.

"[W]hen an individual invokes the first amendment to shield himself or herself from otherwise legitimate state regulation," courts "are ***required*** to make" determinations regarding the sincerity and religiosity of the individual's beliefs. *Meyers*, 906 F. Supp. at 1499 (emphasis added); *see also Gaddy v. Corp. of Pres. Of Church of Jesus Christ of Latter-Day Saints*, 551 F. Supp.3d 1206, 1218 (D. Utah 2021) ("[C]ourts are required to evaluate the sincerity of religious beliefs as a threshold question for litigants . . . seeking to assert affirmative rights under the First Amendment and the Religious Freedom Restoration Act."). Otherwise, Utah's Free Exercise of Religion Act (the "RFRA") "could easily become the first refuge of scoundrels" if parties "could justify illegal conduct simply by crying religion." *Meyers*, 906 F. Supp. at 1499; *DeVore v. Univ. of Ky. Bd. of Trustees*, 693 F. Supp.3d 757, 763 (E.D. Ky. 2023) (warning that failing to examine the sincerity of religious beliefs "would turn the First Amendment into a limitless excuse for avoiding all unwanted legal obligations"); *Dockery v. Maryville Academy*, 379 F. Supp.3d 704, 718–19 (N.D. Ill. 2019) ("Absent the ability to inquire into the sincerity of a person's religious beliefs, all statements of belief would have to automatically accepted as sincerely held and accommodated." (cleaned up)). Put simply, even where a party claims "the name of a religion as a protective cloak," "**[n]either the government nor the court has to accept the [party's] mere say-so**." *United States v. Bauer*, 84 F.3d 1549, 1559 (9th Cir. 1996) (emphasis added).

Where, as here, religiosity and sincerity are components of Plaintiffs' prima facie case, Defendants are entitled to seek discovery aimed at both topics. For example, in *Witham v. Hershey Co.*, No. 23-cv-1563, 2024 WL 4053028 (D. Minn. Sept. 5, 2024), and like Plaintiffs in this case, the plaintiff claiming free exercise protection argued that neither the defendant "nor the Court [was] permitted to probe into the nature of his claimed religious beliefs." *Id.* at *3. In rejecting

5

this claim, the court noted that the existence of "a bona fide religious belief is an essential element" of the plaintiff's claim, which entitled the defendant to "discovery bearing on this element." *Id.* The court further held that even though courts generally refrain from deciding the "validity or plausibility of a belief, ***courts should decide whether the beliefs are truly held and whether they are religious***." *Id.* at * 5 (emphasis added). Making this determination "demands a full exposition of facts and the opportunity for the factfinder to observe the claimant's demeanor during direct and cross-examination." *Id.* Indeed, a "sincerity analysis is most useful where extrinsic evidence is evaluated, as such evidence can show whether an adherent acted in a manner inconsistent with that belief or that the adherent materially gains by fraudulently hiding secular interests behind a veil of religious doctrine." *Cesare v. PACT MSO, LLC*, No. 3:23-cv-253, 2024 WL 2823193, at *4 (D. Conn. June 4, 2024) (cleaned up).

Plaintiffs' contention that the religiosity or sincerity of religious beliefs are "outside the judicial realm," [Opp. at 3], is simply wrong. *See, e.g.*, *United States v. Meyers*, 95 F.3d 1475 (10th Cir. 1996) (affirming finding that defendant's drug use was not protected as free exercise); *United States v. Quaintance*, 315 Fed. App'x 711 (10th Cir. 2009) (same); *United States v. Kuch*, 288 F. Supp. 439 (D.C. Cir. 1968) (same); *State v. Sobel*, 221 N.E.3d 44 (Ohio Ct. App. 2023) (rejecting contention that use of psilocybin mushrooms was "for religious and spiritual purposes").

Unsurprisingly, Plaintiffs fail to cite any authority prohibiting a party from conducting discovery into the religiosity and sincerity of a party's alleged religious beliefs. To the contrary, the authority Plaintiffs cite is inapposite, is not in the context of elements under RFRA, and has no bearing on the instant Motion. *See, e.g.*, *Fitzgerald v. Roncalli High Sch., Inc.*, No. 1:19-cv-04291, 2021 WL 4539199, at *2 (S.D. Ind. Sept. 30, 2021) (bifurcating discovery and allowing discovery

to proceed on defendant's right to terminate plaintiff under ministerial exception); *List Interactive, Ltd. v. Knights of Columbus*, 303 F. Supp.3d 1065, 1084 (D. Colo. 2018) (permitting discovery of religious membership information sought "to bolster [a] breach of contract claim"); *In re The Bible Speaks*, 69 B.R. 643, 648 (Bankr. D. Mass. 1987) (permitting discovery to proceed as "clearly relevant to the subject matter of this claim," noting that "[i]f relevant to the subject matter, information which is useful in preparation for trial may be discovered").

