MITCHELL A. STEPHENS (11775)
JUSTIN L. JAMES (15167)
DILLON P. OLSON (16120)
JAMES DODGE RUSSELL & STEPHENS, P.C.
10 West Broadway, Ste. 400
Salt Lake City, Utah 84101
mstephens@jdrslaw.com
jjames@jdrslaw.com
dolson@jdrslaw.com
*Attorneys for Defendants Utah County and Jeffrey Gray*

J. BRIAN JONES (11816)
GARY D. MILLWARD (12170)
RICHARD A. ROBERTS (12217)
PROVO CITY ATTORNEY'S OFFICE
445 W Center St.
Provo, Utah 84601
(801) 852-6140
gmillward@provo.gov
rroberts@provo.gov
*Attorneys for Defendants Provo City, Troy Beebe, Brian Wolken, and Jackson Julian*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BRIDGER LEE JENSEN; SINGULARISM; PSYCHE HEALING AND BRIDGING, LLC dba PSYCHEDELIC THERAPY JOURNEY; <br> Plaintiffs, <br><br> vs. <br><br> UTAH COUNTY; PROVO CITY; JEFFREY GRAY; TROY BEEBE; BRIAN WOLKEN; JACKSON JULIAN; JOHN DOES; <br> Defendants. | **MEMORANDUM IN OPPOSITION TO MOTION FOR ANTI-SUIT INJUNCTION** <br><br> Civil Case No. 2:24-cv-00887-JNP <br><br> Judge Jill N. Parrish |

Pursuant to DUCivR 7-1(D), Defendants Utah County, Jeffrey Gray, Provo City, Troy Beebe, Brian Wolken, and Jackson Julian ("Defendants") submit this Memorandum in Opposition to Motion for Anti-Suit Injunction in response to the Motion (Dkt. 39) filed by Plaintiffs Bridger Lee Jensen, Singularism, and Psyche Healing and Bridging, LLC dba Psychedelic Therapy Journey. Defendants ask the Court to deny Plaintiffs' Motion.

Because the pending Motion and Defendants' pending Motion to Dismiss (Dkt. 40) can – and should – be resolved without the time and expense of an evidentiary hearing, Defendants request that the Court either rule on the issues of law *before* proceeding with the evidentiary process currently scheduled for January 23, 2024, or reschedule that evidentiary hearing until after the Court rules on the legal matters set forth in the parties' filings.

## INTRODUCTION

The State of Utah – a non-party to this proceeding – has charged Bridger Jensen ("Jensen") with violating the Utah Controlled Substances Act ("Utah CSA").[1] Those charges are consistent with Jensen's admitted distribution of psilocybin, a Schedule I drug. Notably, Jensen has admitted to the distribution of psilocybin *before* Singularism was formed and *before* any alleged statutory right or defense existed under the Utah RFRA. *See* Utah S.B. 150 (2024) ("This bill takes effect on May 1, 2024"). [*See, e.g.*, Dkt. 19-5 ("September 2023"); Dk t. 29 (November 2023)]. Those charges also concern Jensen's undisputed possession of THC, which the Court has found is entirely unrelated to this lawsuit.

The Court's TRO ruling did not prevent the State of Utah from filing criminal charges. Nor do any other exceptions to the Utah CSA prevent the State of Utah from pursuing criminal charges. Instead, other exceptions to the Utah CSA – including religious exceptions – merely provide a *defense* within the criminal process itself. *See, e.g.*, Utah Code § 57-37-8(12)(b) (affirmative defense for peyote used "with the practice of a traditional Indian religion"); *id.* at § -8(13)(a) (affirmative defense for "medical research"); *id.* at §-8(16)(a) (affirmative defense for violators who report another's overdose). Jensen remains free to assert his alleged defenses within

---

[1] A County Attorney prosecutes "on behalf of the state." Utah Code § 17-18a-401.

the criminal process. Indeed, that process favors Jensen because the criminal process requires the State of Utah to prove guilt beyond a reasonable doubt. The Court should decline to interfere with the pending criminal process. In fact, binding precedent prevents the Court from doing so. *See Weitzel v. Div. of Occupational & Pro. Licensing Dep't of Com. of State of Utah*, 240 F.3d 871, 875 (10th Cir. 2001) ("*Younger* abstention is non-discretionary . . . ."); 28 U.S.C. § 2283 (Anti-Injunction Act).

