Tanner J. Bean (A17128)
tbean@fabianvancott.com
Anna P. Christiansen (A17518)
achristiansen@fabianvancott.com
FABIAN VANCOTT
95 South State Street, Suite 2300
Salt Lake City, UT 84111-23323
Telephone: (801) 531-8900
*Attorneys for Plaintiffs*

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BRIDGER LEE JENSEN, an individual; SINGULARISM, a non-profit corporation; PSYCHE HEALING AND BRIDGING, LLC dba PSYCHEDELIC THERAPY JOURNEY; a limited liability company; <br><br> Plaintiffs, <br><br> vs. <br><br> UTAH COUNTY, a political subdivision, PROVO CITY, a political subdivision; JEFFREY GRAY, an individual; TROY BEEBE, an individual; BRIAN WOLKEN, an individual; JACKSON JULIAN, an individual; JOHN DOES 1-4, individuals; <br><br> Defendants. | **OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** <br><br> Civil No. 2:24-cv-00887-JNP <br><br> Judge Jill N. Parrish <br><br> (Removed from Fourth Judicial District Court, Utah County, State of Utah, Case No. 240406123) |

Plaintiffs Bridger Lee Jensen, Singularism, and Psyche Healing and Bridging LLC (dba Psychedelic Therapy Journey) ("Plaintiffs" or "Singularism") hereby file their Opposition to Defendants' Motion to Dismiss, ECF 40.

## INTRODUCTION

Defendants do not want *this Court* to decide this case. Even though *Defendants* removed this case to this Court, they are now making every argument they can to flee given the Court's TRO ruling that "Plaintiffs have shown a likelihood of success on their claim under the Utah RFRA." ECF 24, at 2. The Court should rebuff Defendants' efforts to avoid the consequences of their religious free exercise violations through tactical and venue maneuvering. Defendants chose this forum and the Court should hold Defendants to their choice. But as this brief indicates, the Court will not be placed in the position Defendants desire of deciding whether or not to jettison Plaintiffs' state law claims, as Plaintiffs' federal claims clear the low hurdle the motion to dismiss stage imposes. The Court should deny Defendants' motion to dismiss outright.

## STATEMENT OF FACTS

The Court is well versed in the facts of this case. Accordingly, besides the few factual statements contained in Defendants' motion to dismiss to which Singularism responds below, Singularism directs the Court to its statements of fact contained in Singularism's prior briefing, which details the well-pleaded allegations of Singularism's Complaint. *See* ECF 2-2; ECF 9, at 2-9; ECF 19, at 1-11.

Defendants' statements of fact 1-3 assert that they were commanded to execute a search warrant, implying they are absolved from responsibility from any resulting infringements on Plaintiffs' liberties. These statements of fact omit what Singularism's Complaint alleges: that despite knowing Singularism asserted religious liberty protection under the very statutory and constitutional claims now at issue in this lawsuit; despite having no information that Singularism's religious practices had resulted in any harm to public health, public safety, or drug trafficking; and

despite having no factual information indicating Singularism was religiously insincere, Defendants proceeded to apply for and execute a search warrant anyway. This resulted in violations of Singularism's religious free exercise as well as its rights to be free from unreasonable searches and seizures. *See* ECF 2-2, at ¶¶ 22-23, 32-49, 61-62, 65-132; *see also* ECF 9, at 2-8, at ¶¶ 3, 11-29.

Defendants' statements of fact 1-3 also omit allegations regarding their conduct which pre- and post-dated Defendant Julian applying for and obtaining a search warrant, such as Defendants' investigation of Singularism, Defendant Gray's unlawful directions to law enforcement, Defendant Gray's statement to media which indicated the sort of direction he was providing to law enforcement, and Defendant Wolken's delivery of the eviction letter to Singularism's landlord. *See* ECF 2-2, at ¶¶ 23, 35-36, 45-49, 61; *see also* ECF 13-1 (Defendant Julian's Affidavit for Search Warrant). As shown below, Defendants make no effort to particularize their arguments to these or other events.

## **STANDARD**

As this Court has stated,

> A claim is subject to dismissal if the movant shows that the plaintiff failed to "state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a Rule 12(b)(6) motion, however, "[a]ll well-pleaded factual allegations in the complaint are accepted as true and viewed in the light most favorable to the nonmoving party." *GFF Corp. v. Assoc. Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997) (citation omitted). "A 12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Davis-Warren Auctioneers, J.V. v. FDIC*, 215 F.3d 1159, 1161 (10th Cir. 2000) (quoting *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)).

*Int'l Bridge, Inc. v. VIP Parcel, LLC*, No. 2:23-CV-00695-JNP-DAO, 2024 WL 4349161, at *4 (D. Utah Sept. 30, 2024). Further,

> "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's [ ] complaint alone is legally sufficient to state a claim for which relief may be granted." *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010) (internal quotation marks omitted).

*Mason v. Ferry*, No. 2:23-CV-00901-JNP-CMR, 2024 WL 4789918, at *2 (D. Utah Nov. 14, 2024). Notably, the motion-to-dismiss standard is significantly lower than the substantial-likelihood-of-success standard a plaintiff must clear to obtain a TRO, *see Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96, 112 (10th Cir. 2024), which Singularism has already done in this case, *see* ECF 24.

