J. Brian Jones (11816)
Gary D. Millward (12170)
Richard A. Roberts (12217)
PROVO CITY ATTORNEY'S OFFICE
445 W Center St.
Provo, Utah 84601
(801) 852-6140
gmillward@provo.gov
rroberts@provo.gov

*Attorneys for Defendants Provo City, Troy Beebe, Brian Wolken, and Jackson Julian*

Mitchell A. Stephens (11775)
Justin L. James (15167)
Dillon P. Olson (16120)
JAMES DODGE RUSSEL & STEPHENS
10 West Broadway, Ste. 400
Salt Lake City, Utah 84101
mstephens@jdrslaw.com
jjames@jdrslaw.com
dolson@jdrslaw.com

*Attorneys for Defendants Utah County and Jeffrey Gray*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BRIDGER LEE JENSEN, an individual; SINGULARISM, a non-profit corporation; PSYCHE HEALING AND BRIDGING, LLC dba PSYCHEDELIC THERAPY JOURNEY, a limited liability company;<br><br>Plaintiffs,<br><br>v.<br><br>UTAH COUNTY, a political subdivision; PROVO CITY, a political subdivision; JEFFREY GRAY, an individual; TROY BEEBE, an individual; BRIAN WOLKEN, an individual; JACKSON JULIAN, an individual; JOHN DOES 1-4, individuals;<br><br>Defendants. | **SUPPLEMENTAL MEMORANDUM SUPPORTING JOINT OPPOSITION TO PRELIMINARY INJUNCTION**<br><br>Civil Case No. 2:24-cv-00887-JNP-CMR<br><br>Judge Jill N. Parrish<br><br>Magistrate Judge Cecilia M. Romero |

Defendants Utah County (the "County"), Jeffrey Gray ("Gray") (collectively "Utah County") and Provo City (the "City"), Troy Beebe ("Beebe"), Brian Wolken ("Wolken"), and Jackson Julian ("Julian") (collectively "Provo") submit this supplemental memorandum of

1

authorities in support of their Joint Memorandum Opposing Motion for Temporary Restraining Order and Preliminary Injunction.[1]

## ARGUMENT

At the preliminary injunction stage, the burden on the moving party is substantial and clear, especially when the injunction will alter the status quo. "A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam). Preliminary injunctive relief is especially disfavored when it enjoins the enforcement of facially constitutional laws. "An injunction pending appeal barring the enforcement of an Act of Congress would be an extraordinary remedy particularly when . . . th[e] Act [is] facially constitutional." *Wis. Right to Life, Inc. v. FEC*, 542 U.S. 1305, 1305-06 (2004) (C.J. Rehnquist, in chambers).

Here, both the federal and Utah controlled substance laws are facially constitutional. *See Gonzales v. Raich*, 545 U.S. 1, 9 (2005) ("The CSA is a valid exercise of federal power, even as applied to the troubling facts of this case."). For Plaintiffs to ultimately prevail on their religious freedom claims, Plaintiffs must establish that the beliefs they espouse are "actually religious in nature" by demonstrating that Plaintiffs' beliefs are "sincerely held," and "forcing them to obey the [controlled substance laws] would impose a substantial burden on their ability to conduct themselves in accordance with those sincerely held religious beliefs." *United States v. Christie*, 825 F.3d 1048, 1056 (9th Cir. 2016). Without conceding Plaintiffs have met this hurdle, but for purposes of this preliminary injunction phase, even assuming Plaintiffs have satisfied those elements, Utah CSA's closed regulation of Schedule I drugs, including psilocybin, is the least restrictive means of

---

[1] This Supplemental Memorandum was included as Exhibit A to Defendants' Motion for Leave to File Supplemental Memorandum Supporting Joint Opposition to Preliminary Injunction ("Motion for Leave"). [*See* Dkt. 64-1]. On January 17, 2025, the Court granted Defendants' Motion for Leave. Out of an abundance of caution, Defendants formally submit this supplemental memorandum as a standalone filing. Aside from this footnote, the substance of this memorandum is the same as Dkt. 64-1.

accomplishing this compelling government interest.

