J. Brian Jones (11816)
Gary D. Millward (12170)
Richard A. Roberts (12217)
PROVO CITY ATTORNEY'S OFFICE
445 W Center St.
Provo, Utah 84601
(801) 852-6140
gmillward@provo.gov
rroberts@provo.gov

*Attorneys for Defendants Provo City, Troy Beebe, Brian Wolken, and Jackson Julian*

Mitchell A. Stephens (11775)
Justin L. James (15167)
Dillon P. Olson (16120)
JAMES DODGE RUSSEL & STEPHENS, P.C.
10 West Broadway, Ste. 400
Salt Lake City, Utah 84101
mstephens@jdrslaw.com
jjames@jdrslaw.com
dolson@jdrslaw.com

*Attorneys for Defendants Utah County and Jeffrey Gray*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BRIDGER LEE JENSEN, an individual; SINGULARISM, a non-profit corporation; PSYCHE HEALING AND BRIDGING, LLC dba PSYCHEDELIC THERAPY JOURNEY, a limited liability company;<br><br>    Plaintiffs,<br><br>v.<br><br>UTAH COUNTY, a political subdivision; PROVO CITY, a political subdivision; JEFFREY GRAY, an individual; TROY BEEBE, an individual; BRIAN WOLKEN, an individual; JACKSON JULIAN, an individual; JOHN DOES 1-4, individuals;<br><br>    Defendants. | **REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**<br><br>Civil Case No. 2:24-cv-00887-JNP-CMR<br><br>Judge Jill N. Parrish<br><br>Magistrate Judge Cecilia M. Romero |

1

Pursuant to Rules 7 and 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Utah County (the "County"), Jeffrey Gray ("Gray") (collectively "Utah County") and Provo City (the "City"), Troy Beebe ("Beebe"), Brian Wolken ("Wolken"), and Jackson Julian ("Julian") (collectively "Provo"), submit this reply memorandum in support of their motion to dismiss the claims filed by Plaintiffs Bridger Lee Jensen ("Jensen"), Singularism ("Singularism"), and Psyche Healing and Bridging, LLC ("Psyche Healing") (collectively "Plaintiffs").

## INTRODUCTION

Plaintiffs are wrong; Defendants want this Court to address the federal law questions. Those are the issues over which it has original jurisdiction. And those issues can and should be decided now in Defendants' favor. Once the federal claims are dismissed, the remaining state law claims present novel and unique legal questions. Thus, while Defendants contend that Plaintiffs' state claims also fail on the merits, Defendants recognize that the Court should dismiss them for jurisdictional reasons.

This Court has recognized that "[b]oth the United States Supreme Court and the Tenth Circuit have encouraged district courts to dismiss (or remand) supplemental state claims when the claim or claims that initially gave rise to federal court jurisdiction have been dismissed before trial." *See Aus v. Salt Lake Cnty.*, No. 2:16-CV-00266-JNP, 2021 WL 4991404, at *2 (D. Utah Oct. 27, 2021) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) and *Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1238 (10th Cir. 2020)). Thus, the primary issue before the Court is not whether Utah's newly enacted RFRA empowers Plaintiffs to use and distribute a Schedule 1 controlled substance, but whether Defendants violated Plaintiffs' constitutional rights. As set forth below, Defendants have not.

Plaintiffs' federal claims should be dismissed. With those federal claims dismissed, "[n]otions of comity and federalism demand that a state court try its own lawsuits," and the remaining claims should be remanded to (and then dismissed by) the state court. *See Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995).

**ARGUMENT**

**I.     PLAINTIFFS' FIRST CAUSE OF ACTION SHOULD BE DISMISSED BECAUSE PLAINTIFFS CANNOT ESTABLISH A FIRST AMENDMENT VIOLATION.**

At its core, "the Free Exercise Clause . . . 'protects religious observers against unequal treatment' and against 'laws that impose special disabilities on the basis of religious status.'" *Espinoza v. Mont. Dep't of Revenue*, 591 U.S. 464, 475 (2020) (quoting *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 461 (2017)).

Plaintiffs' Opposition argues that because the Utah legislature recently enacted the Utah Psilocybin Act, the Utah CSA is suddenly subject to strict scrutiny because it prohibits religious use while permitting secular conduct. [Opp. At 8]. But Plaintiffs' misconstrue what it means to "permit secular conduct" while limiting similar religious conduct.

