# EXHIBIT B

Tanner J. Bean (A17128)
tbean@fabianvancott.com
Anna P. Christiansen (A17518)
achristiansen@fabianvancott.com
Jacqueline M. Rosen (A18530)
jrosen@fabianvancott.com
FABIAN VANCOTT
95 South State Street, Suite 2300
Salt Lake City, UT 84111-23323
Telephone: (801) 531-8900
*Attorneys for Plaintiffs*

IN THE ~~FOURTH JUDICIAL~~ UNITED STATES DISTRICT COURT

~~UTAH COUNTY, STATE OF~~ FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BRIDGER LEE JENSEN, an individual; SINGULARISM, a non-profit corporation; PSYCHE HEALING AND BRIDGING, LLC dba PSYCHEDELIC THERAPY JOURNEY; a limited liability company;<br><br>                Plaintiffs,<br>vs.<br><br>UTAH COUNTY, a political subdivision, PROVO CITY, a political subdivision; JEFFREY GRAY, an individual; ~~TROY BEEBE, an individual; BRIAN WOLKEN, an individual; JACKSON JULIAN, an individual; JOHN DOES 1-4, individuals;~~<br><br><br>                Defendants. | **FIRST AMENDED** VERIFIED COMPLAINT<br><br>Civil No. 2:24-cv-00887-JNP<br><br>Judge Jill N. Parrish<br><br>(Removed from Fourth Judicial District Court, Utah County, State of Utah, Case No. 240406123) |

Plaintiffs Bridger Lee Jensen, Singularism, and Psyche Healing and Bridging LLC dba Psychedelic Therapy Journey (collectively, "Singularism"), by and through their counsel, hereby complain against Defendants Utah County, Provo City, and Jeffrey Gray ~~, Troy Beebe, Brian Wolken, Jackson Julian, and John Does 1-4~~, as alleged below.

1

## INTRODUCTION

"Respect for religious expressions is indispensable to life in a free and diverse Republic . . ." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 543 (2022). Indeed, "preserving the promise of the free exercise of religion enshrined in our Constitution . . . lies at the heart of our pluralistic society." *Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1754 (2020). "[R]eligious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." *Fulton v. City of Philadelphia, Pennsylvania*, 593 U.S. 522, 532, (2021) (quoting *Thomas v. Review Bd. of Ind. Employment Security Div.*, 450 U.S. 707, 714 (1981)). "A way of life that is odd or even erratic but interferes with no rights or interests of others is not to be condemned because it is different." *Wisconsin v. Yoder*, 406 U.S. 205, 224 (1972).

Bridger Jensen is the sincere founder of a small, entheogenic minority religion known as Singularism. Like many religious organizations, it has both non-profit and for-profit entities. As part of their sincere religious exercise, Plaintiffs utilize sacramental psilocybin tea to access the divine, open spiritual pathways, and alleviate human suffering by weaving together centuries of entheogenic religious practice with what Plaintiffs view as illuminated approaches of modern mental health clinicians.

The sincerity of Plaintiffs' religious conviction is unquestionable. Mr. Jensen gave up a successful career to pursue his higher spiritual calling in Singularism. Since its founding, he, on behalf of Singularism, has publicly and transparently broadcast the faith, indicating Singularism relies upon the protections for free exercise of religion to operate, while knowing that misunderstanding authorities may at any moment prosecute Singularism for its faith. After over a year of Plaintiffs peacefully exercising their religious freedom, providing spiritual care to many

2

without incident and without a single ounce of psilocybin leaving Singularism's spiritual center, that moment has come.

Law enforcement authorities, to whom Mr. Jensen sent a letter explaining Singularism's religious practices at the opening of its religious center ~~over a year ago~~in the fall of 2023, searched Singularism's spiritual center on November 11, 2024, and, among other things, seized the sacramental psilocybin used in Singularism's ceremonies. The next day, law enforcement threatened Singularism's landlord to evict Singularism from its spiritual center. Mr. Jensen now faces ~~impending~~ criminal charges related to psilocybin, and Singularism, a small minority religious group, risks being evicted and otherwise wiped off the map by overzealous authorities. Defendants have knowingly and recklessly proceeded in defiance of the protections afforded to sincere religious believers under the U.S. Constitution, the Utah Constitution, and the Utah Religious Freedom Restoration Act.

The Court should right these wrongs. Plaintiffs request the Court enjoin Defendants from their actions burdening Plaintiffs' sincere religious free exercise, declare Defendants' actions a violation, order the payment of damages for the violation of Plaintiffs' constitutional and statutory rights, and compensate Plaintiffs for the attorney fees and costs required to defend their rights in court, despite clear legal protections for their religious exercise.

## PARTIES

1.      Plaintiff Bridger Lee Jensen is an individual who resides in Provo, Utah.

2.      Plaintiff Singularism is a non-profit organization registered under the laws of the State of Utah located in Provo, Utah.

3.      Plaintiff Psyche Healing and Bridging LLC dba Psychedelic Therapy Journey is a limited liability corporation registered under the laws of the State of Utah located in Provo, Utah.

4.      Defendant Utah County is a political subdivision of the State of Utah. The Utah County Attorney's Office is an agency, program, or arm of Utah County.

5.      Jeffrey Gray is, and has been, the Utah County Attorney since January 2023. Upon information and belief, Jeffrey Gray is a resident of Utah County.

6.      Defendant Provo City is a political subdivision of the State of Utah located in Utah County. The Provo City Police Department is an agency, program, or arm of Provo City. The Provo City Attorney's Office is an agency, program, or arm of Utah County. At all times relevant to this Complaint, the following persons were employed by and acting within the course and scope of their employment with Provo City Police Department:

     a.    Troy Beebe is, and was, at all times relevant to this Complaint, the Chief of the Provo City Police Department. ~~Upon information and belief, Troy Beebe is a resident of Utah County.~~

     b.    Brian Wolken is, and was, at all times relevant to this Complaint, a Captain of the Provo City Police Department. ~~Upon information and belief, Brian Wolken is a resident of Utah County.~~

     c.    Jackson Julian is, and was, at all times relevant to this Complaint, a Detective of the Provo City Police Department. ~~Upon information and belief, Jackson Julian is a resident of Utah County.~~

     d.    Austin Rowberry is, and was, at all times relevant to this Complaint, a Sergeant of the Provo City Police Department.

e.    Liuaki Wolfgramm is, and was, at all times relevant to this Complaint, a Detective
of the Provo City Police Department.

c.f. Cody Graham is, and was, at all times relevant to this Complaint, a Detective of the
Provo City Police Department.

7.    John Does 1-4 are, and were, at all times relevant to this Complaint, Police Officers
of the Provo City Police Department. Upon information and belief, John Does 1-4 are residents of
Utah County.

8.7.    At all times relevant to this Complaint, Defendants Provo City, Utah County, and
Jeffrey Gray, Beebe, Wolken, Julian, and Officers Does 1-4 were acting under color of state law,
as were the law enforcement officers acting under their direction, Chief Beebe, Captain Wolken,
Detective Julian, Sergeant Rowberry, Detective Wolfgramm, and Detective Graham.