Plaintiffs primarily rely on *Whole Woman's Health v. Smith*, 896 F.3d 362 (5th Cir. 2018), to oppose expedited discovery. [Opp. at 3–4]. But unlike the Plaintiffs here, the church from whom discovery was sought in *Whole Woman's Health* was a *non-party*. *Id.* at 364. More specifically, the discovery in *Whole Woman's Health* concerned the propriety of a third-party subpoena to a church from "a public policy opponent." *Id.* at 373. The church filed a motion to quash, which was denied. *See id.* at 366. Thereafter, the church produced 4,321 pages of records and withheld approximately 1,700 pages as privileged under the First Amendment. *See id.* at 367. The church also submitted to a deposition. *See id.* at 366–67. The district court denied the motion to quash and compelled production of the information. *See id.*

On appeal, the Court of Appeals for the Fifth Circuit remanded but qualified its determinations as to relevancy and need based on the church's status as a third-party to the litigation. *See id.* at 375 (considering "relevancy and need" "[b]earing in mind that [church] is a third-party"). Importantly, no party in *Whole Women's Health* "challenge[d] the sincerity" of the church's religious beliefs. *Id.* at 371. And even after the district court rejected the church's privilege claims, the church produced "over 4,000 pages," sat for a deposition, and put in over "100 work hours" in responding to the subpoena. *Id.* Based on the discovery provided, the Fifth

7

Circuit noted that the party seeking discovery had already obtained the "ammunition" that it sought in discovery. *Id.* Even still, the court did "not finally resolve" the church's claims regarding privilege, which were "novel" in nature. *Id.* at 374.

Unlike the church in *Whole Women's Health*, the sincerity and religiosity of Singularism's beliefs are very much in dispute. Unlike the church in *Whole Women's Health*, Plaintiffs have not produced any documents, have not sat for a deposition, and have not provided any indication that they will cooperate in any discovery efforts. And unlike the church in *Whole Women's Health*, Plaintiffs are not third parties that received a subpoena. Plaintiffs themselves initiated this action and cannot shy away from the discovery obligations that correspond to their decision to file a lawsuit, which placed the sincerity and religiosity of their beliefs in question. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . .").[1]

Plaintiffs question "why Defendants need more discovery." [Opp. at 7]. They claim that three members "bore their souls" and testified that they have "never posed any harm to private or public safety." [*Id.* at 6–7]. However, Defendants are not obligated to accept Plaintiffs "mere say-so," *Bauer*, 84 F.3d at 1559, and are entitled to conduct discovery on the elements of Plaintiffs' prima facie case and regarding evidence and information that may challenge or undermine Plaintiffs' self-serving testimony. *See, e.g.*, *Hershey*, 2024 WL 4053028 (ascertaining religious sincerity "demands a full exposition of facts").

Therefore, this factor weighs in favor of expedited discovery.

---

[1] Plaintiffs' invocation of potential privilege objections does not insulate them from discovery. [Opp. at 5]. Plaintiffs will be free to raise privilege objections at the appropriate time and in accordance with the Federal Rules of Civil Procedure. Fed. R. Civ. P. 26(b)(5).

### 3. The Purpose for Requesting the Discovery.

As explained in their Motion, Defendants seek expedited discovery "to obtain information and evidence that Defendants require to rebut the evidence and assertions Plaintiffs set forth in their Motion for Preliminary Injunction." [Mot. at 4]. Seeking expedited discovery "to probe the allegations" made in conjunction with a preliminary injunction is "consistent with furtherance of the preliminary injunction, and an appropriate advancement of the litigation." *Icon Health & Fitness, Inc. v. Johnson Health Tech North America, Inc.*, No. 1:10-cv-00209, 2011 WL 13136539, at *2 (D. Utah March 1, 2011). Plaintiffs and related third parties are primarily, if not exclusively, in possession of all material evidence regarding the sincerity and religiosity of Plaintiffs' alleged beliefs. It is improper for Plaintiffs to conceal this information merely in hopes of obtaining favorable, preliminary relief.

In a conclusory fashion, Plaintiffs conclude that Defendants' discovery is not to "prepare for an upcoming preliminary injunction hearing" but to "chill the religious free exercise of Singularism and its religious community." [Opp. at 8]. However, Plaintiffs were the parties that put the sincerity and religiosity of Singularism's and its members beliefs at issue, not Defendants. Furthermore, the discovery sought is unquestionably aimed at preparation for the preliminary injunction hearing:

| **Discovery Requests** | **Relevant Issue for PI Hearing** |
|---|---|
| Interrogatories: 1, 5–9, 14<br>RFPs: 1–2 | Religiosity of Beliefs |
| Interrogatories: 1–9, 13–14<br>RFPs: 1–3, 5–10 | Religious Sincerity |
| Interrogatories: 1–3, 10, 12–13<br>RFPs: 1, 4, 6 | Compelling Governmental Interest |
| Interrogatories: 1, 5, 10–14<br>RFPs: 1–3, 5–10 | Witness Preparation |

| Interrogatories: 1, 7–9, 10–11<br>RFPs: 1–3, 9 | Witness Identification |

Defendants should not be deprived of discovery aimed at information and evidence relating to Plaintiffs' prima facie case, let alone based on Plaintiffs' speculation surrounding the motives behind the discovery. Indeed, to prove Defendants are not merely creating a "prosecution hit list," [Opp. at 9], Defendants will even stipulate to confidentiality designations that will limit the use of materials discovered in this matter to the "preparing for and conducting the litigation in which the information, documents, or other materials were disclosed." [Federal Standard Protective Order, § B(3).