Furthermore, the basis for the Court's jurisdiction results from plaintiffs' federal claims. [*See* Dkt. 2-2 at p. 18, 24 (asserting claims under 42 U.S.C. § 1983); Dkt. 39 at 2 (recognizing jurisdiction based on "U.S. Constitution and 42 U.S.C. § 1983")]. Defendants recognize that they removed the case to federal court. However, this remains a civil case that should not form an end-run on the criminal process. [*See* Dkt. 2-2 at p. 31]. Additionally, although the Court generally can exercise supplemental jurisdiction over state-law claims, those issues should be the tail and not the dog. *See, e.g.*, *Vox Marketing Group v. Prodigy Promos*, 556 F. Supp. 3d 1280, 1291 (D. Utah 2021) (declining jurisdiction where it would "permit a small, federal-law tail to wag an enormous, state-law dog. That is not how our dual system of state and federal courts should work."). The Court should decline to exercise supplemental jurisdiction over state-law claims that "raise[] a novel or complex issue of State law," "substantially predominate[] over the [federal] claim," or when "there are other compelling reasons." 28 U.S.C. § 1367(c). With respect to the current Motion, relying on an untested Utah statute to enjoin the State of Utah from proceeding with a pending criminal case in the Utah State Courts would be the epitome of allowing State law to "substantially predominate" this proceeding.

## BACKGROUND

1.      The Utah RFRA became effective May 1, 2024.  *See* Utah S.B. 150 (2024).

2.      Singularism was distributing psilocybin, a Schedule I drug, before the Utah RFRA became effective.  [*See, e.g.*, Dkt. 19-5 ("September 2023"); Dkt. 29 (November 2023)].

3.      In addition, Jensen was personally distributing psilocybin, a Schedule I drug, before he formed Singularism as a religion in the fall of 2023.  [*See* Dkt. 36 at 1 ("Jensen founded Singularism in November 2023"); Dkt. 19-1 at ¶ 18 ("I founded the religion of Singularism in the fall of 2023."); Dkt. 2-2 at ¶ 16 ("years of . . . experiences facilitated through psilocybin"); *id.* at ¶ 19 (alleging preexisting psilocybin experiences at time of Singularism's "ribbon-cutting")].

4.      Although Plaintiffs allege that enforcement of the Utah CSA is unconstitutional and initially filed their claims in the Utah State Courts, they did not provide notice to the Utah Attorney General as required by Utah law.  *See* Utah R. Civ. P. 24(d).

5.      The Court's December 13, 2024, Order Granting Temporary Restraining Order ("TRO Order") did not enjoin Defendants or the State of Utah from proceeding with criminal charges against Jensen.  [*See* Dkt. 24].

6.      The Court's TRO Order did not conclude that Plaintiffs had shown a likelihood of success on the merits of any issue arising under federal law.  Instead, it relied solely on the Utah RFRA.  [*See id.*].

7.      Defendants removed this case to federal court based on the existence of a federal question, specifically Plaintiffs' claims under 28 U.S.C. § 1983.  [*See* Dkt. 2-2 at p. 18, 24].

8.      Defendants have moved to dismiss all the federal causes of action asserted in the case.  [*See* Dkt. 40].  Defendants have further argued that, regardless of the outcome of the Motion

to Dismiss, the Court should decline to exercise supplemental jurisdiction over Utah claims and instead resolve the federal claims that formed the basis for removal. [*Id.*].

9. On November 4, 2024, the Fourth District Court, State of Utah, issued a search warrant that "commanded" "any peace officer in the State of Utah" to "make a search" of Jensen at "1969 N. State Street, Provo, UT" for "Psilocybin Mushrooms." [*See* Dkt. 13-14].

10. The Utah Court's search warrant was executed on November 11, 2024. [*See* Dkt. 13-15]. Plaintiffs filed this lawsuit on November 19, 2024, because of that search warrant and an imminent prosecution. [*See, e.g.*, Dkt. 2-2 at p. 2 ("may at any moment prosecute")].

## ARGUMENT

### I. *YOUNGER* ABSTENTION PREVENTS THE COURT FROM STOPPING THE PENDING CRIMINAL PROCESS.

"*Younger* abstention is non-discretionary; the district court must abstain once the conditions are met . . . ." *Weitzel v. Div. of Occupational & Pro. Licensing Dep't of Com. of State of Utah*, 240 F.3d 871, 875 (10th Cir. 2001). Indeed, "abstention may be raised by the court sua sponte."[2] *See Bellotti v. Baird*, 428 U.S. 132, n.10 (1976); *accord D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1228-29 (10th Cir. 2004) ("Younger abstention is jurisdictional" and "[w]e

---

[2] For similar reasons, Defendants did "not waive the comity and federalism interests undergirding *Younger* by invoking the jurisdiction of the federal courts." *Dowden v. City of Sacramento*, 40 F. Supp. 2d 1146, 1152 n.5 (E.D. Cal. 1999);*see also Ohio Civil Rights Comm'n v. Dayton Christian Schls.*, 477 U.S. 619, 626 (1986) (declining to interpret the state's stipulation to federal court jurisdiction as a waiver of *Younger* abstention); *Barnes v. Allen*, 2019 WL 653814 at *2 n.1 (N.D. Okla. Feb. 15, 2019) (rejecting argument that "defendants waived any jurisdictional arguments by removing the case"). Moreover, Defendants did not remove the criminal case that requires *Younger* abstention. Nor do Defendants now seek the complete dismissal of the Plaintiffs' claims based on *Younger*. Recognizing the Court's ultimate jurisdiction to adjudicate plaintiffs' damages claims under 28 U.S.C § 1983 is vastly different than consenting to the Court's adjudication of the distinct criminal case filed by the State of Utah (a non-party) in the Utah Courts.