## ARGUMENT

### I.    THIS COURT SHOULD RETAIN JURISDICTION OVER ALL CLAIMS.

"Judicial economy and fairness result from retaining jurisdiction over mixed state and federal claims where 'The state and federal claims . . . derive from a common nucleus of operative fact.'" *Estate of Harshman v. Jackson Hole Mountain Resort*, 379 F.3d 1161, 1165 (10th Cir. 2004) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)). "By not forcing potential litigants either to avoid federal courts or to bifurcate their causes of action between state and federal courts, supplemental jurisdiction promotes the accessibility of federal courts as well as overall judicial economy." *Id.*

A court may decline to exercise supplemental jurisdiction only if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). When exercising discretion

to decline supplemental jurisdiction, courts must "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *King v. Fleming*, 899 F.3d 1140, 1154 (10th Cir. 2018) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Conversely, "unless one of the conditions of 28 U.S.C. § 1367(c) exists, courts are not free to decline jurisdiction." *SWEPI, LP v. Mora Cnty., N.M.*, 81 F. Supp. 3d 1075, 1144 (D.N.M. 2015).

The mere fact that "certain issues involved in plaintiff's state law claims have been left unresolved by [state] courts does not make those issues novel or complex." *Martin v. Pub. Serv. Co. of Colo.*, No 20-cv-00076-RBJ, 2020 WL 4193547, at *3 (D. Colo. July 21, 2020) (citation omitted). Rather "novelty requires that the legal issue in question, in the context of legal issues generally, be so unusual or difficult that analysis by a state court in the first instance is preferable." *The Arc of The Pikes Peak Region v. Nat'l Mentor Holdings, Inc.*, No. 10-CV-01144-REB-BNB, 2011 WL 1047222, at *2 (D. Colo. Mar. 18, 2011).

State claims predominate only when the federal claims are a mere "appendage" to the state claims. *Gibbs*, 383 U.S. at 727. State law claims do not predominate where "[t]here is no meaningful difference between the amount of evidence required to present Plaintiffs' state law and federal law claims, nor between the scope of the state and federal claims." *Mabey v. Ray*, No. 4:18-CV-00061-DN-DBP, 2019 WL 962183, at *3 (D. Utah Feb. 4, 2019). Where "[s]evering and remanding the state law claims would require the parties to litigate nearly identical matters, based on the same operative facts and involving the same case or controversy, in two separate forums," "would require this Court and [the state court] to expend unnecessary judicial resources on a matter

that is being litigated simultaneously in another court," and "severing and remanding the state law claims creates the potential for incompatible judgments from the two courts," the federal court should exercise supplemental jurisdiction over state law claims. *Id.*

This case does not raise a novel or complex issue of state law. Utah's RFRA was based upon the federal RFRA statute, which has been interpreted in a wealth of case law for over thirty years. While Utah's statute is new, this Court is certainly equipped to interpret a state law, particularly where that law is similar to and was based upon a federal law and federal constitution. In addition, there is complete factual overlap between the federal and state constitutional and statutory claims at issue in this case.

Defendants seek to force Plaintiffs to bifurcate their causes of action, which arise from the same common nucleus of operative fact. Requiring Plaintiffs to litigate highly similar issues involving the same evidence and the same facts in both state and federal court is not convenient to the parties and witnesses, does not serve judicial economy, and is particularly unfair given that Defendants themselves removed this case to federal court, as argued further in Singularism's motion for anti-suit injunction, *see* ECF 39, 58. Thus, the Court should exercise its discretion to retain jurisdiction over Singularism's state law claims. Further, for the reasons articulated below, the Court need not decide whether to send Singularism's state law claims to state court, as Singularism has pleaded plausible federal claims.

## II. PLAINTIFFS STATE A CLAIM FOR VIOLATION OF RELIGIOUS FREE EXERCISE UNDER THE FIRST AMENDMENT, UTAH CONSTITUTION, AND UTAH'S RELIGIOUS FREEDOM RESTORATION ACT.

### a. Defendants Ignore the Most Relevant and Recent First Amendment Caselaw Indicating Strict Scrutiny Review Applies.

Regarding Singularism's First Amendment claim, Defendants' brief relies upon outdated caselaw that is not controlling in this jurisdiction, and in some cases, caselaw that has been fully vacated.[1] And for the controlling caselaw Defendants do cite to the Court, they omit the portions of those cases which vindicate Singularism's claims. Rather than repeat the history of First Amendment caselaw which Singularism has already set forth in its prior briefing, which Singularism incorporates here in full, *see* ECF 9, at 10-13, 26-30; ECF 19, at 18-20, Singularism highlights only the most important points which indicate that Singularism is entitled to strict scrutiny review of its First Amendment claim, and, thus, has stated a claim for relief that is plausible on its face (for the same reasons as Singularism's Utah RFRA claim, which this Court has already indicated is substantially likely to succeed).

Defendants argue that the Utah Controlled Substance Act is a neutral and generally applicable law and, thus, Singularism's First Amendment claim merits rational basis review, not strict scrutiny. *See* ECF 40, at 5-10. That is wrong. Each of the cases Defendants cite in support of that argument pre-date both U.S. Supreme Court and Tenth Circuit precedent that says otherwise.