**POINT I:   DEFENDANTS HAVE COMPELLING GOVERNMENT INTERESTS IN PROHIBITING PLAINTIFFS' USE AND DISTRIBUTION OF PSILOCYBIN.**

Psilocybin is a Schedule I drug under both the federal CSA and Utah's CSA. 21 U.S.C. § 812(c)(Schedule I(c)(15)); Utah Code § 58-37-4(2)(a)(iii)(Y). By placing it in Schedule I, Congress determined that psilocybin "has a high potential for abuse" and cannot be safely used. 21 U.S.C. 812(b)(1)(A) and (C). Protecting the public from threats to health and safety is a prototypical compelling government interest. *See Wisconsin v. Yoder*, 406 U.S. 205, 220 (1972); *Sherbert v. Verner*, 374 U.S. 398, 403 (1963).

Before enacting the federal CSA ("CSA"), the United States Congress stated that the CSA is a part of the legislative effort "to deal in a comprehensive fashion with the growing menace of drug abuse in the United States." H.R. Rep. No. 1444, 91st Cong., 2d Sess. Pt. 1, at 1 (1970). The CSA was enacted as a "comprehensive" and "'closed' system of drug distribution" for all scheduled controlled substances. *Id*. at 1, 6. Under the CSA, there is a strict categorization of drug transactions and uses that are permitted, as well as identifying all "other transactions outside the legitimate distribution chain illegal." *Id*. at 3. To that end, the CSA bans the import, manufacture, distribution, possession, and use of Schedule I drugs outside of those tightly controlled and regulated system. *See* 21 U.S.C. 841(a)(1).

For these same reasons, Utah adopted the Uniform Controlled Substances Act. *See, e.g.*, Utah Code § 58-37-18(3) (recognizing law's "purpose to make uniform the law of those states which enact it"). Both the Uniform Act and the prefatory note to Utah's controlled substances Act ("Utah CSA") recognize the compelling government interest in regulating controlled substances because the "drug

abuse problem has reached epidemic proportions." Utah CSA (1994) at Prefatory Note; Uniform CSA (1994) at Prefatory Note. Under Utah's CSA, the distribution of Schedule I drugs is only permitted "by a licensee," who receives an order from the Utah Division of Professional Licensing. Utah Code § 58-37-6(6). For psilocybin, specifically, the Utah CSA recently enacted a "very controlled program" to distribute and permit use of psilocybin through "reputable hospital systems" that have "develop a behavioral health treatment program" that is closely supervised "under the direct supervision and control of the healthcare system." Utah Code § 58-37-3.5(2)-(3).

Utah's closed system of regulating controlled substances, psilocybin specifically, furthers the government's compelling interests in protecting the public's health and safety. Defendants' Joint Memorandum Opposing Plaintiffs' Motion for TRO and Preliminary Injunction details continuing concerns involving psilocybin, including hospitalization, suicidal ideation, self-harm, and withdrawals. [*See* Joint Memo. Opp. at 36]. Indeed, last month the Utah Poison Control Center was "notified about a possible case of amatoxin (mushroom) induced liver failure and death." *See* Safety Alert: Death associated with eating tainted psychedelic mushrooms in Utah.[2] Like Plaintiffs in this case, the deceased patient used "mushrooms purchased on the street." *Id.*

Utah also has a compelling government interest in prohibiting and preventing illegal drug trafficking. "Much of [the] major increase in drug use and abuse is attributable to the increased mobility" of people and drugs.  Uniform CSA (1994) at Prefatory Note.  "Drugs clandestinely manufactured or illegally diverted from legitimate channels in one part of a State are easily transported for sale to another part of that State or even to another State." *Id.*

Even if Plaintiffs could harmlessly distribute psilocybin (they cannot), the Court cannot

---

[2] Available at https://poisoncontrol.utah.edu/news/2024/12/safety-alert-psychedelic-mushrooms-death#:~:text=The%20Utah%20Poison%20Control%20Center,mushrooms%20purchased%20on%20the%20street.