Contrary to Plaintiffs' overly simple construction, laws that universally prohibit use of controlled substances for non-medicinal reasons repeatedly have been deemed neutral and generally applicable. Indeed, the interplay between the Utah CSA and the newly enacted Utah Psilocybin Act is not new or unique in the context of Free Exercise cases. Limited "secular use"—as Plaintiffs describe the Utah Psilocybin Act—was available in *Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872 (1990) when the Supreme Court denied the respondents attempt to use the Free Exercise Clause to avoid Oregon laws prohibiting the use of peyote. There, "Oregon law prohibit[ed] the knowing or intentional possession of a 'controlled substance' ***unless the***

3

***substance ha[d] been prescribed by a medical practitioner.*** " *Id.* at 874 (citing Ore.Rev.Stat. § 475.992(4) (1987)) (emphasis added). Despite Oregon's laws allowing a "secular" exception to its prohibition against controlled substances, the Supreme Court repeatedly acknowledged that Oregon's drug law was neutral and generally applicable.

Indeed, Justice Blackmun's dissent in *Smith* made arguments identical to Singularism's current arguments. Justice Blackmun recognized that even "Schedule I drugs have lawful"—or secular "uses" such as "medical and research uses of marijuana." *Id.* at 1619 (Blackmun, J. dissenting). His dissent then argued that the respondents "internal restrictions on, and supervision of, its members' use of peyote [similarly] obviated the State's health and safety concerns." *Id.* at 1619 (Blackmun, J., dissenting).[1] However, Justice Blackmun was outvoted by the majority of the Court, which found no religious exemption under the First Amendment for peyote use despite the law's allowance for medical uses.

Like the drug laws at issue in *Smith,* the Federal CSA, and other state CSAs, the Utah CSA

---

[1] Notably, Justice Blackmun's dissent also relied on the significant difference between peyote and more mainstream drugs. He argued that "[p]eyote simply is not a popular drug; its distribution for use in religious rituals has nothing to do with the vast and violent traffic in illegal narcotics that plagues this country." *Id.* at 1620. However, psilocybin very much is part of the "vast and violent traffic" of illegal drugs. *Id.* In 2024, the National Institute on Drug Abuse reported that "seizures of 'magic mushrooms'" had "increased dramatically in the United States." *See* NIH, *Law Enforcement Seizures of Psilocybin Mushrooms Rose Dramatically Between 2017-2022* (Feb. 6, 2024). The 2023 National Survey on Drug Use indicates that "Psilocybin/Mushrooms" is the most used "Hallucinogen[]," beating out "LSD," "Ecstasy," and "PCP." In contrast, Peyote is among the least used. In both 2022 and 2023, more minors ("Aged 12-17") used "Psilocybin/Mushrooms" than any other hallucinogen. Indeed, minors were more than 1,300% more likely to have used "Psilocybin/Mushrooms" than peyote – again confirming the vastly different black markets for these two drugs. Likewise, lifetime usage (age 12 or older) of "Psilocybin/Mushrooms" was three times higher than crack, five times higher than heroin, and two times higher than methamphetamine. *See* https://www.cdc.gov/nchs/hus/sources-definitions/nsduh.htm In other words, even Justice Blackmun's dissent in *Smith* would not save Plaintiffs' First Amendment claim.

is generally applicable despite anticipating certain medical uses. The law applies equally to all, "regardless of their religious beliefs or affiliations." *Id*. at 1225. Furthermore, medical exemptions have always existed in the Utah CSA and federal CSA. Indeed, that is the reason why pharmacies and medical prescriptions exist. *See, e.g.*, Utah Code § 58-37-8. A system that uniformly allows for medical oversight of controlled substances does not violate the First Amendment. *See, e.g.*, *Smith*, 494 U.S. at 874 (affirming prohibition of peyote "unless the substance has been prescribed by a medical practitioner"); *Olsen v. Mukasey*, 541 F.3d 827, 832 (8th Cir. 2008) (rejecting argument that CSA was "not generally applicable" because it allows "certain research and medical uses of marijuana"); *Michigan Cath. Conf. & Cath. Fam. Servs. v. Burwell*, 755 F.3d 372, 394 (6th Cir. 2014) ("A law need not apply to every person or business in America to be generally applicable. A law is generally applicable if it does not make distinctions based on religion.").