**JURISDICTION AND VENUE**

8.    This action was originally filed in the Court for the Fourth Judicial District, Utah
County, State of Utah, on November 19, 2024.

9.    As originally filed, This that Court has had jurisdiction pursuant to Utah Code §
78A-5-102.

10.    As originally filed, Vvenue is was proper in this that Court under Utah Code §§
63G-7-502 and 78B-3a-201, as the causes of action arise and Defendants reside in Utah County,
Utah.

11.    As originally filed, Bbecause this the Complaint seeks recovery of damages in an
amount exceeding $100,000 and non-monetary relief, it is was classified as a Tier 2 action under
Utah Rule of Civil Procedure 26.

5

11.12.  Defendants removed this action pursuant to 28 U.S.C. §1441 *et seq.* to the United States District Court for the District of Utah on November 27, 2024. Defendants stated that they "base[d] their removal on federal question jurisdiction pursuant to U.S.C. §§ 1331, 1441(a), and 1446" and that the "Court has jurisdiction over the remainder of the case because all the claims form part of the same case or controversy. *See* 28 U.S.C. § 1367."

12.13.  Plaintiffs' claims are exempt from the notice-of-claim provisions of the Utah Governmental Immunity Act, according to the terms of that Act and Utah's Religious Freedom Restoration Act and because of the exigent circumstances presented herein. Even so, out of an abundance of caution, Plaintiffs' claims were included and described in a notice of claim served upon Defendants concurrently with the service of this the original Complaint on November 19, 2024.

## **FACTUAL BACKGROUND**

*The Founding and Religious Practices of Singularism*

13.14.  In the fall of 2023, following years of various transcendent and spiritual experiences facilitated through psilocybin, Mr. Jensen determined to share his spiritual enlightenment with the community by founding his own religious organization, Singularism.

14.15.  Although previously licensed as a mental health therapist, Mr. Jensen allowed his license to lapse and discontinued his professional clinical practice, understanding that, as clergy, he would be exempt from licensure requirements under the Utah Mental Health Professional Practice Act, *see* Utah Code § 58-60-107(2)(b), and would transition to becoming a spiritual leader and provide religious mental health therapy.

15.16.  After much effort and coordination, Mr. Jensen was able to found Singularism as a non-profit organization and Psyche Healing and Bridging as a related for-profit corporation, and was able to locate a space to rent as a spiritual center in Provo, Utah.

16.17.  Singularism held a public ribbon-cutting ceremony for its spiritual center in the fall of 2023. It invited many individuals and organizations from all walks of life to attend the ribbon-cutting event, and many individuals attended. During the ribbon-cutting ceremony, individuals shared their profound religious and spiritually healing experiences with psilocybin. Others shared they had felt marginalized according to their unorthodox religious views regarding psilocybin and the spiritual experiences it had opened for them. Others attended merely to learn about Singularism and the potential for religious enlightenment.

17.18.  During the ribbon-cutting ceremony, Mr. Jensen discussed one of Singularism's mantras: that psilocybin permits individuals to directly access the divine and thereby be able to "write your own scripture." It was this mantra that Mr. Jensen invited all in attendance to say as he cut the ceremonial ribbon.

18.19.  Thereafter, individuals socialized, learned more about Singularism's religious beliefs, and were able to tour Singularism's spiritual center.

19.20.  As part of its efforts to become known in the community and prevent authorities' misunderstanding of Singularism, in the fall of 2023, Singularism sent letters to local government leaders and law enforcement, inviting them to come tour Singularism's spiritual center and informing them of Singularism's spiritual practices utilizing psilocybin. For example, letters were sent to the Mayor of Provo City, the Provo City Council, the Provo Police Department, as well as to the Utah County Attorney's Office. Neither None of these offices took advantage of

7

Singularism's invitation to tour its spiritual center. The letters also informed these government offices of Singularism's claims to religious free exercise and raised the constitutional and statutory bases for those claims.

21.   Following Mr. Jensen's invitations to tour Singularism's ~~space~~spiritual center, there was media coverage by FOX 13 News regarding Singularism's religious practices which included ~~a~~ statements from ~~the~~ Provo City and the Utah County Attorney's Office:

a.   A spokesperson for Provo City stated:

Psilocybin is a Schedule I controlled substance and under Utah law, it is illegal to possess or distribute. A recent effort to legalize psilocybin was not approved by the legislature, therefore use and distribution continue to be criminal offenses. We have evaluated recent claims that use is protected under the Religious Freedom Restoration Act and we believe those claims to be without merit. The position of the Provo Police Department is that officers will treat psilocybin as an illegal drug and will arrest or cite users and distributors and refer charges to the Utah County Attorney's Office. We have confirmed with that office that they intend to prosecute violators.

~~a.~~b. The Utah County Attorney's Office stated:

Based upon research conducted by the Utah County Attorney's office, it does not appear that Singularism has Constitutional protections to either use of administer psilocybin.[1]

~~20.~~22. Following the ribbon-cutting event, beginning in September 2023, Singularism began its ceremonial practice of ushering sincere religious believers into transcendent experiences at its spiritual center. As part of doing so, Singularism carefully prepares a diluted, sacramental psilocybin tea, offers it to what it calls its "Voyagers," and supervises the voyager in a private,

[1]   *Psychedelic Mushroom Interest Grows in Utah with Center Opening in Provo*, FOX13 NEWS, updated Nov. 06, 2023, https://www.fox13now.com/news/local-news/psychedelic-mushroom-interest-grows-in-utah-with-center-opening-in-provo.

8

controlled, safe, and comfortable environment within Singularism's spiritual center, following safety guidelines such as those published by Harvard Medical School and Johns Hopkins. Before, during, and after the ceremony, religious guides such as Mr. Jensen attend to the voyager, help guide their spiritual inquiry, and record the voyager's spiritual insights, thereby allowing the individual to write their own scripture.

21.23.  One of Singularism's principal doctrines is that the American cultural line drawn between religion and science is illusory and that the two fields are complementary and interwoven. As such, Singularism takes full advantage, for religious purposes, of the benefits and wisdoms of clinical practices used in mental health therapy. Concurrent to Singularism's religious practices and beliefs, there are active scientific bodies, including those as notable as Harvard Medical School and Johns Hopkins, which have extensively researched and published regarding the positive usages of psilocybin for a variety of physical and mental issues in the secular context.

22.24.  Before administering its ceremonial and sacramental psilocybin to its voyagers, Singularism puts interested individuals through a screening process. During this multi-stage screening process, Singularism evaluates each voyager's physical, mental, and emotional suitability and readiness to participate in a psilocybin ceremony. As part of this multi-stage screening process, Singularism also evaluates the voyager's religious sincerity and prohibits individuals attempting to ingest psilocybin solely for secular or recreational purposes from participating in its ceremonies.