Because the discovery is aimed at issues central to the preliminary injunction hearing, and because Plaintiffs offer nothing other than conjecture surrounding Defendants' motives, this factor weighs in favor of expedited discovery.

### 4. The Burden of Compliance with the Requested Discovery.

Plaintiffs claim that the requested 15-day response window is "virtually impossible." [Opp. at 8]. However, the 15-day response window is necessary in light of Plaintiffs' request for a hearing date to be scheduled "as soon as possible." [Dkt. 37]. If Plaintiffs insist on a hearing in January 2025, Defendants require the information and evidence sufficiently far in advance of the preliminary injunction hearing to adequately prepare, conduct follow-up discovery, and interview relevant witnesses that may be introduced at the hearing. Defendants are willing to accommodate additional time for Plaintiffs to respond. Providing additional time, however, will require scheduling the preliminary injunction hearing at a later date. Regardless, Plaintiffs should not be permitted to use the timing of the preliminary injunction hearing to avoid the discovery needed to present the necessary evidence and testimony. *See Am. Equip. Systems, LLC*, 2023 WL 8261427,

at *6 (recognizing that the need to expedited discovery outweighed potential prejudice).

Plaintiffs further claim that the discovery will cause individuals to "distance themselves from the faith." [Opp. at 9]. However, requiring Plaintiffs to participate in discovery over ***their own claims*** is not a burden "upon Plaintiffs' religious free exercise," [Opp. at 9], it is an obligation that every party bears in litigation. *Cf. United States v. Jeffs*, No. 2:16-cv-CR-82, 2016 WL 6745951, at *7–*8 (D. Utah 2016) (acknowledging that "the mere fact of prosecution" is insufficient to show "sincerely held religious beliefs were substantially burdened"). Member participation in discovery is no different than corporate representatives or ancillary witnesses that are required, under applicable rules of procedure, to offer evidence and testimony necessary to further justice and maintain the civil judicial system. Furthermore, Plaintiffs cannot rely on third parties as a shield to the discovery in question, which seeks only information from Plaintiffs themselves that is within their possession, custody, and control. [Dkt. 44-1]. In the event third party discovery ensues, and if basic interviews and document requests are enough for members to leave Singularism, this would only demonstrate the insincere nature of the beliefs and practices in question.

Additionally, Plaintiffs cannot avoid expedited discovery out of fear because "the requested information would need to be produced during the normal course of the litigation." *See Icon Health & Fitness, Inc.*, 2011 WL 13136539, at *2 (holding expedited discovery posed no burden to party who received "adequate notice" of the necessary discovery). Whether through expedited discovery or otherwise, Defendants are entitled to the requested information because the sincerity and religiosity of Singularism's practices are at the heart of the dispute. Fed. R. Civ. P. 26(b)(1).

Therefore, this factor also weighs in favor of expedited discovery. Even if Plaintiffs prevail on this factor, the satisfaction of all other factors weighs in favor of granting the Motion.

### 5. The Timing of the Requested Discovery.

The timing of the discovery is appropriate "[g]iven the current posture of the case." *See Icon Health & Fitness, Inc.*, 2011 WL 13136539, at *3. While Plaintiffs note that the "parties have not yet conducted a Rule 26(f) conference," [Opp. at 9], that is true for most requests for expedited discovery in the context of a preliminary injunction and is not dispositive. *See, e.g.*, *Am. Equip. Systems, LLC*, 2023 WL 8261427, at *6 (allowing expedited discovery to proceed before 26(f) conference); *Icon Health & Fitness, Inc.*, 2011 WL 13136539, at *3 (same). Given the need for evidence and witness examination at the preliminary injunction hearing, the timing of the discovery is appropriate and proportional to the needs of the case.

## **CONCLUSION**

This Court should grant Defendants' request for expedited discovery and require Defendants to respond to the discovery set forth in Exhibit 1 within 15 days or, alternatively, at least 45 days before the preliminary injunction hearing.

Dated this 27th Day of December, 2024

JAMES DODGE RUSSELL & STEPHENS, P.C.

*/s/ Dillon P. Olson*
Mitchell A. Stephens
Justin L. James
Dillon P. Olson

PROVO CITY LEGAL
Gary D. Millward
Richard A. Roberts

*Counsel for Provo City, Troy Beebe, Brian Wolken, and Jackson Julian*