address it at the outset"); *Chapman v. Barcus*, 372 F. App'x 899, 902 (10th Cir. 2010) ("[T]his court may consider *Younger* 'abstention for the first time on appeal'"). When, as here, a plaintiff's complaint seeks to recover monetary damages, *Younger* abstention means staying the claims pending resolution of the criminal proceedings. *See, e.g.*, *D.L.*, 392 F. 3d at 1228 ("The rationale for *Younger* abstention can be satisfied, however, by just staying proceedings on the federal damages claim until the state proceeding is final."); *Buck v. Myers*, 244 F. App'x 193, 197-98 (10th Cir. 2007) ("Where the plaintiff in the federal suit seeks damage relief and the *Younger* factors are met, the district court should stay federal proceedings on the damages claims, not dismiss the action altogether.").

"In *Younger*, the Supreme Court held that federal courts, except in the most exceptional circumstances," cannot grant "declaratory or injunctive relief against pending state criminal proceedings." *Phelps v. Hamilton*, 122 F.3d 885, 889 (10th Cir. 1997) (citing *Younger v. Harris*, 401 U.S. 37 (1971)). "[T]he normal thing to do when federal courts are asked to enjoin proceedings in state courts is not to issue such injunctions." *Younger*, 401 U.S. at 45. "No citizen or member of the community is immune from prosecution, in good faith, for his alleged criminal acts." *Id.* at 46. Thus, "the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered 'irreparable' in the special legal sense of that term." *Id.*

"[A] three-part test" exists "for determining whether a federal court should abstain in favor of a state court proceeding." *Phelps*, 122 F.3d at 889. "A federal court must abstain from exercising jurisdiction when: (1) there is an ongoing state criminal . . . proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the

state proceedings 'involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.'" *Weitzel*, 240 F.3d at 875; *accord Phelps*, 122 F.3d at 889. "'Once these three conditions are met, *Younger* abstention is non-discretionary and, absent extraordinary circumstances, a district court is required to abstain.'"[3] *Buck*, 244 F. App'x at 197 (quoting *Crown Point I, LLC*, 319. F.3d at 1215); *accord Chapman v. Barcus*, 372 F. App'x 899, 901-02 (10th Cir. 2010) ("Tenth Circuit cases consistently state that the application of *Younger* is mandatory."). All three of the *Younger* conditions exist.

First, "there is an ongoing state criminal" proceeding. *See Weitzel*, 240 F.3d at 875. In other filings, Plaintiffs have disputed this factor by arguing this case precedes the formal filing of the criminal information. [*See, e.g.*, Dkt. 38 at 9-10]. That myopic argument disregards binding precedent; the Court must take a broader view of the criminal process. In *Younger*, the Supreme Court recognized that its longstanding precedent applied "even with respect to state criminal proceedings not yet formally instituted." *Younger*, 401 U.S. at 45 ("threatened prosecutions"); *accord Hicks v. Miranda*, 422 U.S. 332, 349-50 (1975) ("[W]here state criminal proceedings are begun against the federal plaintiffs after the federal complaint is filed but before any proceedings of substance on the merits have taken place in the federal court, the principles *of Younger v. Harris* should apply in full force."); *Morales v. TransWorld Airlines, Inc.*, 504 U.S. 374, 381 n.1 (1992) (recognizing *Younger* applies to "an already-pending or an about-to-be-pending state criminal action"). Thus, courts have applied *Younger* in circumstances similar to this case. *See, e.g., Doe v. Office of Kan. Sec. Comm'r*, 2017 WL 6557431, at *2 (S.D. Fla. Nov. 28, 2017) ("[T]he issuance

---

[3] Plaintiffs' Motion does not argue that any "extraordinary circumstances" exist. *Cf. Phelps*, 122 F.3d at 889 (outlining "'heavy burden' to overcome the bar of *Younger* abstention").

of a search warrant constitutes an ongoing state judicial proceeding."); *Nick v. Abrams*, 717 F. Supp. 1053, 1056 (S.D.N.Y. 1989) (finding "'pending state proceeding' exists when a state attorney general executes a search warrant"). Indeed, a federal court recently determined *Younger* applied even though the criminal indictment came "approximately three years" after the plaintiff "filed their complaint" because discovery "was not far advanced." *Moore v. Garnand*, 2024 WL 4534597 at *2 (D. Ariz. Sept. 17, 2024).