In 2021, the U.S. Supreme Court in *Fulton v. City of Philadelphia, Pennsylvania*, 593 U.S. 522, 533-34 (2021), explained the circumstances in which a law was not neutrally or generally applicable and, thus, *did* merit strict scrutiny review. Although the Court described several ways in which a law failed neutrality or generally applicability, most important here is that the Court stated a law "lacks general applicability *if it prohibits religious conduct while permitting secular*

---

[1]    *See, e.g., Michigan Cath. Conf. & Cath. Fam. Servs. v. Burwell,* 755 F.3d 372 (6th Cir. 2014), *cert. granted, judgment vacated sub nom. Michigan Cath. Conf. v. Burwell,* 575 U.S. 981 (2015).

*conduct that undermines the government's asserted interests in a similar way*." *Id.* at 534 (emphasis added). In 2024, the Tenth Circuit, in *Chiles v. Salazar*, 116 F.4th 1178, 1224 (10th Cir. 2024), also stated that "a law is not generally applicable '*if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way*.'" (quoting *Fulton*, 593 U.S. at 534) (emphasis added). Defendants cite both *Fulton* and *Chiles* throughout their brief but fail to identify this controlling language.

As Singularism has already argued, the Utah Controlled Substances Act, as it relates to psilocybin, is not generally applicable because it prohibits Singularism's religious use of psilocybin while permitting secular use of psilocybin in a way that similarly undermines the governmental interests Defendants have tried to assert in this action. *See* ECF 9, at 27-28. As Singularism previously explained, S.B. 266 Medical Amendments, passed by the Utah Legislature in 2024, now codified at Utah Code § 58-37-3.5 ("Utah Psilocybin Act"), permits Utah's largest healthcare systems to administer psilocybin to individuals according to the healthcare systems' discretion and in a purely secular way. *See* ECF 9, at 22-23.

The healthcare systems' discretion to administer psilocybin is tempered only by precautions that Singularism itself already takes: (1) direct supervision by a qualified individual (Mr. Jensen qualifies as a mental health practitioner exempted from licensure as clergy under the appropriate title of the Utah Code, *see* ECF 9, at 9, 24-25, 28-29), (2) administration only to individuals at least eighteen years old, (3) guided by a "broad collection of scientific and medical research," a term apparently up to the healthcare system's interpretation. The only requirements of the Utah Psilocybin Act in which Singularism has not engaged are that Singularism is not a "healthcare system," meaning it does not operate at least fifteen hospitals in Utah, and Singularism

has not made a report to the Utah Legislature regarding its administration of psilocybin, although the Utah Psilocybin Act does not require that of healthcare systems until July 1, 2026. Notably, the Utah Psilocybin Act contains *no requirement whatsoever* regarding how a healthcare system must source its psilocybin, has no chain of custody requirements, no requirement that psilocybin must be tested, and no requirement about acceptable levels of psilocybin purity.

The Utah Psilocybin Act undermines the governmental interests Defendants have tried to state in this action, which appear to be generalized interests in regulating controlled substances for the purposes of public health, public safety, and the prevention of drug trafficking. Even if Defendants had articulated those interests with the required specificity as to Singularism in particular, which they have not, *see* ECF 19, at 12-17; ECF 24, at 2 ("The court also finds that the government has not shown a compelling interest in prohibiting Singularism from using psylocibin outright and accordingly has not carried its burden."), the Utah Psilocybin Act undermines each of those governmental interests in the same way Defendants assert Singularism does.

First, Defendants have argued that psilocybin poses a threat to public health and safety. *See, e.g.,* ECF 13, at 3, 14, 17, 34-37. Defendants dramatically argue the threat of psilocybin is so severe that psilocybin use will lead to overdose, impaired drivers, hospitalizations, suicides, self-harm, homicides, and even increased prison populations. *See* ECF 13, at 35-36. In addition to the fact that Defendants' own cited sources do not support that argument, *see* ECF 19, at 13-15, the Utah Legislature, in its enactment of the Utah Psilocybin Act, disagreed as well. The Utah Legislature disregarded such speculative harms by passing the Act. Further, nothing in the Utah Psilocybin Act prevents such speculative harms from occurring under the watch of a healthcare system any differently than under the care of a clergy mental health practitioner like Mr. Jensen,

whose religious mental health practice is approved by the Utah Department of Commerce's Division of Professional Licensing, *see* ECF 9, at 9. If anything, it is likely that Mr. Jensen is *more* qualified and experienced to safely administer psilocybin to individuals and prevent adverse outcomes than a healthcare system in Utah operating for the first time under the newly enacted Utah Psilocybin Act.

Second, Defendants appear to have argued that psilocybin possession leads to illegal trafficking of psilocybin, thereby affecting public safety. *See* ECF 13, at 36. Apart from Defendants' cited sources not substantiating that argument,[2] again, by enacting the Utah Psilocybin Act, the Utah Legislature disagreed. Further, nothing in the Utah Psilocybin Act prevents the speculative harm of drug trafficking from occurring under the watch of a healthcare system any differently than under the care of a religious leader like Mr. Jensen. The Utah Psilocybin Act contains no requirements regarding psilocybin sourcing, chain of custody, testing, or purity levels.