4

ignore that Plaintiffs are supporting an illegal drug market when they purchase drugs off the street. Indeed, Plaintiffs have not established that their drug dealers (e.g., "Inca") operate on a purely religious basis. Moreover, Plaintiffs have opposed Defendants' efforts to conduct discovery on this issue. Lacking any contrary evidence from Plaintiffs, the State of Utah must recognize that illicit drug purchases regularly support dangerous, far-reaching and widespread criminal enterprises. *See, e.g.*, U.S. Dept. of Justice, *National Drug Threat Assessment* (March 2021) (recognizing combination of "psilocybin mushroom grows," "THC extraction laboratories," and "illicit fentanyl pill press operations"); U.S. Customs & Border Protection, *Ecstasy and Psilocybin Mushrooms Discovered in Vehicle at the Port of Chaplain* (June 3, 2022) (recognizing seizure of "various narcotics, that included ecstasy, marijuana, and psilocybin"); KPCW, *UHP seizes 80 pounds of pot, thousands of pills in Sumit County traffic stop* (Oct. 29, 2024) (recognizing seizure of "bags of psilocybin mushrooms," "83 pounds of marijuana," and "4,000 MDMA or Ecstasy pills"); U.S. Dept. of Justice, *Springfield man sentenced . . .* (Dec. 11, 2024) (seizing "psilocybin, methamphetamine" "fentanyl, cocaine," and "more than 100 firearms"); U.S. Dept. of Justice, *Cuba couple arrested . . . .* (Dec. 3, 2024) (seizing "suspected psilocybin mushrooms," "475 growing marijuana plants," and "a 9mm pistol"); U.S. Dept. of Justice, *U.S. Attorney's Office, DEA and HIS announce . . .* (Nov. 7, 2024) (seizing "36 grams of psilocybin mushrooms," "842 grams of fentanyl, 1,118 grams of methamphetamine, 285 grams of cocaine," "400 grams of marijuana, and 96 grams of hydrocodone"); U.S. Dept. of Justice, *Armed fentanyl . . . trafficker pleads guilty* (Oct. 31, 2024) (seizing "44.8 grams of psilocybin mushrooms," "two kilograms of methamphetamine, 108 grams of fentanyl, 198 grams of heroin, 168 grams of cocaine, 1,183 grams of marijuana" among other drugs); U.S. Dept. of Justice, *Omaha man sentenced . . .* (Oct. 24, 2024) (seizing "psilocybin mushrooms" and "30,000 fentanyl pills"); U.S. Dept. of Justice, *Activity in the U.S. Attorney's Office*, (Oct. 9, 2024) (seizing "psilocybin

5

mushrooms," "2,730 fentanyl pills," and "crack cocaine").³ Even if Plaintiffs' intentions are pure, the State and Court should not condone a system that furthers secular criminal enterprises.

Few law enforcement tasks have proved more formidable than detecting unlawful drug usage and preventing drug abuse and diversion. Indeed, "the obstacles to detection of illegal conduct may be unmatched in any other area of law enforcement." *United States v. Mendenhall*, 446 U.S. 544, 562 (1980). "RFRA is not a 'get out of jail free card.'" *United States v. Grady*, 18 F.4th 1275, 1287 (11th Cir. 2021). If drug dealers are allowed to traffic and sell Schedule I drugs and Plaintiffs are permitted to purchase, use, and distribute psilocybin without any regulation and oversight, law enforcement is caught in an impossible position. How would law enforcement know who sincerely belongs to Singularism? How would law enforcement know if a drug trafficker and dealer is only selling "sacrament?" How would law enforcement verify without seizure which drugs, doses, and purities are at issue?

This case is not like *Gonzales v. O Centro Espirita Beneficient Uniao do Vegetal*, 546 U.S. 418 (2006). "As courts have repeatedly emphasized, cannabis differs critically from peyote and hoasca precisely because there is a thriving market for diverted cannabis, whereas there is no comparable demand for recreational peyote and hoasca." *U.S. v. Christie*, 825 F.3d 1048, 1059 (9th Cir. 2016) (collecting cases); *Olsen v. DEA,* 878 F.2d 1458, 1464 (D.C. Cir. 1989) (R. Ginsburg, J.) ("[W]e rest our decision [no exemption] on the immensity of the marijuana control problem . . . ."); *see also O Centro Espirita Beneficiente Unaio Do Vegetal v. Ashcroft*, 389 F.3d 973, 1023 (10th Cir. 2004) (en banc) (McConnell, J. concurring) (recognizing "claimant's rights under RFRA could turn on whether the adherent has a religious affinity for street drugs or more esoteric ones"). Psilocybin mushrooms land far closer to marijuana than peyote or hoasca in this analysis. Indeed, in 2024, the

---

[3] Releases from the U.S. Department of Justice can be found at https://www.justice.gov/usao/pressreleases.