As previously argued, Courts repeatedly have ruled that general prohibitions against controlled substances are neutral and generally applicable despite having exemptions. *See, e.g.*, *Smith*, 494 U.S. at 875; *Multi-Denominational Ministry of Cannabis and Rastafari, Inc. v. Holder*, 365 F. App'x 817, 819 (9th Cir. 2010) ("Because drug laws are both neutral and generally applicable, they may be enforced even if doing so substantially burdens one's religion." (cleaned up)); *Peyote Way Church of God v. Thornburgh*, 922 F.2d 1210, 1213 (5th Cir. 1991) (ruling drug law "does not offend the First Amendment's free exercise clause"); *Olsen v. Drug Enforcement Agency*, 878 F.2d 1458, 1461 (D.C. Cir. 1989) (J. Bader Ginsburg) ("[F]ree exercise clause does not compel DEA to grant [plaintiff] an exemption immunizing his church from prosecution for illegal use of marijuana."); *United States v. Greene*, 892 F.2d 453, 456-57 (6th Cir. 1989) ("Congress may control the use of drugs that it determines to be dangerous, even if those drugs are

used for religious purposes.").

Plaintiffs do not cite a single case where a court has held that a CSA is subject to strict scrutiny because it is not generally applicable or neutral. Simply put, like the respondents in *Smith,* Plaintiffs "urge [this Court] to hold, quite simply, that when otherwise prohibitable conduct is accompanied by religious convictions, not only the convictions but the conduct itself must be free from governmental regulation." *Id.* at 882. The Supreme Court has "[]ever held that," and this Court should "decline to do so now." *Id.*

## II. PLAINTIFF'S FOURTH CLAIM FOR UNREAONSBLE SEARCH AND SEIZURE SHOULD BE DISMISSED.

Plaintiffs' only other federal claim is ther Fourth Claim based on the protections offered by the Fourth Amendment of the United States Constitution. [*See* Complaint (Dkt. 2-2) ¶¶ 105-113]. It too fails as a matter of law.

The only "searches and seizures" that Plaintiffs allege occurred on November 11, 2024, when "Detective Julian…presented at Singularism's spiritual center with a warrant to search the premises and seize certain items." [Complaint (Dkt. 2-2) at ¶ 33]. Plaintiffs' claim for unreasonable search and seizure must be dismissed because the searches and seizures were done pursuant to a search warrant issued by the Fourth District Court, State of Utah. [*See, e.g.*, Complaint (Dkt. 2-2) at ¶ 2 (recognizing and attaching search warrant); Dkt. 13-14 (warrant)].

This is an issue of judicial immunity. It is not, as plaintiffs argue, a question of prosecutorial or police immunity. [*See* Opposition at 20-24 (arguing that there is no absolute immunity for prosecutors or police officers)]. Put simply, if Judge Petersen and the Fourth District Court are not liable for issuing the search warrant, Defendants cannot be held liable for following that Order. *See* Utah R. Crim. P. 40(a)(3) ("'Search warrant' is an order . . . .").

"A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." *Stump v. Sparkman*, 435 U.S. 349, 359 (1978). It follows that there is "absolute immunity for officials assigned to carry out a judge's orders." *Moss v. Kopp*, 559 F.3d 1155, 1163 (10th Cir. 2009). "Just as judges acting in their judicial capacity are absolutely immune from liability under section 1983, officials charged with the duty of executing a facially valid court order enjoy absolute immunity from liability for damages in a suit challenging conduct prescribed by that order." *Turney v. O'Toole,* 898 F.2d 1470, 1472 (10th Cir. 1990) (cleaned up); *accord Welch v. Saunders*, 720 Fed. Appx. 476, 480-81 (10th Cir. 2017) (same); *Martinez v. Gonzales*, 623 Fed. Appx. 940, 941 (10th Cir. 2015) (same); *Hackett v. Artesia Police Dept.*, 379 Fed. Appx. 789, 793 (10th Cir. 2010) (applying same). To rule otherwise would require those officials charged with the duty of executing a court's order to second guess the judge's decision. "State officials 'must not be required to act as pseudo-appellate courts scrutinizing the orders of judges . . . ." *Turney*, 898 F.3d at 1472.