23.25.  In fact, even after deeming an individual religiously sincere, Singularism requires the individual to sign an attestation of their religious sincerity before participating in a psilocybin ceremony. The document including that attestation also requires the voyagers to take or not take

9

certain actions to protect their own physical, mental, emotional, and spiritual well-being following a voyage through a Singularism ceremony. *See* Exhibit A.

24.26.   Singularism turns away individuals that it deems religiously insincere, as well as individuals for which a psilocybin ceremony could potentially be harmful to the individual's physical, mental, emotional, or spiritual well-being.

25.27.   Singularism's voyagers that are sincere and suited for the ceremonies have reported many significant and varied religious experiences during their Singularism ceremonies. As a few examples:

    a.   One voyager described his experience as "profoundly transformative," that he "experienced an overwhelming sense of unity with all things," which was a "deeply religious encounter with the sacredness of existence."

    b.   Another voyager described her experience walking "alongside Jesus," encountering deceased relatives, embracing "Heavenly Mother and Father [and] feeling their unconditional love and reassurance."

    c.   Another voyager described that she "experienced an overwhelming sense of joy, inner peace, and enlightenment," which was "nothing short of transcendent—a deeply spiritual encounter that connected me to something greater than myself."

26.28.   To participate in Singularism's therapeutic religious ceremonies via Singularism's for-profit organization, Psyche Healing and Bridging, individuals pay a fee. The fee is calculated according to the typical time spent in a ceremonial voyage and the amount of ceremonies the voyager intends to participate in, taking into consideration what a comparable secular therapeutic service might entail. In some instances where sincere individuals are seeking this religious

experience, but do not have the financial resources to contribute, Singularism has permitted voyagers to participate in ceremonies at reduced or no cost.

27.29.  Because of Singularism's convictions in the correctness of its doctrines and the spiritual benefits of its practices, it openly shares about its mission and invites others to learn more about its beliefs. As part of Singularism's missionary efforts, it has begun to develop processes and procedures whereby others can become certified spiritual guides in its doctrines to expand the reach of its spiritual movement. Presently, only a handful of these guides have received Singularism's religious training. They are taught to abide by and conduct the same screening procedures discussed above.

30.    Singularism has operated peacefully and without any private or public incident or complaint related to it or any of its voyagers since it opened the doors of its spiritual center through January 2025. In January 2025, one of Singularism's voyagers had an adverse reaction during her second Singularism ceremony. The individual's reaction was exceptionally rare, not life threatening, but exhibited signs of mental distress. Singularism followed its protocol (which is similar to those in place at mental health treatment facilities), which was to have the voyager reach out to her previously identified emergency contact and otherwise assist the individual in reaching the hospital where she was treated and released within a few hours. While investigating the incident, Singularism learned that the voyager had not disclosed certain mental health indicators during Singularism's screening procedure which, if known, would likely have caused Singularism to screen the voyager out from receiving a psilocybin ceremony. The day following the voyager's adverse reaction, she contacted Singularism, stated she was safe and was recovering well, and apologized for the incident. They voyager made similar statements to law enforcement.

11

*Defendants' Statements to the Media Interfere with Singularism's Financial Accounts*

31.    In the fall of 2023, for reasons then unknown to Singularism, Singularism began to experience complications with its financial accounts at KeyBank. And in January 2024, KeyBank refused to provide banking services to Singularism and closed Singularism's accounts, causing a major disruption to Singularism's operations. KeyBank refused to explain the reason it closed Singularism's accounts.

32.    However, records obtained by Singularism a year later, maintained by the Financial Crimes Enforcement Network of the United States Department of the Treasury ("FinCEN"), indicate that KeyBank relied upon the statements Provo City and the Utah County Attorney's Office made to FOX 13 News to justify their refusal to provide banking services to Singularism and close its accounts.

33.    The FinCEN records show that KeyBank's report to FinCEN directly quoted the statements Provo City and the Utah County Attorney's Office made to FOX 13 News in KeyBank's report to FinCEN.

Thus, the incorrect statements made by Provo City and the Utah County Attorney's Office to FOX 13 News, which were made with a knowing disregard, or, at least, reckless disregard, of Singularism's religious rights, had a palpable effect upon Singularism and its financial condition.

34.

*Law Enforcement Knowingly Disregards Singularism's Religious Exemption, Seizes Singularism's Sacrament, Pursues Criminal Charges, and Threatens Eviction*

28.35.  That Singularism's peaceful religious practice was interrupted on November 11, 2024 when law enforcement from the Provo City Police Department—Detective Julian and, Sergeant Rowberry, Detective Wolfgramm, and Detective GrahamOfficers Does 1-4 presented

12

at Singularism's spiritual center with a warrant to search the premises and seize certain items. *See* Exhibit B.

29.36.  For roughly two hours, law enforcement searched Singularism's spiritual center, detained Mr. Jensen, and interrogated him regarding his and Singularism's religious practices. Mr. Jensen is a single, divorced father, and as a result, had to instruct one of Singularism's assistants to head to Mr. Jensen's home to care for his children, fearing that law enforcement would arrest him and prevent him from being able to return to take care of them that night.

30.37. From the outset, Detective Julian explained that he and Sergeant Rowberry, Detective Wolfgramm, and Detective GrahamOfficers Does had been instructed to obtain the search warrant by Utah County Attorney, Defendant Gray. Detective Julian told Mr. Jensen that he was fully aware of Singularism's claim to sincere religious exemption, but that the Utah County Attorney had instructed that there does not exist, and cannot exist, any religious exemptions from the Utah Controlled Substances Act related to psilocybin.

31.38.  Detective Julian explained that he had, undercover, posed as an individual interested in Singularism, going through some of the initial stages of Singularism's screening process, to obtain information regarding Singularism's usage of psilocybin.

32.39.  At no point during law enforcement's search and seizure did Detective Julian or Sergeant Rowberry, Detective Wolfgramm, and Detective Graham Officers Does appear to doubt Mr. Jensen or Singularism's religious sincerity that psilocybin ceremonies are a vital and core part of their religious practice.

33.40.  Rather, Mr. Jensen explained in detail the integral nature of psilocybin to Singularism's religious practices, outlining Singularism's screening mechanisms, the other

13

procedures it keeps to ensure safety for its voyagers, and that psilocybin tea or any other form of psilocybin is never administered or distributed to anyone outside one of its ceremonies, all which occur within the walls of Singularism's spiritual center.

34.41.  During the entirety of law enforcement's presence, Mr. Jensen was wholly cooperative with law enforcement.

35.42.  At one point, Detective Julian and/or Sergeant Rowberry, Detective Wolfgramm, and Detective Graham Officers Does indicated that in additional to sacramental psilocybin, they would be seizing certain records kept by Singularism. When Mr. Jensen saw which records they were referring to, it caused him immense grief, as these were the records in which Mr. Jensen and other of Singularism's spiritual guides recorded the personalized and living scripture of Singularism's voyagers. Mr. Jensen expressed that although the seizure of Singularism's sacramental psilocybin was difficult to endure, seizure of this sacred scripture was even more devastating.