Second, the criminal proceedings in the Utah Court "provide[] an adequate forum." *See Weitzel*, 240 F.3d at 875. It is "beyond dispute that the Utah state judiciary provides an adequate forum for [Jensen] to assert his constitutional claims." *Weitzel*, 240 F.3d at 876; *see also Jackson v. Utah*, 2019 WL 2746609 at *3 (D. Utah June 7, 2019) ("[T]he Utah state judiciary provides an adequate forum . . . ."). "It is [Plaintiffs'] burden to establish that state law prevents [them] from presenting [their] federal claims in the state proceedings." *Morkel v. Davis*, 513 F. App'x 724, 728-29 (10th Cir. 2013); *J.B. v. Valdez*, 186 F.3d 1280, 1292 (10th Cir. 1999) (recognizing even "uncertainty" about forum "militates in favor of abstention"). Plaintiffs have "not demonstrated that Utah state courts are an inadequate forum." *Morkel*, 513 F. App'x at 728; *see also Buck*, 244 F. App'x at 196-97 (finding "[t]here can be no serious question that each of the *Younger* factors is met" given "the Utah criminal prosecution"). "[U]nless state law clearly bars the interposition of the federal statutory and constitutional claims, a plaintiff typically has an adequate opportunity to raise federal claims in state court." *Winn v. Cook*, 945 F.3d 1253, 1258 (10th Cir. 2019) (cleaned up); *accord J.B.*, 186 F.3d at 1292.

Third, the State of Utah's criminal prosecution "implicate[s] important state interests." *See Phelps*, 122 F.3d at 889. "The state of Utah has an important interest in its criminal proceedings."

*Buck*, 244 F. App'x at 197; *see also Winn*, 945 at 1258 ("For the purposes of *Younger*, state criminal proceedings are viewed as 'a traditional area of state concern.'"); *Fisher v. Whetsel*, 142 F. App'x 337, 339 (10th Cir 2005) ("Oklahoma's important interest in enforcing its criminal laws through proceedings in its state courts remains axiomatic."). "This Court has recognized that the States' interest in administering their criminal justice systems free from federal interference is one of the most powerful considerations . . . ." *Kelly v. Robinson*, 479 U.S. 36, 49 (1986).

"[T]he normal thing to do when federal courts are asked to enjoin proceedings in state courts is not to issue such injunctions." *Younger*, 401 U.S. at 45. Indeed, because the *Younger* factors exist, "abstention is non-discretionary; the district court must abstain." *Weitzel*, 240 F.3d at 875.

## II.    THE ANTI-INJUNCTION STATUTE BARS PLAINTIFFS' MOTION.

Plaintiffs' Motion fails independent of abstention. "Any analysis of the power of a federal court to enjoin a state court proceeding must begin with the Anti-Injunction Act." *Lone Star Promotions, LLC v. Abbey Lane Quilts, LLC*, 2018 WL 5808802, at *3 (D. Utah Nov. 6, 2018) (cleaned up). The Anti-Injunction Act "is an absolute prohibition against any injunction of any state-court proceedings." *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 630 (1977) (emphasis added); *see also* 28 U.S.C. § 2283 ("A court of the United States may not grant an injunction to stay proceedings in a State court . . . ."); *Lone Star*, 2018 WL 5808802, at *3 ("The Supreme Court has . . . made clear that the statute imposes an absolute ban upon the issuance of a federal injunction against a pending state court proceeding"). "The Act's purpose is to forestall the inevitable friction between the state and federal courts that ensues from the injunction of state judicial proceedings by a federal court." *Vendo Co.*, 433 U.S. at 630; *Lone Star*, 2018 WL 5808802, at *3 ("[T]he Anti-

Injunction Act is a necessary concomitant of a dual system of federal and state courts and a pillar of federalism reflecting the independence of the states and their courts." (cleaned up)).

The Anti-Injunction Act limits a federal court's ability to enjoin state proceedings to three situations: (1) where Congress has "expressly authorized an injunction"; (2) where an injunction "is necessary in aid of the federal district court's jurisdiction"; and (3) where an injunction is "necessary to protect or effectuate a previous judgment in federal district court." *Tooele Cty. v. United States*, 820 F.3d 1183, 1188 (10th Cir. 2016) (cleaned up); *see* 28 U.S.C. § 2283. "While the three statutory exceptions appear like they could have significant breadth, the Supreme Court has purposely kept them extremely narrow." *Lone Star*, 2018 WL 5808802, at *3; *see also Smith v. Bayer Corp.*, 564 U.S. 299, 306 (2011) (noting statutory exceptions "are narrow and are not to be enlarged by loose statutory construction" (cleaned up)). Thus, "courts should resolve doubts about the applicability of an exception in favor of allowing the state-court proceeding to continue." *Tooele Cty.*, 820 F.3d at 1188. "The Supreme Court has admonished that 'proceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately'" the Supreme Court. *Lone Star*, 2018 WL 5808802, at *3 (quoting *Atl. Coast Line R.R. v. Locomotive Eng'rs*, 398 U.S. 281, 282 (1970)).

Plaintiffs' Motion fails to demonstrate any exception to the Anti-Injunction Act.