Thus, even crediting Defendants' generalized interests regarding public health, public safety, and drug trafficking, the Utah Psilocybin Act, which permits secular psilocybin usage, "undermines the government's asserted interests in a similar way," while prohibiting strikingly similar religious usage. Under both *Fulton* and *Chiles*, that unequal treatment on the basis of religion triggers strict scrutiny review under the First Amendment. Accordingly, for the very same

---

[2]    *See* ECF 13, at 36 n. 17 (acknowledging, in a National Institutes of Health publication, that "psilocybin is by no means the most dangerous drug," that some individuals seek psilocybin for "spiritual or self-exploration," that in recent years there "has been growing research interest in the potential of psychedelic and dissociative drugs to treat medical conditions, including mental health disorders," and encouraging individuals that use psilocybin to "be educated about risks associated with use.").

reasons the Court has already found that Defendants are substantially likely to fail strict scrutiny under Utah's RFRA, Defendants are also likely to do so under the First Amendment. Further, as Singularism has previously argued, Defendants have plainly less restrictive means to accomplish what governmental interests they may have, including the terms of the Utah Psilocybin Act, or simply imposing no requirements on Singularism at all, which was the course Defendants took regarding Singularism for over a year and is the action Defendants have not disputed they have taken for other similarly situated religious groups. *See* ECF 9, at 9, 22-26, 29; ECF 19, at 17-18. Notably, in prior briefing Defendants made *no argument at all* that there was no other less restrictive means of accomplishing its stated governmental interests. *See* ECF 19, at 17-18.

Thus, under the low motion to dismiss standard, Singularism has stated a claim that is plausible on its face for Defendants' violation of the First Amendment's Free Exercise Clause. On this basis alone, the Court can reject Defendants' attempted flight back to state court, as this federal claim will remain live before this Court. And as discussed in more detail below, it is possible that Singularism's First Amendment claim will not be wholly duplicative of Singularism's Utah RFRA claim, should the Court determine the Utah RFRA does not authorize damages. In other words, the Court may be required to complete a First Amendment analysis regardless of whether the Utah RFRA provides a clearer path to strict scrutiny review.

### b.  Strict Scrutiny Applies Under Article I, Section 4 of the Utah Constitution.

Defendants continue to argue that Article I, Section 4 of the Utah Constitution does not require strict scrutiny review of free exercise violations, despite the clear line of reasoning through several cases that Singularism has already articulated. *See* ECF 9, at 13-17. Instead, Defendants

propose a neutrality standard. But, as Singularism has already argued, that standard relates to questions of religious *establishment*, not free exercise. *See* ECF 19, at 18-19.

Like the First Amendment, Article I, Section 4 of the Utah Constitution contains clauses related both to religious free exercise and the prohibition of religious establishment by the government. *Summum v. Pleasant Grove City*, 2015 UT 31, ¶ 7, 345 P.3d 1188, 1190 (citing *Separationists, Inc. v. Whitehead,* 870 P.2d 916, 935 (Utah 1993)). The language of Utah's free exercise clause reads similarly to the First Amendment: "The State shall make no law . . . prohibiting the free exercise [of religion] . . . ." Utah Const. art. I, § 4. However, Article I, Section 4 contains additional language beyond the similar language found in the First Amendment's Establishment Clause, adding that "There shall be no union of Church and State, nor shall any church dominate the State or interfere with its function. No public money or property shall be appropriated for or applied to any religious worship, exercise or instruction, or for the support of any ecclesiastical establishment." *Id.*

It is this establishment language that Defendants' cited cases interpret, not the free exercise content of Article I, Section 4. *See Soc'y of Separationists, Inc.*, 870 P.2d at 937-38 ("We therefore read this neutrality requirement into the 'no public money or property' language of article I, section 4.") (reviewing whether the practice of permitting prayers to be given prior to city council meetings amounted to religious establishment); *Summum*, 2015 UT 31, ¶ 7 ("Summum relies on the provision of the religious liberty clause prohibiting financial support of religion: 'No public money or property shall be appropriated for or applied to any religious worship, exercise or instruction'") (reviewing whether a city violates religious establishment principles if it permits one religious monument in a city park, but not another religion's monument).

The relevant pronouncements from the Utah Supreme Court indicate that free exercise claims require strict scrutiny review under the Utah Constitution. The Utah Supreme Court has, several times over, explained that First Amendment interpretation does not control analysis of Article I, Section 4. *See Soc'y of Separationists, Inc*., 870 P.2d at 930; *Snyder v. Murray City Corp*., 124 F.3d 1349, 1354 (10th Cir. 1997); *Snyder v. Murray City Corp.*, 2003 UT 13, 73 P.3d 325; *Summum*, 2015 UT 31, ¶ 7. And as explained in Singularism's prior, unrebutted briefing, the Utah Supreme Court has indicated strict scrutiny is the proper analysis. *See* ECF 9, at 14-15; *Jeffs v. Stubbs*, 970 P.2d 1234, 1249 (Utah 1998); *State v. Green*, 2004 UT 76, ¶ 70 n.1, 99 P.3d 820 (Durrant, J., concurring); *State v. Holm*, 2006 UT 31, ¶ 34 n.8, 137 P.3d 726.