National Institute on Drug Abuse reported that "seizures of 'magic mushrooms'" had "increased dramatically in the United States." *See* NIH, *Law enforcement seizures of psilocybin mushrooms rose dramatically between 2017-2022* (Feb. 6, 2024).[4] Both the number of seizures and the total weight seized increased more than three-fold in the five years of the study. *Id.* Likewise, the 2023 National Survey on Drug Use indicates that "Psilocybin/Mushrooms" is **the most** used "Hallucinogen[]," beating out "LSD," "Ecstasy," and "PCP."[5] In contrast, Peyote is among the least used, and hoasca use is not even registered. In both 2022 and 2023, more minors ("Aged 12-17") used "Psilocybin/Mushrooms" than any other hallucinogen. Indeed, minors were more than 1,300% more likely to have used "Psilocybin/Mushrooms" than peyote – again confirming the vastly different black markets for these two drugs. Likewise, lifetime usage (age 12 or older) of "Psilocybin/Mushrooms" was three times higher than crack, five times higher than heroin, and two times higher than methamphetamine. *Cf. O Centro*, 389 F.3d at 1023 (McConnell, J. concurring) (recognizing legal distinction despite "same religious interest in shooting heroin as in drinking hoasca"). "[T]he extent of nonreligious use is relevant to the analysis," *id.*, and psilocybin is not the same as peyote or hoasca. At minimum, Plaintiffs' black-market purchases of psilocybin mushrooms support a dangerous yet thriving black market. Their requested relief would dramatically impede the State's efforts to stamp out that market.

Additionally, when the use and distribution of drugs is allowed to fall outside the closed system of regulation permitted under the Utah CSA, there are related compelling concerns about use and distribution of psilocybin. There are concerns about how the psilocybin is being stored, protected, and accounted for to ensure its use is only for sacramental purposes, and not recreational use or illegal

---

[4] https://nida.nih.gov/news-events/news-releases/2024/02/law-enforcement-seizures-of-psilocybin-mushrooms-rose-dramatically-between-2017-2022
[5] *See* https://www.samhsa.gov/data/report/2023-nsduh-detailed-tables at Table 1.108B.

distribution. Existing evidence confirms these concerns – not only in general but specifically as to Plaintiffs. Jensen testified that "less than a hundred" people have "participate[d] in a ceremony." [TRO Tran. at 150]. Voyagers generally participate in "no less than two and – no more than four" ceremonies. [*Id.* at 77]. Doses range from 2 grams [*id.* at 99] to 3.5 grams [*id.* at 102]. For simple math purposes, if 100 members used an average of 3 grams an average of 3 times, that would equal 300 total doses or 900 total grams of mushrooms. And that's the total across the approximately 15 months since Singularism was formed. [*See id.* at 193 ("fall of 2023")]. In contrast, **one** search returned more half of all the psilocybin Singularism has ever needed – over 459 grams (approximately 153 doses). [Search Warrant Return (Dkt. 13-15)]. Despite being permitted no discovery and limited questions at the TRO, the State further established the 459 seized grams are in addition to regular deliveries from "Inca" that occur as often as "once a month." [TRO Tran. at 74].[6] Likewise, Jensen further testified that the seizure of 150 doses was "not the end of the world" – indicating a ready source for a copious amount of psilocybin. [*Id.* at 167]. The record further confirms that Jensen has used and distributed psilocybin unconnected from Singularism. [*See id.* at 189 (administering in 2016-2020); *id.* at 190 (charging customers "[s]ince 2020"); *id.* at 220 ("voyaged with Brandi . . . before Singularism was open")].