Plaintiffs' opposition ignores judicial and quasi-judicial immunity and instead argues a strawman. Plaintiffs contend that "police officers do not generally have absolute immunity" and neither do prosecutors. [Opp. At 20-23]. But that is not the issue. The issue is a search warrant issued by the Fourth District Court. And because Judge Petersen cannot be held liable for his order, Defendants cannot be held liable for their compliance with Judge Petersen's order.

Plaintiffs' claim also cannot be saved by arguing actions "prior to the execution of the search warrant" or "unrelated to the search warrant" because there were not any other searches or seizures. *See generally Soldal v. Cook Cnty.*, 506 U.S. 56, 61 (1992) ("A 'seizure' of property . . . occurs when 'there is some meaningful interference with an individual's possessory interests in

that property.'"). For example, Plaintiffs suggest that it was wrong for Defendants to notify Singularism's landlord of the criminal investigation. But regardless of the propriety of the Defendants' pressure, the landlord did not evict Singularism or interfere with its possession of the property. In other words, there was no search or seizure from allegedly pressuring the landlord. Without a search or seizure there can be no Fourth Amendment violation.

The Fourth Amendment protects against unreasonable searches and seizures. It does not protect against disparaging statements to landlords or the public. Because the only search and seizure occurred pursuant to a search warrant issued by the Utah Fourth District Court, Plaintiffs' Fourth Amendment claim fails and must be dismissed.

### III. THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' STATE LAW CLAIMS.

Plaintiffs' remaining claims do not present a federal question but, instead, rely on Utah law. Defendants' Motion argued that "[b]ecause Plaintiffs second, third, and fifth claims are premised in state law, and there is no diversity jurisdiction issue, this Court should decline to exercise supplemental jurisdiction once the federal claims have been dismissed." [Motion at 12]. Plaintiffs responded by arguing the case should not be bifurcated. Even if the Court accepted that argument, it misses the point. Recognizing the impact of dismissing the federal claims is not a discretionary bifurcation. It is a necessary jurisdictional analysis.

The Tenth Circuit has been clear on what should be done when the federal claims are dismissed before trial. "Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). And that makes sense here.

"Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995). Plaintiffs have not provided the Court with any compelling reason to exercise supplemental jurisdiction other than an "alleged factual overlap between the federal and state constitutional and statutory claims." [Opp. At 6]. However, with the federal claims dismissed, Plaintiffs' only stated reason for retaining jurisdiction over the state law claims is negated. Indeed, even without dismissal the Court should decline to exercise jurisdiction over novel questions of Utah law.

**IV. EVEN IF THE COURT EXERCISES SUPPLEMENTAL JURISDICTION, PLAINTIFFS ARE NOT ENTITLED TO RELIEF ON THEIR STATE CLAIMS.**

Even if the Court were to exercise supplemental jurisdiction over the state law claims, those claims still should be dismissed or significantly narrowed.

    A.    <u>Plaintiffs' Claim Under the Utah Constitution's Religious Liberty Section Fails Because the Utah Constitution Does Not Legalize Hallucinogenic Drugs.</u>

In their Motion, Defendants argued that Plaintiffs' claims under Utah's Constitution fail because Utah's CSA is neutral and generally applicable. [Motion at 15-17]. Plaintiffs oppose dismissal of their state constitutional claims by arguing only that Article I, section 4 of the Utah Constitution requires strict scrutiny. [Opp. at 12]. Plaintiffs have not otherwise challenged the neutrality or general applicability of Utah's CSA. Thus, if Plaintiffs' argument that strict scrutiny applies is wrong, their claim under the Utah Constitution must be dismissed. As set forth below, strict scrutiny does not apply.

Plaintiffs first rely on *Jeffs v. Stubbs,* 970 P.2d 1234 (Utah 1998) to support their argument that, unlike the US Constitution that only requires neutrality, strict scrutiny applies to the Utah's Free Exercise clause. However, the *Jeffs* Court expressly recognized that the Utah Supreme Court

9

had "never determined whether the free exercise clause of article I, section 4 of the Utah Constitution provides protection over and above that provided by the First Amendment of the United States Constitution[,] *[a]nd we do not decide that question today[.]*" *Id.* at 1249 (emphasis added). At most, *Jeffs* identifies an unresolved issue of Utah law. While the Court should consider *Jeffs* when analyzing supplemental jurisdiction, that case does not save Plaintiffs' claim from dismissal.