36.43.  In total, law enforcement removed psilocybin, a black grinder, a black scale, and a gold scale used in preparing Singularism's sacramental psilocybin tea, THC, and "Bridging Model Paperwork" from Singularism's religious center. *See* Exhibit C. Although not recorded on the officers' seizure receipt, law enforcement also seized additional Psyche Bridging and Healing's business records, as well as a significant portion of Singularism's voyager's attestations to their religious sincerity and their religious intention statements.

37.44.  At the end of the encounter, Detective Julian told Mr. Jensen that he recommended Singularism cease all its religious practices.

14

38.45.  Recognizing Mr. Jensen's religious sincerity, his cooperation during the search, seizure, and interrogation, and their assessment of Mr. Jensen's low flight risk, the officers released Mr. Jensen without arrest. However, they told him to expect criminal charges. They also told Mr. Jensen they recommended he cease Singularism's operations.

39.46.  Upon law enforcement's departure, Mr. Jensen was left in a devastating state of distress, facing the reality that Defendants were placing before him an impossible choice: (1) practice his religion and continue the religious practices of Singularism, as deity had instructed him to do, under the prospect of escalated threats from law enforcement and promised prosecution or (2) give up his sincerely held religious beliefs, disband Singularism, give up his and others' livelihoods through the religious business arm of Singularism, Psyche Healing and Bridging, and turn away voyagers expecting to access the divine under Singularism's careful watch.

40.47.  This distress continues to the present and increased when, the next day, on November 12, 2024, Defendant Captain Wolken served Singularism's landlord with a letter, threatening that if he did not evict Singularism from their rented space, that law enforcement would pursue the landlord for civil abatement and forfeiture. *See* Exhibit D.

41.48.  The letter, written with a header containing Defendant Chief Beebe's name, asserted, without any basis in evidence, that Singularism was performing "illegal and dangerous activity" and that "residents in that neighborhood . . . are living in unnecessary fear and danger . . ." *Id.*

42.49.  As stated above, no incidents of any kind have ever occurred at or around Singularism's religious center related to Singularism's religious practices, apart from one voyager that did not disclose information regarding her mental health. Neither Singularism, nor its landlord,

are aware of any complaint to either of them regarding Singularism's spiritual practices. The business park in which Singularism's spiritual center strictly enforces rules and security of the premises and has never made any complaint.

43.50.  Singularism's landlord responded to ~~Defendant~~ Captain Wolken and the Provo City Police Department. In his letter, he asserted that he understood that Singularism was taking legal action to protect their religious rights. Because of that, he asserted that if he evicted Singularism as law enforcement desired, he would expose himself to potential liability for religious discrimination in his renting practices. *See* Exhibit E.

51.    The landlord also stated that he had not observed any behavior that would prompt any concern. He stated that his employees present in the same building have not reported feeling unsafe or threatened by Singularism's presence. Additionally, he stated that he had not seen any questionable activity nor any unsavory people coming or going from Singularism's spiritual center. He stated that, if anything, "they have been exemplary tenants."

*Criminal Charges Are Brought Against Mr. Jensen*

52.    On December 18, 2024, following the Court's issue of a temporary restraining order in this action, Defendant Utah County and Utah County Attorney Jeffrey Gray, acting on behalf of the State of Utah, filed criminal charges against Mr. Jensen related to the allegations above. The criminal Information in the matter styled as *State of Utah v. Bridger Lee Jensen*, Case No. 241404407 (Fourth District, Utah County, State of Utah), charges Mr. Jensen with (1) Possession of Psilocybin with Intent to Distribute, a Second Degree Felony; (2) Possession or Use of Tetrahydrocannabinol (THC), a Class B Misdemeanor; and (3) Use or Possession of Drug Paraphernalia, a Class B Misdemeanor.

16

*Provo City Confirms That Singularism Is a Religious Organization*

53.    On January 13, 2025, following Singularism's attempt to renew a business license Singularism understood it may need to operate, Defendant Provo City sent Singularism a letter which confirmed that Provo City deems Singularism a church or religious organization, attached here as Exhibit I:

> This letter is to confirm that, under Provo City Code sec. 6.01.130, churches or religious organizations are not required to obtain a business license to operate. This exemption is limited to activities directly associated with religious purposes. Application LCB202400923 for Singularism has been closed.
> If your organization engages in activities outside the scope of religious operations, such as running a commercial enterprise or selling goods, additional regulations may apply, and compliance will be required.

54.    Provo City Code Section 6.01.130 states

> Unless otherwise provided in this Title, the provisions of this Title shall not be construed to require a business license for an activity which is conducted, managed or carried on wholly for charitable, religious or other non-profit purposes from which profit is not derived, directly or indirectly by any person. Qualification under the federal tax laws for non-profit status shall be prima facie evidence that a person has the charitable, religious or non-profit purposes described above.

55.    Provo City Code Section 6.01.140 states

> With respect to exemptions from business license requirements claimed because of charitable, religious or other nonprofit status, the person claiming the exemption shall have the burden of establishing that exemption.

*The Utah Code Exempts Other Secular and Religious Uses of Controlled Substances*

44.56.  The Utah Code contains explicit exemptions for secular and religious uses of psilocybin and other controlled substances:

> a.  First, in 2024, the Utah Legislature passed S.B. 266 Medical Amendments, now codified within the Utah Controlled Substances Act at Utah Code § 58-37-3.5 ("Utah Psilocybin Act"). The Act grants broad permission to the largest healthcare

17

systems in the state to develop and administer psilocybin programs for secular, medicinal usage. The Act places very few limitations on the healthcare systems' ability to determine how, when, where, to whom, and for what reason psilocybin is administered to patients and only requires the healthcare systems to report to the legislature on July 1, 2026. Through the Act, the Utah Legislature has made psilocybin accessible to the general public for secular, medical reasons.

b. Second, the Utah Controlled Substances Act also contains an exemption for secular, medicinal usage of cannabis. Utah Code § 58-37-3.7(2)-(5); *see also* Utah Code § 58-37-3.6(2)-(3); Utah Code § 58-37-3.8. Accordingly, the Utah Code also treats cannabis usage as a protected class status in the context of public employment. *See* Utah Code § 34A-5-115.

c.   Third, the Utah Controlled Substances Act also contains an exemption for religious usage of peyote, but only for a single racial, ethnic, and/or religious group, Native Americans. Utah Code § 58-37-8(12); Utah Code § 58-37-2(1)(w).

c.d. Fourth, the Utah Controlled Substances Act permits Utah authorities to waive the Act's "licensure requirement [if] consistent with public health and safety." Utah Code § 58-37-6(2)(d).