A. <u>The Requested Injunction is Not Expressly Authorized</u>

"To qualify as an 'expressly authorized' exception, 'an Act of Congress must have created a specific and uniquely ***federal*** right or remedy, enforceable in a federal court of equity, that could be frustrated if the federal court were not empowered to enjoin a state court proceeding.'" *Ute*

*Indian Tribe of Uintah and Ouray Reservation v. Lawrence*, 289 F. Supp.3d 1242, 1256 (D. Utah 2018) (quoting *Mitchum v. Foster*, 407 U.S. 225, 229 (1972)) (emphasis added).  To satisfy this exception, Plaintiffs must establish that a federal right established by Congress "could be given its intended scope only by the stay of a state court proceeding."  *Id.*

Plaintiffs have not made this showing.  The sole "federal right" that Plaintiffs Motion invokes is the removal statute.  [Mot. at 4–5].  Plaintiffs maintain that this Court is authorized to enjoin criminal prosecution in the Utah Courts because the removal statute provides that upon removal, "the State court shall proceed no further unless and until the case is remanded."  [Mot. at 5 (citing 28 U.S.C. § 1446(d))].  However, this provision only applies to the "removal of a *civil* action."  28 U.S.C. § 1446(d) (emphasis added).  Jensen's criminal prosecution was not the subject of removal.  Nor is it a "civil action" that falls within the purview of the removal statute.  Said differently, when Congress adopted the removal statute, it did not expressly authorize the Court to enjoin both civil and criminal cases pending in the state courts.

Additionally, the removal statute generally applies only to enjoin continued proceedings in "the same case in state court after its removal."  *Lou v. Belzberg*, 834 F.2d 730, 740 (9th Cir. 1987); *Ackerman v. ExxonMobil Corp.*, 734 F.3d 237 (4th Cir. 2013) (confirming "§ 1446(d) invalidates post-removal actions taken in state court in the removed case, but it does not reach (and therefore does not invalidate) actions taken in cases other than the removed case").  Although the Tenth Circuit does not appear to have addressed the issue, other federal courts have concluded that new, copycat actions filed after removal may be enjoined only in situations where "fraud is found." *Frith v. Blazon-Flexible Flyer, Inc.*, 512 F.2d 899, 901 (5th Cir.1975) ("[W]here no fraud is found, the second action brought in state court should not be enjoined").  Plaintiffs' authority identifies a

potential circuit split on this issue. However, that split is irrelevant because Plaintiffs' cases still concern *civil* cases filed to circumvent a federal *civil* case. *See, e.g.*, *Kansas Public Employees Retirement Sys. v. Reimer Kroger Assocs.*, 77 F.3d 1063, 1069 (9th Cir. 1996) ("[A]fter removal the plaintiff cannot file essentially the same case in a second state action to subvert federal jurisdiction."); *Davis Int'l, LLC v. New Start Grp. Corp.*, 367 F. App'x 334, 338 (3d Cir. 2010) (concluding that "Appellants had attempted to subvert the removal statute" by filing a new suit "in the hope of beginning merits discovery which had been stayed in federal court").

Here, the State of Utah's criminal case is not an attempt to subvert removal. It is an attempt to enforce controlled substances laws, protect the public, and promote general welfare. This is further evidenced by the search warrant, which forms the basis for the criminal prosecution and predates the filing of this action. [Dkt. 13-14]. Plaintiffs cannot demonstrate that the criminal process is an effort to subvert removal because it was underway before this case was filed and consists of an entirely different case type, i.e., criminal prosecution. Plaintiffs' argument further fails because the state court prosecution involves "different plaintiffs, additional counsel" and "only state claims." *See Lou*, 834 F.2d at 740. "This is not a case where the plaintiff in the removed action has flouted the federal court's removal jurisdiction by filing substantially the same complaint in state court subsequent to the removal." *Billy Jack for Her, Inc. v. New York Coat, Suit, Dress, Rainwear and Allied Workers' Union*, 515 F. Supp. 456, 460 (S.D. N.Y. 1981).[4]

---

[4] Even though Plaintiffs wrongly contend, in a conclusory fashion, that "Defendants seek to litigate the same issues" in the state court prosecution, [Mot. at 6], this does not qualify as an exception to the Anti-Injunction Act. *See Lone Star*, 2018 WL 5808802, at *5 ("It is well settled that the mere existence of a parallel lawsuit in state court that seeks to adjudicate the same in personam cause of action does not itself provide sufficient grounds for an injunction against a state action in favor of a pending federal action.").

Under the circumstances, this is not a situation where a federal right can only be protected "by the stay of a state court proceeding." *Lawrence*, 289 F. Supp.3d at 1256. Any protections afforded in Plaintiffs' cited removal statute do not extend to criminal prosecutions. *See* 28 U.S.C. § 1446 ( "Procedure for removal of *civil* actions" (emphasis added)). Plaintiffs have cited no authority in which a federal court has enjoined a criminal prosecution based on the removal of a separate, civil suit. This Court should not invent such authority and, instead, "resolve doubts about the applicability of an exception in favor of allowing the state-court proceeding to continue." *Tooele Cty.*, 820 F.3d at 1188.