This Court (Judge Parrish) should be uniquely familiar with the Utah Supreme Court's decisional development on this front, as Judge Parrish authored the Utah Supreme Court's opinion in *State v. Mooney*, 2004 UT 49, ¶ 29, 98 P.3d 420, 428, when then a member of the Utah Supreme Court. In *Mooney*, the principal question before the Court was whether the Utah Controlled Substances Act incorporated the federal Controlled Substances Act's exemption for religious peyote usage. *Mooney*, 2004 UT 49, ¶ 9, 98 P.3d 420, 424. The Utah Supreme Court found the exemption was incorporated, and also found that the exemption was not limited to members of federally recognized Native American tribes. *Id.* at ¶¶ 19, 22. In addressing an argument that permitting only members of federally recognized Native American tribes to avail themselves of the religious peyote exemption would be problematic, the Court stated that it was "unclear whether an interpretation that extended the religious peyote exemption to only some members of the Native American Church would *survive scrutiny* under article I, section 4 of the Utah Constitution . . ." *Id.* at ¶ 29 (emphasis added). This statement invokes the Utah Supreme Court's discussion of strict

scrutiny review of free exercise claims which commenced in *Jeffs* and continued just months after *Mooney* in *Green* and two years later in *Holm.* Because the Utah Supreme Court has indicated free exercise violations merit strict scrutiny review, Singularism states a plausible claim for relief under Article I, Section 4 of the Utah Constitution.

### c.  Strict Scrutiny Applies Under Utah's Religious Freedom Restoration Act.

Defendants do not attempt to argue that strict scrutiny review is not required under Utah's RFRA. They can't. Utah's RFRA explicitly requires it. *See* ECF 19, at 12; Utah Code § 63G-33-201(1), (3). And this Court has already confirmed it. *See* ECF 24, at 2. Instead, they try to invalidate Singluarism's Utah RFRA claim by rearguing (1) the notice-of-claim provision of Utah's RFRA and (2) their substantial burden argument under Utah's RFRA, and by newly arguing (3) that Utah's RFRA does not permit an award of damages.

As to the first, this Court has already held that the Utah RFRA's notice-of-claim exemption applies: "The court finds that Plaintiffs satisfy the requirements for the exception for 'ongoing' governmental action, *id.* § 63G-33-201(5)(b)(i). The deprivation of their psylocibin and records is ongoing, and requiring Plaintiffs to wait until the 60-day window passes would impose an 'undue hardship,' *id.*" ECF 24, at 2. That, alone, should be enough to dispatch Defendants' notice-of-claim argument.

However, despite stating in the "Relevant Facts" section of their brief that "Plaintiffs emailed a Notice of Claim to Defendants on November 19, 2024," ECF 40, at 3, and Plaintiffs' Notice of Claim having been filed with the Court, *see* ECF 28-2, Defendants perplexingly then argue that it "is undisputed that Plaintiffs did not provide any notice to any of Defendant in compliance with Utah Code § 63G-7-401," ECF 40, at 20. Disregarding this factually erroneous

statement, even if the Utah RFRA's notice-of-claim exemption did not apply, Plaintiffs' notice of claim shows they have complied with the statute such that 60 days following November 19, 2024 (January 18, 2025) Singularism's Utah RFRA claim will be properly before this Court, several days prior to the Court's hearing of Defendants' motion to dismiss.

Defendants' second argument that Singularism's religious free exercise has not been burdened also fails. Again, the Court has already decided this question, "finding that Plaintiffs are likely to be able to show a substantial burden on the exercise of their beliefs about ps[i]loc[y]bin," including because the "deprivation of their ps[i]loc[y]bin . . . is ongoing," and "no amount of damages later can fully compensate them for this harm." ECF 24, at 2-3. Despite the Court ordering Defendants to return the psilocybin, they refused to do so, instead seeking a stay of the Court's TRO, which is presently granted pending the Court's resolution of Singularism's motion for preliminary injunction. *See* ECF 56, at 5.[3]

Although this ongoing deprivation remains, as well as Defendants' threat that they will evict Singularism from its spiritual center (a fact which, despite all the briefing submitted to the

---

[3]     Just as the Court indicated, Singularism is highly "skeptical" of Defendants' assertion that they need Singularism's psilocybin to prosecute their criminal case against Mr. Jensen. *See* ECF 56, at 3. Beyond what Singularism has already raised with the Court, Defendants' *voluntary* return of "Psilocybin paraphernalia (scales, storage cups, electronic grinder)" following the Court's TRO, *see* ECF 13-15 (log of items seized by Defendants); ECF 24 (ordering return of only psilocybin and records); ECF 32, at 3 ("Defendants agreed to return the grinder and scales—even though those items were not part of the Court's Injunction Order."), undermines Defendants' claim that they would be violating Utah's evidence retention statute by returning Singularism's psilocybin. Defendants' criminal information brings claims for both possession of psilocybin *and* drug paraphernalia. Thus, under Defendants' reasoning, Defendants have violated Utah's evidence retention statute by returning what they consider to be paraphernalia. *See* Utah Code §§ 77-11c-201, 77-11c-202, 77-11a-305. That Defendants feel comfortable violating the evidence retention statute for one type of evidence but not another suggests Defendants have asserted the evidence retention statute only to justify their refusal to return Singularism's sacramental psilocybin.