Similarly, there is a compelling interest to ensure the psilocybin being consumed is not contaminated. Notwithstanding Utah's loosening of regulations concerning psilocybin for behavioral

---

[6] The Court previously questioned why Defendants sought such information as the "name, location, and phone number of the person supplying Singularism with psilocybin mushrooms." [*See, e.g.*, Dkt. at 56 n.4]. Confirming the frequency of shipments, the total amount of mushrooms purchased, and the source of the materials is directly relevant to ***this*** case. For illustration purposes, it certainly would relevant to this case if "Inca" confirmed that Singularism purchased 10 kilograms of mushrooms last month alone. Or it would be relevant to this case if "Inca" is the kingpin for a dangerous drug cartel. Despite being prevented from fully questioning Plaintiffs' witnesses or conducting any discovery about the source, frequency, and volume of their drug purchases, the existing evidence nevertheless reveals the very substantial risk that even if Plaintiffs' alleged beliefs are sincere, they nonetheless support the recreational drug market and risk recreational diversion.

health treatment, the use and distribution of psilocybin is still closed except for behavioral health treatment that is conducted by a healthcare system. Utah Code § 58-37-3.5. This use and distribution of psilocybin, like the prescription of other controlled substances, remains highly controlled by the State.

The effectiveness of the closed system is undercut by exemptions that permit use and distribution of Schedule I drugs outside the limited clinical studies and behavioral treatment programs authorized under the CSA and Utah CSA. Defendants have a compelling government interest to enforce the enacted comprehensive controlled substance laws with a "closed system of drug distribution" in order to avert the significant dangers associated with Schedule I drugs and to combat the growing and intractable problems of drug abuse and drug trafficking.

**POINT II: UTAH'S CLOSED SYSTEM OF REGULATING PSILOCYBIN IS THE LEAST RESTRICTIVE MEANS TO ACHIEVE ITS COMPELLING INTERESTS.**

In light of Defendants' vital governmental interest in public health and safety served by both the CSA and Utah's CSA, and the well-established findings by both federal and state legislation concerning the inherent risks of Schedule I drugs, the comprehensive and closed regulatory scheme under Utah's CSA also satisfies the least restrictive means analysis.

Plaintiffs have also failed to suggest an alternative scheme or regulation that may be less restrictive. Defendants cannot be expected to take on the Herculean burden of assessing every conceivable option. "The government should not be required to 'refute every conceivable option in order to satisfy the least restrictive prong of RFRA.'" *United States v. Wilgus*, 638 F.3d 1274, 1289 (10th Cir. 2011) (citations omitted). Rather, Defendants' "burden is two-fold: it must support its choice of regulation, and it must refute the alternative schemes offered by the challenger[.]" *Id.*; *accord United States v. Grady*, 18 F.4th 1275, 1286 (11th Cir. 2021) ("[G]overnment must refute the alterative schemes offered by the challenger."). Defendants cannot refute alternative schemes that

9

Plaintiffs have failed to offer.

Notwithstanding Plaintiffs' citation to a settlement agreement between the federal Drug Enforcement Agency ("DEA") and the Church of the Eagle and Condor ("CEC") [*see* Pls' Motion at 26, and Exhibit N], Plaintiffs' argument and position seem to be that no regulation or oversight of their use and distribution of psilocybin should be permitted. In the CEC case, the settlement agreement permitted CEC to import, use, and distribute ayahuasca tea for religious purposes, but also included strict requirements including, but not limited to, registration by CEC with the DEA, inspection of CEC by the DEA, permits by the DEA to import ayahuasca, record keeping by CEC of its inventory, security obligations by CEC to guard against theft and diversion of the ayahuasca, and even limitations on the agreement's duration. *See id*. Plaintiffs have not offered a similar approach in this case.

Plaintiffs previously have argued that this case is similar to *O Centro*, 546 U.S. 418, and that Court's least restrictive analysis controls. As noted above, psilocybin and hoasca are not the same. Plaintiffs "cannot simply point to the other groups who have won accommodations for the sacramental use of peyote and hoasca and say 'we'll have what they're having' because the government has shown material differences . . . ." *Christie*, 825 F.3d at 1061.