Next, Plaintiffs rely on *State v. Green,* 2004 UT 76, 99 P.3d 820. However, the Utah Supreme Court's opinion in *Green* did not address Utah's constitution at all. Rather, as the court recognized, the plaintiff's "free exercise claim [wa]s based solely on the provision of the United States Constitution" and there was "no claim under the religious liberty provision of the Utah Constitution." *Id.* at ¶ 16, n.7. "Strict scrutiny" was referenced in Justice Durrant's concurrence. In a footnote of that dissent, Justice Durrant expressed that he personally "would apply strict scrutiny not only to free exercise claims under the United States Constitution, but to claims under the Utah Constitution as well." *Id.* ¶ 70 n.1. Again, *Green* should likely give a federal court pause when examining supplemental jurisdiction. But it does not support prevent Plaintiffs' claim from dismissal.

Finally, in *State v. Holm,* 2006 UT 31, 137 P.3d 726, the Supreme Court quoted its *Jeffs* opinion, again noting that the Utah Supreme Court "has never determined whether the free exercise clause of article I, section 4 [and related clauses] of the Utah Constitution provide protection over and above that provided by the First Amendment to the United States Constitution" and "need not address that questions here." *Id.* at ¶ 35. One dissenting opinion mentioned strict scrutiny, but even that analysis was not necessary for that minority view. *See id.* at ¶ 166 (Durahm, J.,

10

concurring & dissenting) (arguing act was unconstitutional regardless of "whether typical strict scrutiny is applied").

In other words, despite Plaintiffs' claiming that the Utah Supreme Court has mandated a different, more stringent standard than what applies under the United States Constitution, all of the authority Plaintiffs rely on for support expressly reject such an interpretation.

Thus, in order to reach the conclusion that Plaintiffs request, the Court would yet again need to plow new legal ground. This Court would need to rule that the Free Exercise clause under the Utah State Constitution affords protections greater than those offered by the First Amendment of the United States. The Utah Supreme Court has yet to go that far, and this Court should decline the invitation to do so now.

### B.  Plaintiffs cannot Seek Damages Under the Utah RFRA

Plaintiffs' claim for damages under the Utah RFRA must be dismissed because that act does not allow for "damages" as a remedy. Predictably, Plaintiffs cite *Tanzin v. Tanvir,* 592 U.S. 43 (2020) to support their argument that they are entitled to monetary damages. And there can be no dispute that Utah's RFRA was modeled, in part, after the Federal RFRA. But that fact does not weaken Defendants arguments. Rather it strengthens it. Because, while the Utah RFRA was enacted with the federal RFRA in mind, as it relates to remedies, it did not copy exactly the Federal RFRA's language. [Motion at 18].

The omission of damages as an available remedy is not a mere oversight; it must be presumed to be purposeful. *See 2 Ton Plumbing, L.L.C. v. Thorgaard*, 2015 UT 29, ¶ 47 ("When faced with a question of statutory interpretation, our general rule is that we will 'give effect to omissions in statutory language' by presuming them to be purposeful."). Oddly, while Plaintiffs

acknowledge that the decision in *Tanzin* hinged on the word "appropriate," Plaintiffs strain to interpret Utah's RFRA's omission of "appropriate" as the Legislature's attempt to clearly establish the right to damages. But nothing in *Tanzin* suggests that "appropriate" was used to constrict the interpretation of "relief." Rather, "appropriate" was used as an expansion of "relief." *Id.*

Moreover, any ambiguity between "appropriate relief" and "relief" is relieved by looking to when a person can seek relief. Under the Federal RFRA, "appropriate relief" is available to anyone whose religious exercise "has been burdened." Thus, as the United States Supreme Court acknowledge, when a religious exercise *has been* burdened, but is no longer being burdened, as was the case in *Tanzin,* damages may be "the only form of relief." *Id.* at 492. Conversely, Utah's RFRA only applies when a person's free exercise "*is*" burdened. Utah Code § 63-33-201. Plaintiffs' opposition is silent on the "has been" verses "is" distinction. This additional distinction between the Utah RFRA and the Federal RFRA makes clear that Utah's RFRA does not allow for damages. Indeed, the Utah legislature changed every term that the *Tanzin* court relied upon to reach its conclusion that damages were available under the Federal RFRA.