45.57.   Additionally, the Utah Mental Health Professional Practice Act grants exemptions from licensure in at least two contexts:

a. First, the Utah Mental Health Professional Practice Act permits "a recognized member of the clergy while functioning in a ministerial capacity" to practice mental health therapy "as long as the member of the clergy does not represent that the

member of the clergy is, or use the title of, a license classification" included in the Act. Utah Code § 58-60-107(2)(b).

b.  Second, the Utah Mental Health Professional Practice Act permits individuals to practice hypnosis on others without a license in order to achieve mental and physical outcomes, as long as the individual (1) "induces a hypnotic state in a client for the purpose of increasing motivation or altering lifestyles or habits, such as eating or smoking, through hypnosis;" (2) "consults with a client to determine current motivation and behavior patterns;" (3) "prepares the client to enter hypnotic states by explaining how hypnosis works and what the client will experience;" (4) "tests clients to determine degrees of suggestibility;" (5) "applies hypnotic techniques based on interpretation of consultation results and analysis of client's motivation and behavior patterns;" and (6) "trains clients in self-hypnosis conditioning." Utah Code § 58-60-107(2)(d)(i).

*Utah and Other Authorities Have Permitted the Religious Usage of Psilocybin and Other Entheogenic Substances*

46.58.  Upon information and belief, other entheogenic religious organizations continue to worship in Utah without interference from Utah authorities, including Defendants.

47.59.  For example, a larger religious organization called "The Divine Assembly" appears to operate openly and without recourse under the same religious protections that should protect Singularism. It holds regular meetings with its members in Orem, Utah. On its website, The Divine Assembly discusses the legality of its worship involving psilocybin, offers church membership

19

cards in exchange for a $75 fee, offers certificates of ministry, offers mushroom-growing kits and instructions, and advertises an event called "Psychedelics in the Beehive."[2]

48.60.  Psychedelics in the Beehive is an expansive event which, as it self-describes, "evolved from a conference and expo into a dynamic three-day festival" in downtown Salt Lake City, Utah. The event invites "attendees to explore new perspectives on psychedelics through a blend of learning and creative expression" and connects "Utah's diverse plant medicine community, bringing together experts, leaders, business owners, and newcomers to collaborate and choose their own path in exploring psychedelics."[3] The festival's next event is slated for January 24-26, 2025 and attendees will be able to choose to participate in religious psilocybin ceremonies under the same religious protections that should protect Singularism.[4]

49.61.  Additional organizations, such as Oklevueha Native American Church, centered in Spanish Fork, Utah, and Temple of Hermes, in Salt Lake City, Utah, openly practice their religious rites which include entheogenic practices, including in ceremonies occurring in Heber, Utah.

50.62.  On November 19, 2024, Ffollowing a complaint made to the Utah Department of Commerce's Division of Professional Licensing ("DOPL") that Mr. Jensen was practicing therapy without a license, DOPL conducted an investigation during which Mr. Jensen provided a statement asserting his practice of religious therapy under the clergy licensure exemption under the Utah Mental Health Professional Practice Act. Following DOPL's investigation, on November 19,

---

[2]     *The Divine Assembly*, THE DIVINE ASSEMBLY, available at, https://www.thedivineassembly.org/.

[3]     *About Psychedelics in the Beehive*, PSYCHEDELICS IN THE BEEHIVE, available at, https://psychedelicsinthebeehive.org/explore.

[4]     *Worship at Psychedelics in the Beehive*, PSYCHEDELICS IN THE BEEHIVE, available at, https://psychedelicsinthebeehive.org/ceremonies.

2024, DOPL informed Mr. Jensen that "it was decided this complaint would be closed as 'unfounded'. This means DOPL is not taking any action and [is] closing this complaint out with no further action taken at this time." *See* Exhibit H.

51.63.  Elsewhere in the country, authorities and courts have affirmed the religious rights of sincere individuals and organizations to conduct religious ceremonies with controlled substances.

52.64.  For example, the U.S. Supreme Court, under the federal Religious Freedom Restoration Act, famously confirmed a Christian Spiritist sect's religious exemption from the federal Controlled Substances Act for the religious consumption of hoasca, an entheogenic and sacramental tea made from plants unique to the Amazon region. *See Gonzales v. O Centro Espírita Beneficente União do Vegetal*, 546 U.S. 418, 425 (2006).

53.65.  More recently, the Court of Appeals for the Ninth Circuit affirmed, under the federal Religious Freedom Restoration Act, not only (1) an entheogenic church's religious exemption from the federal Controlled Substances Act for the religious use of Daime tea, but also (2) the church's entitlement to attorney fees for the government's violation of their religious rights. *See Church of Holy Light of Queen v. Holder*, 443 F. App'x 302 (9th Cir. 2011); *Church of the Holy Light of the Queen v. Holder*, 584 F. App'x 457 (9th Cir. 2014).

54.66.  And in April 2024, several federal agencies, including the Drug Enforcement Administration, entered into a public settlement agreement with an entheogenic church regarding the importation and religious use of ayahuasca, following a federal district court's confirmation of the church's religious exemption under the federal Religious Freedom Restoration Act. *See* Exhibits F and G.

21

55.67.  In light of these instances of agency and judicial confirmation of entheogenic religious rights, together with the open, public, and unprosecuted religious and secular usage of psilocybin and other entheogenic substances in Utah, and the various codified exemptions in the Utah Religious Freedom Restoration Act, Utah's Controlled Substances Act, and the Utah Mental Health Professional Practice Act, Provo City and Defendant Gray's instruction to Defendant Detective Julian and Sergeant Rowberry, Detective Wolfgramm, and Detective Graham Defendants Does (and their following of that instruction) that no religious exemption related to psilocybin from the Utah Controlled Substances Act is possible, and to proceed to search Singularism, seize its sacramental psilocybin and scriptural records, and thereafter prosecute Mr. Jensen, amounts to knowing disregard, or, at least, reckless disregard, of Singularism's religious rights. The law has clearly established that sincere religious individuals and entheogenic organizations in the precise circumstance presented in this case have a right to their religious practice without governmental interference.

56.68.  Defendants violated clearly established law when, despite knowledge of Plaintiffs' religious sincerity, they made statements to the media which caused Singularism's financial accounts to be compromised and, through law enforcement, proceeded to seek sought a search warrant without probable cause when Defendants knew or should have known Plaintiffs' religious practices were lawful, detained Mr. Jensen, searched Singularism's religious center, seized Singularism and Psyche Healing and Bridging's sacramental psilocybin and other items, threatened Mr. Jensen with criminal prosecution and thereafter brought criminal charges against Mr. Jensen, and threatened Singularism's landlord that if he did not evict Singularism from its rented space, law enforcement would pursue the landlord for civil abatement.

57.69.  As a result of Defendants' statutory and constitutional violations, Plaintiffs have

been deprived of the possession and usage of their sacramental psilocybin, have been deprived of

precious scripture regarding Singularism's voyagers, have been placed under threat of eviction,

have been placed under threat of criminal prosecution and criminal forfeiture, their livelihoods

have been threatened, their financial accounts have been compromised, and they have endured

substantial emotional and mental distress. It is anticipated that the course of Defendants' conduct

will only deepen the present and future harms to Plaintiffs' statutory and constitutional religious

rights. For example, Plaintiffs expect that Singularism's religious community will be irreparably

diminished, voyagers will no longer feel safe participating in a Singularism ceremony, and Psyche

Bridging and Healing, as a result, will sustain substantial financial losses to the point of closure.