### B. The Requested Injunction is Not Necessary to Aid In Rem Jurisdiction

"The second statutory exception is limited" and applies only where: (1) "both the federal and state suits constitute in rem or quasi in rem proceedings" and (2) "the federal court was the first to take possession of the res (the property under dispute in the federal and state actions)." *Tooele Cty.*, 820 F.3d at 1188. "An action in rem is one founded upon the rights in or to property," which affects "the interests of all persons in the property." *Id.* Actions that are quasi in rem, on the other hand, affect "the interests of only some persons in the property." This exception "applies only in aid of a court's exclusive jurisdiction over a particular case." *Lone Star*, 2018 WL 5808802, at *5.

Here, the exception does not apply because the parties are "not seeking adjudication of anyone's interest in property," either in the federal or state case. *Id.* at 1189. Plaintiffs' Complaint in this case seeks declaratory judgments regarding alleged violations of Plaintiffs' alleged religious rights. [Dkt. 2-2]. As such, the federal case is not a proceeding involving "the rights in or to property." *Tooele Cty.*, 820 F.3d at 1188; *see also Pueblo of Pojoaque v. Biedscheid*, 689 F.

Supp.3d 1033, 1131 (D. N.M. 2023)(holding that federal suit for injunctive and declaratory relief was not "in rem or quasi in rem").

Similarly, the state court criminal prosecution involves three drug-related charges against Jensen.  [Dkt. 39-1].  Because this proceeding is against Jensen personally, it is in personam and does not "trigger the Anti-Injunction Act's exceptions for injuries involving two in rem or quasi in rem proceedings."  *Tooele Cty.*, 820 F.3d at 1189 ("If a court's jurisdiction is based on its authority over the defendant's person, the action and judgment are denominated 'in personam'"); *see also United States v. Alonso*, 602 F. Supp.2d 297, 302 (D. P.R. 2008) (acknowledging criminal prosecutions are proceedings "in personam").  The State of Utah's criminal prosecution does not involve "rights in or to property," which precludes application of the second exception to the Anti-Injunction Act.  *See Tooele Cty.*, 820 F.3d at 1188; *see also Pueblo*, 689 F.3d at 1130 (noting that the second exception will not apply "[i]f either the State suit or the federal suit is not in rem or quasi in rem").

Plaintiffs attempt to invoke the second exception based on "federal question jurisdiction." [Mot. at 6].  However, the Tenth Circuit has already "declined to expand the second exception beyond in rem and quasi in rem actions."  *See Pueblo*, 689 F. Supp.3d 1033.  In fact, the United States Supreme Court has gone even further and pronounced that injunctions of state proceedings are inappropriate even where it is "unmistakably clear" that those proceedings "interfere with a protected federal right" or "present[] a federal issue."  *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 149–150 (1988).  In those circumstances, "the proper course is to seek resolution of that issue by the state court."  *Id.*

Because neither the federal nor case proceedings are in rem, the second exception to the Anti-Injunction Act is not satisfied.[5]

C. The Requested Injunction Will Not Protect a Prior Federal Judgment

The final exception under the Anti-Injunction Act limits injunctions of state court proceedings to "rare cases" where they are "necessary to protect or effectuate the federal court's judgments." *Smith*, 564 U.S. at 306. This is "known as the relitigation exception" and is "designed to implement well-recognized concepts of claim and issue preclusion." The relitigation exception is "strict and narrow," and "issuing an injunction under the relitigation exception is resorting to heavy artillery." *Id.*

Plaintiffs cannot demonstrate entitlement to injunctive relief under the relitigation exception because there exists no "judgment" for the Court to "protect or effectuate." 22 U.S.C. § 2283. Plaintiffs seemingly concede they have not satisfied the elements of the relitigation exception, noting that "there is not yet a final determination on Plaintiffs' claims." [Dkt. 39 at p. 7]. Instead, they argue that – at some future point in time – the third exception "will also be met as this case progresses." [*Id.*]. The lack of a final judgment is fatal to Plaintiffs' current Motion. *See Lone Star*, 2018 WL 5808802, at *5 (holding the relitigation exception "clearly does not apply because this court has not issued a judgment"); *Ute Indian Tribe of Uintah and Ouray Reservation v. Lawrence*, 289 F. Supp.3d 1242, 1257 (D. Utah 2018) (holding the relitigation exception "does not apply" because "there is no final judgment for the court to protect and effectuate"); *Pueblo*,

[5] The second exception also does not apply because the state court was the first to preside over the pertinent issues through the issuance of the search warrant. *Doe*, 2017 WL 6557431, at *2 (S.D. Fla. Nov. 28, 2017) ("[T]he issuance of a search warrant constitutes an ongoing state judicial proceeding."); *Nick*, 717 F. Supp. at 1056 (S.D.N.Y. 1989); (finding "'pending state proceeding' exists when a state attorney general executes a search warrant").