Court to date, Defendants have yet to acknowledge, *see* ECF 9, at 7-8), Defendants focus on their post-TRO criminal prosecution of Mr. Jensen, arguing that it does not impose a substantial burden on his religion under Utah's RFRA. To do so, Defendants, as they have done before, *see* ECF 13, at 21-23, misconstrue the plain language of Utah's RFRA.

Singularism points the Court back to the detailed definition of "substantial burden" it already identified to the Court. *See* ECF 19, at 22-24. The fact that Utah's RFRA states that "'Substantially burden'" *includes* . . . assessing criminal . . . penalties or damages," Utah Code § 63G-33-101(6)(b)(i)(B) (emphasis added), does not mean, as Defendants argue, that government action which is not included as a specific example in the statute is *excluded* from the broader definition of "substantially burden." Plainly, the definition of "substantially burden" which proceeds this example controls: that *any* government action which "directly *or indirectly* . . . constrains, limits*, or denies the free exercise of religion . . . or *compels a person to act, or fail to act*, in a manner that is contrary to the person's free exercise of religion" amounts to a substantial burden upon religious free exercise. Utah Code § 63G-33-101(6)(a). As Singularism has previously argued, and this Court has already found, the fact of Defendants' criminal prosecution against Mr. Jensen is shrinking the body of Singularism's faithful. *See* ECF 56, at 7 ("Plaintiffs presented evidence that some of Singularism's followers have already distanced themselves from the faith because of Defendants' actions, and these harms are only likely to multiply given that the government is now pursuing criminal charges against Mr. Jensen."). Thus, Singularism easily has pleaded substantial burdens upon its religious free exercise.

Third, Defendants argue the Court should dismiss Singularism's request for damages under Utah's RFRA. Defendants' reading of Utah's RFRA would permit governmental entities to

perpetuate religious free exercise violations without regard for what damages, aside from costs and attorney fees, their violations would have upon religious individuals and organizations.

When faced with the question of whether the federal RFRA authorized damages, the U.S. Supreme Court first determined that the federal RFRA authorized damages to be sought against government officials. *Tanzin v. Tanvir*, 592 U.S. 43, 48 (2020). In doing so, it noted that the federal RFRA was enacted against the "legal backdrop" of 42 U.S.C. § 1983, which permits suits against government officials. *Id.* The Court then proceeded to note that in "the context of suits against government officials, damages have long been awarded as appropriate relief," culminating in the Court's interpretation of "the modern version of § 1983 to permit monetary recovery against officials . . . ." *Id.* at 49-50. The Court stated that the "availability of damages under § 1983 is particularly salient in light of RFRA's origins" which made clear that RFRA "was reinstating both the pre-*Smith* substantive protections of the First Amendment *and* the right to vindicate those protections by a claim." *Id.* at 50. Thus, given "that RFRA reinstated pre-*Smith* protections and rights, parties suing under RFRA must have at least the same avenues for relief against officials that they would have had before *Smith*. That means RFRA provides, as one avenue for relief, a right to seek damages against Government employees." *Id.* at 51. Notably, the Court explained that a "damages remedy is not just 'appropriate' relief as viewed through the lens of suits against Government employees. It is also the *only* form of relief that can remedy some RFRA violations." *Id.* Accordingly, the Court validated three Muslim plaintiffs' claim for money damages which accounted for the value of "airline tickets wasted and income from job opportunities lost" as a result of the Government's unlawful placement of the plaintiffs on the No Fly List. *Id.* at 46.

*Tanzin*'s reasoning is equally applicable to Utah's RFRA. As Singularism previously argued, Utah's RFRA builds upon the history of the federal RFRA. *See* ECF 9, at 17-22. Indeed, SB 150's preamble invokes this history, stating:

> (1) (a) WHEREAS, Utah has long protected and prized the religious freedom of people of all faiths in the Utah Constitution and the Utah Code;
> (b) WHEREAS, the federal Religious Freedom Restoration Act has protected religious freedom for three decades, but does not extend to state law;
> (c) WHEREAS, thirty-five states have implemented legal protections for the free exercise of religion that are similar to the protections provided in this bill; . . .[4]

SB 150's bill sponsor, Senator Todd Weiler, testified that Utah's RFRA, as compared to other state RFRAs, was intended to be "the best RFRA . . . in the country in terms of a state version . . . ."[5] Thus, permitting damages to be awarded under Utah's RFRA is consistent both with its historical derivation from the federal RFRA (which was in turn derived from the First Amendment and related to 42 U.S.C. § 1983) and the legislative intent behind Utah's RFRA.

Despite this, Defendants argue that because the language of Utah RFRA's language differs from the federal RFRA, the difference indicates the Utah Legislature's intent to bar damages. As Defendants point out in their brief, the federal RFRA uses the phrase "obtain appropriate relief," 42 U.S.C. § 2000bb-1(c), while Utah's RFRA uses the phrase "obtain relief," Utah Code § 63G-33-201(4)(a). Notably, Utah's RFRA's phrase "obtain relief" is found in Utah Code § 63G-33-201(4)(a), separate from its discussion of costs and attorney fees, found in Utah Code § 63G-33-201(6).