In any event, the Utah CSA is materially different than the federal CSA. Utah's statutory framework must be analyzed and given meaning, particularly where it departs from the federal CSA. Unlike the federal CSA, Utah law does not flatly remove Schedule I drugs for religious uses. Instead, the Utah CSA expressly allows the State of Utah to proceed with enforcement actions. It then places the burden of defense on the user's shoulders.

| Federal CSA | Utah CSA |
|---|---|
| "[T]he use, possession, or transportation of **peyote by an Indian** for bona fide traditional ceremonial purposes in connection with the practice of a traditional Indian religion **is lawful** . . . ."<br>42 U.S.C. § 1996a.<br><br>"The listing of peyote as a controlled substance in **Schedule I does not apply to** the nondrug use of **peyote in bona fide religious ceremonies** of the Native American Church . . . ."<br>21 C.F.R. § 1307.31. | "In a prosecution alleging violation of this section regarding **peyote** as defined in Section 58-37-4, it ***is an affirmative defense*** that the peyote was used, possessed, or transported by an Indian for bona fide traditional ceremonial purposes in connection with the practice of a traditional Indian religion."<br>Utah Code § 58-37-8.<br><br>"***It is not necessary for the state to negate any exemption or exception*** set forth in this act in any complaint, information, indictment or other pleading or trial, hearing, or other proceeding under this act, and ***the burden of proof*** of any exemption or exception ***is upon the person claiming its benefit.***"<br>Utah Code §58-37-15. |

Utah Code further declares that ***"[n]o liability shall be imposed*** upon any duly authorized state or federal officer engaged in the enforcement of this act." Utah Code § 58-37-15(3) (emphasis added).

The plaintiffs in *O Centro* successfully established parity between peyote and hoasca under the federal CSA. In contrast, Plaintiffs are not seeking parity with peyote under the Utah CSA. Instead, they demand relief that substantially ***exceeds*** the existing provisions of the Utah CSA. Unlike the plaintiffs in *O Centro*, Plaintiffs cannot identify another religion that has received the relief they seek – a wholesale exception from police interaction or criminal prosecution under the Utah CSA. Indeed, the Utah CSA affirms that even medical researchers (among others) only receive an affirmative defense under the Utah CSA:

- "It is an affirmative defense . . . if the person was [] engaged in medical research . . . ." Utah Code § 58-37-8.

- "It is an affirmative defense" when user reports another's "overdose event." *Id.*

- "It is a defense to a prosecution . . . that the person being prosecuted produces in court a valid prescription . . . ." *Id.* § 58-37-7.

11

Unlike the federal CSA, the Utah CSA ensures and allows the enforcement of the drug laws by allowing officers and prosecutors to uniformly enforce Utah's drug laws – without threat of civil claims. Officers (including defendants) do not have to first "negate any exemption or exception." *Id.* § 58-37-15. Instead, a user (like plaintiffs) must establish a defense if enforcement proceedings occur. Plaintiffs' demand for more is unprecedent in Utah law.

In sum, the compelling public health and safety interests advanced by the Utah CSA, the necessity of a comprehensive and closed regulatory scheme to control drug distribution, the complex and intractable character of drug abuse and drug trafficking problem, and the infeasibility of understanding the scope of Plaintiffs' intended use, possession, and distribution of psilocybin for religious purposes, all establish that Defendants have a compelling interest in prohibiting Plaintiffs' use of psilocybin, which cannot be served by any less restrictive means. The criminal process that began with the search warrant should move forward. At most, Plaintiffs should be allowed to assert an affirmative defense in that criminal process – just like a user relying on "a valid prescription," "medical research," or "traditional Indian religion." Utah Code §§ 58-37-7, -8.

## **CONCLUSION**

Because Defendants have a clear compelling government interest in enforcing the controlled substance laws, and the comprehensive and closed system of regulating the use and distribution of psilocybin is least restrictive means to accomplish those compelling interests, this Court should deny Plaintiffs' motion for a preliminary injunction and motion for anti-suit injunction.

Dated this 21ˢᵗ day of January, 2025

                        JAMES DODGE RUSSELL & STEPHENS, P.C.

                        */s/ Mitchell A. Stephens*
                        Mitchell A. Stephens
                        Justin L. James
                        Dillon P. Olson

                        *Counsel for Utah County and Jeffrey Gray*


                        PROVO CITY LEGAL

                        */s/Richard A. Roberts*
                        Gary D. Millward
                        Richard A. Roberts

                        *Counsel for Provo City, Troy Beebe, Brian Wolken, and Jackson Julian*