Additionally, the Supreme Court in *Tanzin* recognized that the federal RFRA did not waive sovereign immunity for claims against state actors. *Id.* ("[T]his case features a suit against individuals who do not enjoy sovereign immunity."). Likewise, the Utah RFRA does not waive immunity. "A statute does not waive sovereign immunity . . . unless that disposition is unequivocally clear." *See* Scalia & Garner, *Reading Law: The Interpretation of Legal Texts*, 281 (2012). The Utah RFRA does not unequivocally waive immunity and allow for monetary damages awards against government entities. To the contrary, such immunity is expressly retained: "A governmental entity, its officers, and its employees are immune from suit and immunity is not

12

waived, for any injury proximately caused by a negligent act or omission…if the injury arises out of or in connection with or results from…a violation of civil rights." Utah Code § 63G-7-201(4). Likewise, the Utah CSA also retains immunity. *See* Utah Code § 58-37-15(3) ("No liability shall be imposed upon any duly authorized state or federal officer engaged in enforcement of this act[.]"). Plaintiffs' contrary arguments would contradict two express provisions of the Utah Code. *See In re E.H.,* 880 P.2d 11, 13 (Utah Ct. App. 1994) ("Utah courts have a duty to interpret statutes so that they will not be rendered meaningless.").

Plaintiffs make no argument regarding immunity from damages in their opposition. But this issue, standing alone, is fatal to Plaintiffs' claim for damages under Utah's RFRA. Even assuming the Court rejects the difference in the wording of the Utah RFRA, immunity still prevents Plaintiffs from seeking damages. For this additional reason, Plaintiffs' Utah RFRA claim should be dismissed to the extent it seeks damages.

### C. Defendants Are Entitled To Immunity From Plaintiffs' Fifth Claim Alleging Violations Under the Utah Constitution's Protection from Unreasonable Searches.

Plaintiffs offer a single paragraph in opposition to Defendants' Motion as it relates to Plaintiffs' Fifth Claim. Plaintiffs' sole argument is that the UGIA does not apply to state constitutional violations. Again, Plaintiffs miss the point. Plaintiffs have not distinguished their unlawful search and seizure claim under the Fourth Amendment of the United States Constitution from their claim under Utah's Constitution. And because they have not distinguished their claim, the analysis is the same. As argued above, Defendants are entitled to absolute immunity because the search and seizures were performed pursuant to a court order. That same immunity applies to protect Defendants from the State constitutional claim. Accordingly, Plaintiffs' Fifth Claim should be dismissed.

### V. PLAINTIFFS MUST POST A BOND IF THE COURT DOES NOT GRANT THE MOTION TO DISMISS.

If the Court denies Defendants' Motion to Dismiss and permits Plaintiffs to continue any claims against the individual law enforcement officers, Plaintiffs must post a bond. Utah Code section 78B-3-104(1) unambiguously declares as follows: "A person may not file an action against a law enforcement officer acting within the scope of the officer's official duties unless the person has posted a bond in an amount determined by the court." The amount of the bond is intended to cover "all estimated costs and attorney fees the officer may be expected to incur in defending the action." *Id*. at 104(2).

Utah law obligates Plaintiffs to establish and pay a bond at the time they name the individual officers. *See* Utah Code § 78B-3-104(1); *Mglej v. Garfield City*, 2014 WL 2967605 at *2 (D. Utah July 1, 2014) ("Utah case law is clear that undertakings and bonds must be filed contemporaneously with the filing of the complaint."). Accordingly, this Court should require Plaintiffs to post a bond that will cover the expected costs and attorney fees to be incurred in defending against these claims.

### **CONCLUSION**

Because Defendants have not violated Plaintiffs' federal rights, Plaintiffs' federal claims should be dismissed. With the claims which gave rise to jurisdiction dismissed, the Court should dismiss without prejudice the remaining state law claims so that Utah Courts can address the novel and unique state law questions.

Dated this 22nd Day of January, 2025.

> JAMES DODGE RUSSELL & STEPHENS, P.C.
>
> */s/ Justin L. James*
> Mitchell A. Stephens
> Justin L. James
>
> *Counsel for Utah County and Jeffrey Gray*
>
>
> PROVO CITY LEGAL
>
> */s/ Gary Millward*
> Gary D. Millward
> Richard A. Roberts
>
> *Counsel for Provo City, Troy Beebe, Brian Wolken, and Jackson Julian*