58.70.  Additionally, to defend their statutory and constitutional religious rights, Plaintiffs

were forced to incur substantial attorney fees and costs in bringing this Complaint and an

accompanying motion for temporary restraining order and preliminary injunction.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
*42. U.S.C. § 1983 and the First Amendment to the U.S. Constitution*

59.71.  Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set

forth herein.

60.72.  At all times relevant hereto, Plaintiffs had clearly established rights under the First

Amendment of the United States Constitution to, according to their sincere religious beliefs, freely

exercise their entheogenic religious ceremonies utilizing entheogenic substances such as

psilocybin.

23

61.73.  At all times relevant hereto, and in performance of the acts set forth herein, Defendants Utah County, Provo City, and Gray acted under color of state law, as were the law enforcement officers acting under their direction, Chief Beebe, Captain Wolken, Detective Julian, Sergeant Rowberry, Detective Wolfgramm, and Detective Graham. Beebe, Wolken, Julian, and Officers Does acted under color of state law.

62.74.  At all times relevant hereto, and in performance of the acts set forth herein, Defendants actively and personally caused the violation of constitutional rights alleged herein.

63.75.  Defendants' conduct alleged herein—including, but not limited to, making statements to the media which caused Singularism's financial accounts to be compromised and, through law enforcement, seeking a search warrant without probable cause when Defendants knew or should have known Plaintiffs' religious practices were lawful, detaining Mr. Jensen, threatening to bring criminal charges against Mr. Jensen and thereafter bringing criminal charges against Mr. Jensen, searching Singularism's religious center, seizing Singularism's sacramental psilocybin and other items, and threatening Singularism's landlord to evict Singularism from its rented space—violated Plaintiffs' constitutional rights.

64.76.  Defendants' enforcement of the Utah Controlled Substances Act to specifically prohibit Plaintiffs' usage of psilocybin is not essential to furthering any compelling government interest.

65.77.  Defendants possess less restrictive means of furthering any governmental interest they may have in specifically prohibiting Plaintiffs' usage of psilocybin.

66.78.  The unlawful misconduct of Defendants was objectively unreasonable, flagrantly unlawful, and undertaken intentionally with willful indifference to Plaintiffs' rights.

67.79.  Defendants' actions violated Plaintiffs' clearly established constitutional rights of which reasonable police officers are or should be aware.

68.80.  Utah County and Provo City are liable for the actions described herein because (collectively and in the alternative):

   a.   The actions were caused or directed by the Provo City Attorney's Office and/or Defendant Gray, a final decision-making authorityauthorities;

   b.   The fact that multiple members of the Provo City Police Department, including the Chief, Captain, Detectives, and Sergeant, and other officers, undertook patently unlawful conduct, suggests a complete or reckless lack of training on a subject that officers will encounter on a regular basis.

69.81.  Defendants' unlawful actions caused Plaintiffs to incur costs in related to their compromised financial accounts; defending against the unlawful detention, search, and seizure, as well as the impending criminal charges,; and other actual damages.

70.82.  Plaintiff is further entitled to attorney fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest, and costs as allowable by law.

## SECOND CLAIM FOR RELIEF
*Article I, Section 4 of the Utah Constitution*

71.83.  Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

72.84.  At all times relevant hereto, Plaintiffs had clearly established rights under Article I, Section 4 of the Constitution, which exceed the protections afforded under the First Amendment to the U.S. Constitution, to, according to their sincere religious beliefs, freely exercise their entheogenic religious ceremonies utilizing entheogenic substances such as psilocybin.

73.85.  Since 1993, the Utah Supreme Court has stated that a free exercise analysis conducted under the First Amendment "does not control [the] analysis under the Utah Constitution," *Soc'y of Separationists, Inc. v. Whitehead*, 870 P.2d 916, 930 (Utah 1993), and has indicated strict scrutiny review likely applies. *See Snyder v. Murray City Corp.*, 124 F.3d 1349, 1354 (10th Cir. 1997); *Summum v. Pleasant Grove City*, 2015 UT 31, ¶ 7, 345 P.3d 1188; *Jeffs v. Stubbs*, 970 P.2d 1234, 1249 (Utah 1998); *State v. Green*, 2004 UT 76, ¶ 70 n.1, 99 P.3d 820 (Durrant, J., concurring); *State v. Holm*, 2006 UT 31, ¶ 34 n.8, 137 P.3d 726.

74.86.  At all times relevant hereto, and in performance of the acts set forth herein, Defendants Utah County, Provo City, and Gray, acted under color of state law, as were the law enforcement officers acting under their direction, Chief Beebe, Captain Wolken, Detective Julian, Sergeant Rowberry, Detective Wolfgramm, and Detective Graham. Beebe, Wolken, Julian, and Officers Does acted under color of state law.

75.87.  At all times relevant hereto, and in performance of the acts set forth herein, Defendants actively and personally caused the violation of constitutional rights alleged herein.

76.88.  Defendants' conduct alleged herein—including, but not limited to, making statements to the media which caused Singularism's financial accounts to be compromised and, through law enforcement, seeking a search warrant without probable cause when Defendants knew or should have known Plaintiffs' religious practices were lawful, detaining Mr. Jensen, threatening to bring criminal charges against Mr. Jensen and thereafter bringing criminal charges against Mr. Jensen, searching Singularism's religious center, seizing Singularism's sacramental psilocybin and other items, and threatening Singularism's landlord to evict Singularism from its rented space— violated Plaintiffs' constitutional rights.

26

77.89.  Defendants' enforcement of the Utah Controlled Substances Act to specifically prohibit Plaintiffs' usage of psilocybin is not essential to furthering any compelling government interest.

78.90.  Defendants possess less restrictive means of furthering any governmental interest they may have in specifically prohibiting Plaintiffs' usage of psilocybin.

79.91.  The unlawful misconduct of Defendants was objectively unreasonable, flagrantly unlawful, and undertaken intentionally with willful indifference to Plaintiffs' rights.

80.92.  Defendants' actions violated Plaintiffs' clearly established constitutional rights of which reasonable police officers are or should be aware.

81.93.  Utah County and Provo City are liable for the actions described herein because (collectively and in the alternative):

   a.  The actions were caused or directed by the Provo City Attorney's Office and/or Defendant Gray, a final decision-making authorityauthorities;

   b.  The fact that multiple members of the Provo City Police Department, including the Chief, Captain, Detectives, and Sergeant, other officers, undertook patently unlawful conduct, suggests a complete or reckless lack of training on a subject that officers will encounter on a regular basis.

82.94.  Defendants' unlawful actions caused Plaintiffs to incur costs related to their compromised financial accounts; in defending against the unlawful detention, search, and seizure, as well as the impending criminal charges;, and other actual damages.