689 F. Supp.3d at 1133 (refusing to apply relitigation exception where "there is no federal judgment at issue in the State proceedings"); *Harvey Specialty & Supply, Inc. v. Anson Flowline Equip. Inc.*, 434 F.3d 320, 323 (5th Cir. 2005) ("[A]n order that is not a final judgment . . . lacks sufficient finality to be entitled to preclusive effect under the relitigation exception." (cleaned up)).

Plaintiffs cannot rely on their belief that they will subsequently prevail and obtain a final judgment to obtain relief under the relitigation exception. *See Thayer v. Owens*, No. 2:12-cv-00170, 2012 WL 1900933, at *5 (D. Utah May 24, 2012) (declining to apply relitigation exception to "a merely prospective judgment").

## III. THE COURT SHOULD NOT ALLOW UTAH LAW TO PREDOMINATE THIS FEDERAL CASE TO THE EXCLUSION OF THE UTAH COURTS.

Even if the Court determined that *Younger* did not apply and that Plaintiffs had established the basis for an anti-suit injunction, the Court should not rely on novel questions of Utah law as the reason for enjoining the Utah Courts. Instead, the Court should decline to exercise supplemental jurisdiction over the Utah law issues.

"The Supreme Court has instructed us that federal courts should consider the propriety of exercising supplemental jurisdiction 'in each case and at every stage of the litigation.'" *Roe v. Cheyenne Mtn. Conf. Resort, Inc.*, 124 F.3d 1221, 1237 (10th Cir. 1997) (reversing exercise of supplemental jurisdiction).

The Court's exercise of supplemental jurisdiction over state law claims is not unlimited. *See id.* Instead, the Court must consider whether: (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the [federal] claim[s] . . ., (3) the district court has dismissed [the federal] claims . . . ., or (4) . . . other compelling reasons." 28 U.S.C. § 1367(c); *accord Mtn. States Media, LLC v. Adams Cnty.*, 389 F. App'x 829, 838 (10th Cir. 2010);

16

*Roe*, 124 F.3d at 1237. Each factor demonstrates that the Court should decline to exercise supplemental jurisdiction over the Utah claims. Because those claims are the primary basis for Plaintiffs' requested injunction, the Motion should be denied. Instead, the state law claims should be remanded to the Utah State Court. *See Enochs v. Lampasas Cnty.*, 641 F.3d 155, 159 (5th Cir. 2011) ("[B]alance each factor in order to determine whether a district court abused its discretion."); *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir. 2003) (finding court "did not exercise sound discretion" because "the state-law action substantially predominates").

First, Plaintiffs' Utah claims raise novel and complex State law issues. No court, let alone the Utah Supreme Court, has reviewed, interpreted, or applied the Utah RFRA. As a result, this case presents complex issues of first impression under Utah law. Multiple examples already are apparent from the record. For example, no Utah court has resolved how a court should analyze whether an act is "substantially motivated by a sincerely held religious belief" or what jury instructions should be given. *See* Utah Code § 63G-33-101(2). [*See also* Dkt. 19 (arguing Court should reject *Meyers* factors and adopt "alternative tests")]. No Utah court has resolved whether Utah RFRA allows for damages at all, let alone in conjunction with the Utah Governmental Immunity Act. *See, e.g.*, Utah Code § 63G-7-201 (retention of immunity for "violation of civil rights"). No Utah court has applied the notice provisions of the Utah RFRA. *See id.* at § -202(5). In addition, Plaintiffs admit to raising novel challenges under the Utah Constitution. [*See* Dkt. 9 at 14 (arguing "the Utah Supreme Court" has not "yet conducted a free exercise analysis")]. Plaintiffs suggested these novel issues could be sent to "the Utah Supreme Court by certification." [*Id.*]. The novel and unsettled nature of Utah law substantially favors remand of the state issues. "We are convinced that in such circumstances, an authoritative state court ruling . . . should be

permitted, instead of a guess or uncertain prediction by a federal court." *Roe*, 124 F.3d at 1237 (finding "novel and complex issue of state law" required remand).

Second, the Utah RFRA has "substantially predominate[d] over the [federal] claim[s.]" 28 U.S.C. § 1367(c). For example, the Court's TRO Order did not even analyze, let alone find, that Plaintiffs had established a likelihood of success in connection with any federal law. [*See* Dkt. 24]. Instead, the Court analyzed only "the Utah RFRA," becoming the first court to do so. [*See id.* at 2-3]. In contrast, Plaintiffs' federal claims are neither new nor complex. Plaintiffs are not the first parties to argue that the CSA violates their rights under the U.S. Constitution. Those federal theories repeatedly have been rejected. [*See generally* Dkt. 40]. *See, e.g.*, *Emp. Div. v. Smith*, 494 U.S. 872, 878-82, (1990) (rejecting First Amendment claim for religious peyote use); *Olsen v. Mukasey*, 541 F.3d 827, 832 (8th Cir. 2008) (rejecting argument that CSA was "not generally applicable" because it allows "certain research and medical uses of marijuana"); *Multi-Denominational Ministry of Cannabis and Rastafari, Inc. v. Holder*, 365 F. App'x 817, 819 (9th Cir. 2010) ("Because drug laws are both neutral and generally applicable, they may be enforced even if doing so substantially burdens one's religion." (cleaned up)). The Court should not allow novel questions of Utah law to predominate an otherwise straightforward proceeding.