---

[4]    *S.B. 150 Exercise of Religion Amendments*, UTAH STATE LEGISLATURE, available at, https://le.utah.gov/~2024/bills/static/SB0150.html.

[5]    *Senate – 2024 General Session – Day 29*, at 2SB150 Exercise of Religion Amendments, Weiler, UTAH STATE LEGISLATURE, available at, https://le.utah.gov/av/floorArchive.jsp?markerID=125928.

The U.S. Supreme Court's damages analysis in *Tanzin* was anchored to the phrase "obtain appropriate relief." *Tanzin*, 592 U.S. at 46-52. Indeed, the Court conducted an analysis on the word "appropriate" itself, pointing to dictionaries that defined the word to mean "specifically fitted or suitable, proper" and "especially suitable or compatible." *Id.* at 48-49 (cleaned up). The Court found the word "appropriate" to be "open-ended on its face," meaning that "what relief is appropriate is inherently context dependent." *Id.* at 49 (cleaned up) (quotation omitted). It thereafter proceeded to engage in the historical analysis above, finding damages awards to be "appropriate" relief. *Id.*

The Utah RFRA, however, does not include the word "appropriate" as a qualifier like the federal RFRA does. Thus, unlike in *Tanzin*, the question of whether a certain form of relief is "appropriate" is not a question before this Court. Indeed, the omission of that word from Utah's RFRA indicates even *less* room for courts to second-guess religious plaintiffs' claims for relief and *more* ability for religious plaintiffs to pray for their form of desired remedy, including damages. The Utah Legislature was well aware of the backdrop of the federal RFRA and *Tanzin* when passing the Utah RFRA. Should the legislature have wanted to insert the qualifier "appropriate" to introduce the statutory ambiguity which the U.S. Supreme Court had to resolve in *Tanzin*, it knew how to do so. But the Utah Legislature chose otherwise. Thus, the Court should reject Defendants' assertion that Singularism's remedy under Utah's RFRA is limited to costs and attorney fees.

However, even if this Court determines that Utah's RFRA authorizes only costs and attorney fees, that does not invalidate Singularism's cause of action under Utah's RFRA; it only prescribes a certain remedy. Furthermore, a finding that Utah's RFRA's relief is limited to costs

and attorney fees would then necessitate the Court deciding either or both of Singularism's other claims for free exercise violation under the First Amendment and 42 U.S.C. § 1983, or Article I, Section 4 to the Utah Constitution, both of which authorize the award of damages, including punitive damages (Defendants have not argued otherwise), yet another reason that this Court need adjudicate all the claims before it, including the federal claims. Thus, for all the above reasons, Singularism plausibly alleges a cause of action for violation of Utah's RFRA. Defendants' motion to dismiss as to this claim, as well as Singularism's two constitutional claims for religious free exercise, should be denied.

### III. PLAINTIFFS STATE A CLAIM FOR UNREASONABLE SEARCH AND SEIZURE UNDER THE FOURTH AMENDMENT AND UTAH CONSTITUION.

Defendants' motion to dismiss makes no assertion that Singularism failed to adequately plead its causes of action under the Fourth Amendment or Article I, Section 14 of the Utah Constitution (although Defendants do point out those two claims are not identical, as Article I, Section 14 "provides greater protections to Utah citizens than the Fourth Amendment," *ECF* 40, at 22 (quoting *State v. Worwood*, 2007 UT 47, ¶ 16, 164 P.3d 397)). For example, Defendants make no argument about the reasonableness of the search and seizure at issue. Defendants argue only that they are absolutely immune from those two causes of action. Thus, Singularism responds only to Defendants' absolute immunity arguments, which, as shown below, fail.

#### a. Defendants Are Not Absolutely Immune from Plaintiffs' Unreasonable Search and Seizure Claims.

First, Defendants argue they are absolutely immune from Singularism's Fourth Amendment claim because they were acting pursuant to a valid court order—the search warrant they procured. Aside from the fact that Singularism's Complaint contains allegations of

misconduct before and after Defendants obtained and executed the search warrant, Defendants' legal arguments do not hold water.

Courts apply a functional approach to absolute immunity, determining absolute immunity's applicability separately for each defendant and each claim. *See Buckley v. Fitzsimmons*, 509 U.S. 259 (1993) (endorsing the functional approach); *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997) ("[I]n determining immunity, we examine 'the nature of the function performed, not the identity of the actor who performed it.'") (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988)). Yet, Defendants have made no attempt to articulate their immunity arguments specifically regarding each Defendant or each cause of action. On this basis alone, the Court can reject Defendants' arguments.