83.95.  Plaintiff is further entitled to attorney fees and costs, pre-judgment interest, and costs as allowable by law.

27

### THIRD CLAIM FOR RELIEF
*Utah Religious Freedom Restoration Act*

84.96.  Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

85.97.  At all times relevant hereto, Plaintiffs had clearly established rights under the Utah Religious Freedom Restoration Act, Utah Code § 63G-33-101 *et seq*., which exceed the protections afforded under Article I, Section 4 of the Constitution and the First Amendment to the U.S. Constitution, to, according to their sincere religious beliefs, freely exercise their entheogenic religious ceremonies utilizing entheogenic substances such as psilocybin.

86.98.  At all times relevant hereto, and in performance of the acts set forth herein, Defendants Utah County, Provo City, and Gray, acted under color of state law, as were the law enforcement officers acting under their direction, Chief Beebe, Captain Wolken, Detective Julian, Sergeant Rowberry, Detective Wolfgramm, and Detective Graham.Beebe, Wolken, Julian, and Officers Does acted under color of state law.

87.99.  At all times relevant hereto, and in performance of the acts set forth herein, Defendants actively and personally caused the violation of statutory rights alleged herein.

88.100.    Defendants' conduct alleged herein—including, but not limited to, making statements to the media which caused Singularism's financial accounts to be compromised and, through law enforcement, seeking a search warrant without probable cause when Defendants knew or should have known Plaintiffs' religious practices were lawful, detaining Mr. Jensen, threatening to bring criminal charges against Mr. Jensen and thereafter bringing criminal charges against Mr. Jensen, searching Singularism's religious center, seizing Singularism's sacramental psilocybin and

other items, and threatening Singularism's landlord to evict Singularism from its rented space—violated Plaintiffs' statutory rights.

89.101.    Defendants' conduct alleged herein substantially burdened Plaintiffs' free exercise of religion by, but not limited to, constraining, limiting, and denying Plaintiffs' free exercise of religion; compelling Plaintiffs to act, or fail to act, in a manner contrary to Plaintiffs' free exercise of religion; and assessing criminal, civil, or administrative penalties or damages on Plaintiffs.

90.102.    Defendants' enforcement of the Utah Controlled Substances Act to specifically prohibit Plaintiffs' usage of psilocybin is not essential to furthering any compelling government interest.

91.103.    Defendants possess less restrictive means of furthering any governmental interest they may have in specifically prohibiting Plaintiffs' usage of psilocybin.

92.104.    The unlawful misconduct of Defendants was objectively unreasonable, flagrantly unlawful, and undertaken intentionally with willful indifference to Plaintiffs' rights.

93.105.    Defendants' actions violated Plaintiffs' clearly established statutory rights of which reasonable police officers are or should be aware.

94.106.    Utah County and Provo City are liable for the actions described herein because (collectively and in the alternative):

    a. The actions were caused or directed by the Provo City Attorney's Office and/or Defendant Gray, a final decision-making authorityauthorities;

    b. The fact that multiple members of the Provo City Police Department, including the Chief, Captain, Detectives, and Sergeantother officers, undertook patently unlawful

conduct, suggests a complete or reckless lack of training on a subject that officers will encounter on a regular basis.

~~95.~~107.        Defendants' unlawful actions caused Plaintiffs to incur costs related to their compromised financial accounts; ~~in~~ defending against the unlawful detention, search, and seizure, as well as ~~the impending~~ criminal charges~~,~~; and other actual damages.

~~96.~~108.        Plaintiff is further entitled to attorney fees and costs pursuant to Utah Code § 63G- 33-201(6), pre-judgment interest, and costs as allowable by law.

~~97.~~109.        The notice of claim provision of Utah's Religious Freedom Restoration Act, *see* Utah Code § 63G-33-201(5), does not apply to this action. Defendants' wrongful actions are ongoing and complying with the notice of claim provision will place an undue hardship on Plaintiffs and increase the harm suffered and to be suffered by Plaintiffs. Further, the harm alleged herein is likely to occur or reoccur before the end of the 60-day period described in the notice of claim provision.

### FOURTH CLAIM FOR RELIEF
*42. U.S.C. § 1983 and the Fourth Amendment to the U.S. Constitution*

~~98.~~110.        Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

~~99.~~111.        At all times relevant hereto, Plaintiffs had clearly established rights under the Fourth Amendment of the United States Constitution to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, and that no warrants shall issue against them without probable cause.

~~100.~~112.        At all times relevant hereto, and in performance of the acts set forth herein, Defendants Utah County, Provo City, and Gray~~,~~ acted under color of state law, as were the law

30

enforcement officers acting under their direction, Chief Beebe, Captain Wolken, Detective Julian, Sergeant Rowberry, Detective Wolfgramm, and Detective Graham.Beebe, Wolken, Julian, and Officers Does acted under color of state law.

101.113.    At all times relevant hereto, and in performance of the acts set forth herein, Defendants actively and personally caused the violation of constitutional rights alleged herein.

102.114.    Defendants' conduct alleged herein—including, but not limited to, through law enforcement, seeking a search warrant without probable cause when Defendants knew or should have known Plaintiffs' religious practices were lawful, detaining Mr. Jensen, threatening to bring criminal charges against Mr. Jensen and thereafter bringing criminal charges against Mr. Jensen, searching Singularism's religious center, seizing Singularism's sacramental psilocybin and other items, and threatening Singularism's landlord that if he did not evict Singularism from their rented space then law enforcement would pursue the landlord for civil abatement and forfeiture— violated Plaintiffs' constitutional rights.

103.115.    The unlawful misconduct of Defendants—done without probable cause— was objectively unreasonable, flagrantly unlawful, and undertaken intentionally with willful indifference to Plaintiffs' rights.

104.116.    Defendants' actions violated Plaintiffs' clearly established constitutional rights of which reasonable police officers are or should be aware.

105.117.    Utah County and Provo City are liable for the actions described herein because (collectively and in the alternative):

    a.  The actions were caused or directed by the Provo City Attorney's Office and/or Defendant Gray, a final decision-making authorityauthorities;

31

b. The fact that multiple members of the Provo City Police Department, including the Chief, Captain, Detectives, and ~~other officers~~Sergeant, undertook patently unlawful conduct, suggests a complete or reckless lack of training on a subject that officers will encounter on a regular basis.

~~106.~~118.    Defendants' unlawful actions caused Plaintiffs to incur costs in defending against the unlawful detention, search, and seizure, the ~~impending~~ criminal charges, the threatened eviction action, and other actual damages.

~~107.~~119.    Plaintiff is further entitled to attorney fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest, and costs as allowable by law.

**FIFTH CLAIM FOR RELIEF**
*Article I, Section 14 of the Utah Constitution*

~~108.~~120.    Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

~~109.~~121.    At all times relevant hereto, Plaintiffs had clearly established rights under the Article 1, Section 14 to the Utah Constitution that they shall be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause.

~~110.~~122.    At all times relevant hereto, and in performance of the acts set forth herein, Defendants Utah County, Provo City, and Gray, acted under color of state law, as were the law enforcement officers acting under their direction, Chief Beebe, Captain Wolken, Detective Julian, Sergeant Rowberry, Detective Wolfgramm, and Detective Graham.~~Beebe, Wolken, Julian, and Officers Does acted under color of state law.~~

32

111.123.    At all times relevant hereto, and in performance of the acts set forth herein, Defendants actively and personally caused the violation of constitutional rights alleged herein.