Third, Defendants have moved to dismiss all of Plaintiffs' federal claims. [*See* Dkt. 40]. As detailed in the motion to dismiss, the Tenth Circuit routinely reverses a district court's ruling on state law claims when those are the only claims that remain in the case. *See, e.g.*, *Sandberg v. Englewood, Colorado*, 727 F. App'x 950, 965 (10th Cir. 2018) ("[W]e conclude the district court erred by exercising jurisdiction over the state law claims after it had dismissed the federal causes of action."); *George v. Newman*, 726 F. App'x 699, 708 (10th Cir. 2018) ("Whenever a district

court dismisses a state law claim with prejudice before trial, we typically reverse and remand with instructions to dismiss without prejudice"). The Court should not enjoin the State of Utah's criminal process merely because of a delay in deciding the motion to dismiss. Furthermore, even if the motion to dismiss were denied or delayed, the Court still should not exercise jurisdiction because every other factor does not support that jurisdiction. *See, e.g.*, *Vox Marketing Group*, 556 F. Supp. 3d at 1289-91; *De Asencio*, 342 F.3d at 309.

Fourth, "other compelling reasons" support leaving issues of Utah law to the Utah courts. *See* 28 U.S.C. § 1367(c). For example, the State of Utah is the plaintiff in the criminal action. [*See* Dkt. 39]. *See also* Utah Const. art. VIII, § 16 (providing for "criminal actions brought in the name of the State of Utah"); Utah Code § 17-18a-401 (declaring criminal charges filed "on behalf of the state"). However, the State of Utah is not a named party before this Court. Nor did Plaintiffs notify the Utah Attorney General when they filed this case. *See, e.g.*, Utah R. Civ. P. 24(d). Furthermore, there are "compelling reasons for declining to excise supplemental jurisdiction since this delicate [state] law is in transition." *Roe*, 124 F.3d at 1237; *see also Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995) ("Where a state law cause of action is thus in a process of current evolution, it is particularly appropriate for the federal courts to leave the continuing development and application of that cause of action to the state courts."). Finally, even if this factor were neutral (it is not), that would still support remand. "Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Ball*, 54 F.3d at 669.

The Court should not allow novel questions of Utah law to so dominate this federal case that they prevent the State of Utah from proceeding with a criminal case in the Utah Courts that would resolve those same issues.

## IV. PLAINTIFFS' FEE DEMAND SHOULD BE REJECTED.

Plaintiffs conclude their Motion with the terse yet inflammatory assertion that the Court should award attorney fees because Defendants acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." [Dkt. 39 at p. 8]. However, it is that request that approaches bad faith. At its core, Plaintiffs complain about the continuation of the criminal process in the Utah Courts. However, as explained, that process began before Plaintiffs initiated this lawsuit. Furthermore, the Utah Courts have declared there is "probable cause" to conclude that Jensen has violated the Utah CSA. [*See* Dkt. 13-14]. At the end of the TRO hearing, the Court expressly stated (in response to Defendants' inquiry) that it was not enjoining the criminal process in the Utah Courts. [*Compare* Dkt. 9-18 (asking Court to enjoin "prosecuting Plaintiffs'") *with* Dkt. 24 (TRO Order)]. Where both this Court and the Utah State Court have expressly allowed the criminal process to continue, this Court should not find that the State of Utah acted in bad faith.

## CONCLUSION

The Court should refuse to control the State of Utah's criminal prosecution of Jensen in the Utah State Courts. The criminal process began with the search warrant the Utah Courts issued before this case was filed. The Anti-Injunction Act does not provide for the requested injunction. And the Court should not allow novel issues of Utah law to so predominate this proceeding that they prevent any action within the Utah Courts. Plaintiffs' Motion should be denied – before an all-day, or multi-day evidentiary hearing.

Dated this 2nd day of January, 2024

JAMES DODGE RUSSELL & STEPHENS, P.C.

*/s/ Mitchell A. Stephens*
Mitchell A. Stephens
Justin L. James
Dillon P. Olson

*Counsel for Utah County and Jeffrey Gray*

PROVO CITY LEGAL

*/s/ Richard A. Roberts*
Gary D. Millward
Richard A. Roberts

*Counsel for Provo City, Troy Beebe, Brian Wolken, and Jackson Julian*