Moreover, police officers do not generally have absolute immunity. *Pierson v. Ray*, 386 U.S. 547, 555 (1967) ("The common law has never granted police officers an absolute and unqualified immunity"). Indeed, even prosecutors' immunity must be evaluated in each particular situation. "The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of those duties. We have been 'quite sparing' in our recognition of absolute immunity. . . ." *Burns v. Reed*, 500 U.S. 478, 486-87 (1991). For example, "prosecutors are not entitled to absolute immunity for 'investigative' or 'administrative' acts." *Id.* at 483 n.2, 486. Even "the actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor. Qualified immunity 'represents the norm' for executive officers . . . so when a prosecutor functions as an administrator rather than as an officer of the court he is entitled only to qualified immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) (cleaned up). "There is a difference between the advocate's role in evaluating evidence and interviewing

witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand." *Id.* "A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." *Id.*

Prosecutors do not have absolute immunity when providing police officers with legal advice, nor do police officers in following such advice. *Burns v. Reed*, 500 U.S. 478, 495-96 (1991) ("[I]t is incongruous to allow prosecutors to be absolutely immune from liability for giving advice to police, but to allow police officers only qualified immunity for following the advice.") ("[W]e conclude that respondent has not met his burden of showing that the relevant factors justify an extension of absolute immunity to the prosecutorial function of giving legal advice to the police."). *See also Harris v. Bornhorst*, 513 F.3d 503 (6th Cir. 2008) (concluding that a prosecutor was not entitled to absolute immunity when the prosecutor directed police to arrest a suspect). Where a prosecutor told officers "what to do and what not to do," provided legal advice as to when an arrest should occur, assisted in writing a search warrant, and viewed evidence together with the police prior to prosecution, and the officer sought the prosecutor's "legal opinion on whether the information in the search warrant affidavit was sufficient to establish probable cause," the prosecutor "was not performing functions that were intimately associated with the judicial phase of a criminal proceeding, nor was he engaged in an effort to obtain or preserve evidence once probable cause existed to arrest a suspect." *Coopshaw v. Figurski*, No. 06-CV-13246, 2008 WL 324103, at *9-10 (E.D. Mich. Feb. 6, 2008). In such circumstance, the prosecutor "is not entitled to absolute immunity." *Id.* at *10-11. *See also Rieves v. Town of Smyrna, Tennessee*, 959 F.3d 678,

690-94 (6th Cir. 2020) (absolute immunity did not apply to prosecutor advising police during the investigative phase, including regarding the existence of probable cause).

Neither are prosecutors or police officers entitled to absolute immunity for sworn statements in support of applications for arrest warrants. While a prosecutor's "activities in connection with the preparation and filing of . . . the information and the motion for arrest warrant[ ] are protected by absolute immunity," when the prosecutor files sworn testimony in support, such action is "the function of the witness, not of the lawyer," and is not entitled to absolute immunity. *Kalina v. Fletcher*, 522 U.S. 118, 129-31 (1997). A "police officer who secures an arrest warrant without probable cause cannot assert an absolute immunity defense." *Malley v. Briggs*, 475 U.S. 335 (1986).

Additionally, prosecutors are not entitled to absolute immunity for statements made to the media. A prosecutor's "statements to the media are not entitled to absolute immunity." *Buckley*, 509 U.S. at 277. "Comments to the media have no functional tie to the judicial process just because they are made by a prosecutor. . . . The conduct of a press conference does not involve the initiation of a prosecution, the presentation of the state's case in court, or actions preparatory for these functions. . . . in these respects, a prosecutor is in no different position than other executive officials who deal with the press, and . . . qualified immunity is the norm for them." *Id.* at 277-78.

Defendants argue that the police officers in this case were absolutely immune from suit because they were executing a facially valid search warrant. ECF 40, at 10-11. Even if that were the case (which Singularism disputes given that the search warrant was procured despite Defendants' knowledge of Singularism's bona fide claim to religious exemption), the police officers certainly lack absolute immunity for their actions *prior to the execution of the search*

*warrant as well as actions taken unrelated to the search warrant*, such as the service of the eviction notice on Singularism's landlord. And where Defendant Gray gave legal advice to police and made statements regarding Plaintiffs to the media, he similarly lacks absolute immunity from suit.

Second, Defendants argue that they are immune from Singularism's claim under Article I, Section 14 of the Utah Constitution pursuant to the Utah Governmental Immunity Act ("UGIA"). This argument is dispatched easily. As this Court has held, Defendants' "'argument is without merit and requires little analysis because the UGIA does not apply to claims alleging state constitutional violations.'" *Stella v. Cnty.*, No. 1:18-CV-00002-JNP, 2023 WL 5334421, at *5 (D. Utah Aug. 18, 2023) (quoting *Jensen ex rel. Jensen v. Cunningham*, 2011 UT 17, ¶ 51, 250 P.3d 465, 479) (cleaned up).[6] Thus, Defendants have no claim to immunity under the UGIA.

## CONCLUSION

For the reasons stated above, the Court should deny Defendants' motion.

DATED January 14, 2025.

*/s/ Tanner J. Bean*
Tanner J. Bean
Anna P. Christiansen
*Attorneys for Plaintiffs*

---

[6]    Defendants' claim that Singularism inadequately briefed this issue, *see* ECF 40, at 22, is surprising given that they fail to bring this controlling authority to the Court's attention and because Defendants raise their immunity argument for the first time in their motion to dismiss, meaning that this is Singularism's first opportunity to address it.