112.124.    Defendants' conduct alleged herein—including, but not limited to, through law enforcement, seeking a search warrant without probable cause when Defendants knew or should have known Plaintiffs' religious practices were lawful, detaining Mr. Jensen, threatening to bring criminal charges against Mr. Jensen and thereafter bringing criminal charges against Mr. Jensen, searching Singularism's religious center, seizing Singularism's sacramental psilocybin and other items, and threatening Singularism's landlord that if he did not evict Singularism from their rented space then law enforcement would pursue the landlord for civil abatement and forfeiture—violated Plaintiffs' constitutional rights.

113.125.    The unlawful misconduct of Defendants—done without probable cause—was objectively unreasonable, flagrantly unlawful, and undertaken intentionally with willful indifference to Plaintiffs' rights.

114.126.    Defendants' actions violated Plaintiffs' clearly established constitutional rights of which reasonable police officers are or should be aware.

115.127.    Utah County and Provo City are liable for the actions described herein because (collectively and in the alternative):

a.    The actions were caused or directed by the Provo City Attorney's Office and/or Defendant Gray, a final decision-making authorityauthorities;

b.    The fact that multiple members of the Provo City Police Department, including the Chief, Captain, Detective, and other officersSergeant, undertook patently unlawful

conduct, suggests a complete or reckless lack of training on a subject that officers will encounter on a regular basis.

~~116.~~128.    Defendants' unlawful actions caused Plaintiffs to incur costs in defending against the unlawful detention, search, and seizure, the ~~impending~~ criminal charges, the threatened eviction action, and other actual damages.

~~117.~~129.    Plaintiff is further entitled to attorney fees and costs, pre-judgment interest, and costs as allowable by law.

**SIXTH CLAIM FOR RELIEF**
*Declaratory and Injunctive Relief*

~~118.~~130.    Plaintiffs incorporate all other allegations of this Complaint as if fully set forth herein.

~~119.~~131.    Defendants' conduct has caused and will cause Plaintiffs to suffer irreparable harm.

~~120.~~132.    Plaintiffs intend to continue their religious ceremonial usage of psilocybin. Unless this Court enjoins Defendants, Defendants will continue to cause irreparable harm to Plaintiffs through violation of their free exercise of religion.

~~121.~~133.    Plaintiffs fear that, without a court order, they will again be subjected to harassment, threats, arrest, criminal charges, forfeiture, eviction, and other retaliation and actions violative of their constitutional and statutory rights.

~~122.~~134.    Plaintiffs are likely to succeed on the merits of their constitutional claims.

~~123.~~135.    Plaintiffs are likely to suffer the same violations upon their future performance of their religious sacraments in Provo City and Utah County.

34

124.136.        The continued injury to Plaintiffs outweighs any damage to Defendants that could be caused by an injunction. Plaintiffs allege there is no damage to Defendants because there are no negative impacts to the community because of Singularism's private, safe, and controlled religious ceremonies.

125.137.        An injunction is in the public interest, as the U.S. Supreme Court, Utah Supreme Court, and the Utah Legislature has repeatedly recognized that religious free exercise is a fundamental right which merits protection and that there exist circumstances, both religious and secular, in which entheogenic substances are a public good.

126.138.        Plaintiffs are entitled to a declaration that Defendants have violated Plaintiffs' constitutional and statutory religious free exercise rights. The Court should enter injunctive relief against Defendants requiring that Defendants cease their unlawful violation of Plaintiffs' religious free exercise.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request the entry of judgment in their favor and against Defendants as follows:

1.    A declaratory judgment, pursuant to Utah Code § 78B-6-401, declaring that Defendants' actions violated Plaintiffs' First Amendment right of religious free exercise.

2.    A declaratory judgment, pursuant to Utah Code § 78B-6-401, declaring that Defendants' actions violated Plaintiffs' right of religious free exercise under Article I, Section 4 of the Utah Constitution.

3.    A declaratory judgment, pursuant to Utah Code § 78B-6-401, declaring that Defendants' actions violated Plaintiffs' right of religious free exercise under the Utah Religious Freedom Restoration Act.

4.    A declaratory judgment, pursuant to Utah Code § 78B-6-401, declaring that Defendants' actions violated Plaintiffs' rights under the Fourth Amendment of the United States Constitution to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, and that no warrants shall issue against them without probable cause.

5.    A declaratory judgment, pursuant to Utah Code § 78B-6-401, declaring that Defendants' actions violated Plaintiffs' rights under Article 1, Section 14 to the Utah Constitution that they shall be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated, and that no warrant shall issue but upon probable cause.

6.    Injunctive relief ~~ordered~~ ordering the return of all items seized by Defendants from Singularism's spiritual center.

36

7.      Injunctive relief temporarily and permanently enjoining Defendants from
prosecuting Plaintiffs' sincere free exercise of religion, threatening Singularism's eviction, or
otherwise acting to interfere with Plaintiffs' sincere free exercise of religion regarding its religious
entheogenic ceremonies.

8.      A judgment awarding compensation to Plaintiffs for their economic and
noneconomic loss and other personal injury resulting from the violations of their constitutional
and statutory rights. Although the precise value of these damages is presently unknown, will
increase as Defendants' unlawful conduct continues, and will be determined by the jury at trial, it
is expected the value of the damages at the time of trial will exceed $100,000.

9.      A judgment assessing punitive damages against the individual Defendants.

10.      A judgment awarding Plaintiffs their costs of suit, including reasonable attorney
fees and litigation expenses, under 42 U.S.C. § 1988, Utah Code § 63G-33-201(6), and other
applicable law.

11.      A judgment awarding Plaintiffs pre- and post-judgment interest to the extent
permitted by law.

12.      Nominal damages to the extent a factfinder determines that a particular
constitutional violation did not cause actual damages.

13.      Such other and further relief as this Court may deem just and proper.


Respectfully submitted this 22nd19th day of January, 2025November, 2024

/s/ Tanner J. Bean
Tanner J. Bean
Anna P. Christiansen

37

Jacqueline M. Rosen
FABIAN VANCOTT
*Attorneys for Plaintiffs*

## **VERIFICATION**

I declare that the matters stated in the above Verified Complaint are within my personal knowledge or are based upon my review of the records kept in the regular course of Plaintiff's business. Based upon the information so obtained and compiled, which I believe to be accurate, I believe the facts stated in the foregoing Verified Complaint are true and correct and are based on a reasonable inquiry, and I make this verification to the best of my information and belief. I declare under criminal penalty under the laws of the State of Utah that the foregoing is true and correct.

DATED this ~~19th~~ 22nd day of ~~November~~January, ~~2024~~2025.

*/s/ Bridger Lee Jensen*
Bridger Lee Jensen
*(signed with permission granted to Tanner J. Bean*
*via email on ~~November~~ January 22~~19~~, 202~~4~~5)*

39